UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | ) | Case No. 17-12870 |
| | ) | |
| REILLY-BENTON COMPANY, INC., | ) | Chapter 7 |
| | ) | |
| DEBTOR. | ) | Judge Grabill |
| | ) | |
| _____ | ) | |

**BRIEF OF THE CHAPTER 7 TRUSTEE AND
THE LOUISIANA INSURANCE GUARANTY ASSOCIATION
CONCERNING WHETHER AN ADVERSARY PROCEEDING IS REQUIRED
TO ADJUDICATE THE TRUSTEE'S REQUEST FOR INJUNCTIVE RELIEF**

David V. Adler, the Chapter 7 trustee (the "Trustee"), has moved for the entry of an order approving a settlement agreement with the Louisiana Insurance Guaranty Association ("LIGA") (Dkt. No. 48, the "Motion").[1] LIGA is not an insurance carrier, but is obligated to pay and/or defend claims asserted against certain insolvent insurers pursuant to the Louisiana Insurance Guaranty Association Act ("LIGA Act"). On October 3, 2001, the Commonwealth Court of Pennsylvania declared Reliance Insurance insolvent and ordered its liquidation. LIGA is obligated to pay and/or defend LIGA Covered Claims pursuant to the provisions of the Reliance Policies and the LIGA Act. Asbestos Claims have been, and continue to be, asserted against the debtor and the bankruptcy estate.

The settlement with LIGA provides for the turnover to the estate pursuant to §§ 542 and 363 of the Bankruptcy Code of the full aggregate limits of liability remaining under all of the Reliance Policies that do not have asbestos exclusions for which LIGA has statutory responsibility under the LIGA Act so that the limited funds available can be administered by the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the LIGA Motion or the underlying Settlement Agreement with LIGA.

Trustee in accordance with one of the prime purposes of bankruptcy law—the promotion of the ratable distribution of property of the estate to the creditors of the debtor. In the Motion, the Trustee also requests that this Court approve the turnover as a compromise pursuant to Bankruptcy Rule 9019(a) and enter an injunction under § 105(a) of the Bankruptcy Code. The ancillary injunction is necessary in this case, as it is in all mass tort asbestos settlements, to protect LIGA as the settling party from being subjected to attempts by persons seeking to circumvent the LIGA Act by continued pursuit of claims against LIGA after it has satisfied its statutory obligations under the LIGA Act through the turnover to the estate and the channeling of all claims to the statutory proceeds.

Notice of the compromise was sent pursuant to Judge Brown's *Order Approving Notice Procedures* [P-45][2] by U.S. Mail, postage prepaid, and properly addressed to all parties listed on the Asbestos Firms List, the Debtor, the U.S. Trustee, and upon all persons or entities having entered an appearance and requesting notice pursuant to the Court's CM/ECF filing system. Notice of the Motion, the hearing on the Motion, and the opportunity to file objections to the Motion was also published in *USA Today*, *The Times-Picayune/The New Orleans Advocate*, the *Baton Rouge Advocate*, the *Acadiana Advocate* (Lafayette, LA), the *Town Talk* (Alexandria, LA), the *Shreveport Times*, the *Lake Charles American Press*, and the *News Star* (Monroe, LA).[3] Only one timely objection ("Roussel Objection") was filed to the LIGA compromise.[4]

Although one of the arguments made in the Roussel Objection was an objection to the

---

[2] Judge Brown had previously authorized service on asbestos claimants through their counsel of record, as is common in asbestos bankruptcies. (*See* Dkt. No. 45.)

[3] *See Notice of Publication*, Dkt. No. 63.

[4] The parties named as objectors in the Objection are Mary Patsy Soileau Courville, Mavis Todd Courville, Michael Wade Courville, and Joseph Eric Courville ("Roussel objectors"). A <u>late</u> objection was filed by Landry & Swarr almost one month past the deadline. [Dkt. No. 72]. The objectors' lawyers contend that the Court should treat as objectors additional persons purportedly represented by those lawyers who were not actually identified as objectors. However, the failure to identify such persons in the objections should preclude their being considered as objectors.

issuance of the § 105 ancillary injunction as part of the compromise order, nowhere in the Roussel Objection did it assert the procedural objection it now raises—i.e., that the LIGA compromise motion requires an adversary proceeding. The issue was never raised by the Roussel claimants until Landry & Swarr filed its late objection to the LIGA Motion about a month after the objection deadline in which Landry & Swarr argued the alleged procedural necessity for an adversary proceeding. On that same day, Roussel filed a Supplemental Objection to the LIGA compromise in which it raised the procedural objection for the first time. This procedural issue was raised during the January 11, 2021 status conference before this Court. Following the status conference, the Court provided an opportunity to all the parties to file briefs. (*See* Dkt. Nos. 92, 95.)

The Trustee and LIGA believe that the objectors' arguments are incorrect and that this Court can and should issue the requested injunction in this contested matter. The injunction being sought is <u>not</u> one that seeks injunctive relief by extension of the automatic stay or by extension of any discharge provision in violation of § 524. It is merely ancillary to the proposed turnover of the property of the estate by LIGA to the Trustee and the channeling of the proceeds to the property of the estate.[5] The courts have been approving asbestos channeling compromises that include such ancillary injunctions for years without requiring an adversary proceeding, and

---

[5] The Century Settlement accomplishes the same result in their Motion through a mechanism used in some settlements that include a § 363(f) sale of the relevant policies back to the insurer free clear of the asbestos claims with the asbestos claims being channeled to the proceeds. Because the LIGA Motion does not relate to policies of an existing insurer, but rather to LIGA's statutory obligations to pay certain amounts in connection with the insurance policies of an insolvent insurer, the LIGA turnover motion does not incorporate the § 363 mechanism. Nevertheless, the effect of the relief is identical in that, as with a § 363 "free and clear" sale that channels the asbestos claims to the proceeds, the turnover by LIGA of its statutory obligations under the policies of the insolvent insurer Reliance, likewise channels the asbestos claims to the property of the estate that LIGA is turning over to the Trustee. *See Macarthur Co. v. Johns-Manville Corp.,* 837 F.2d 89, 94 (2d Cir. 1988) ("Admittedly, the insurance settlement and accompanying injunction in this case are not precisely the same as the traditional sale of real property free and clear of liens followed by a channeling of the liens to the proceeds of the sale…. Here, the property of the estate at issue (insurance policies) was not technically 'sold'; rather, Manville liquidated its interest via a voluntary settlement….Nevertheless, the underlying principle of preserving the debtor's estate for the creditors and funneling claims to one proceeding in the bankruptcy court remains the same.").

there is no reason to require one in this case. In addition, even if an adversary proceeding were required (which is denied), the objectors have waived any right to an adversary proceeding, having failed to timely raise the procedural objection. Moreover, in this case, they are in no way prejudiced because in this case, they have made their substantive arguments regarding the ancillary injunctions in their objections, and they will be given a full opportunity to conduct discovery and be heard on their substantive objections.

### A. Background

The Trustee filed the LIGA Motion on July 2, 2020 (Dkt No. 48). The primary terms of the settlement are as follows:[6]

A. At the Closing, LIGA shall pay $1,046,413.84 ("Settlement Amount") to the Trustee by wire transfer or by certified check.

B. The Settlement Amount shall be deemed payment and settlement for the LIGA Covered Claims in full and final satisfaction of any statutory or contractual obligations of LIGA with respect to the Act and the Reliance Policies. Otherwise, LIGA will have no liability or responsibility under the Act or the Reliance Policies for any allocation of the Settlement Amount among any Claimants asserting Asbestos Claims or their respective attorneys.

C. As of the Effective Date, and without any further action being required, the Trustee, on behalf of the Estate, fully, finally, and completely remises, releases, covenants not to sue, and forever discharges the LIGA Released Parties from and with respect to any and all Claims and interests whether actual or alleged, known or unknown, accrued or unaccrued, existing or potential, suspected or unsuspected, under, arising out of, related to, and/or in connection with the Reliance Policies.

D. In addition, the Trustee withdraws, on behalf of the Estate, any and all requests, demands, or tenders for defense or indemnity previously submitted under the Reliance Policies and further surrenders, relinquishes, and releases any further right to tender or present any Claims whatsoever under the Reliance Policies. Furthermore, by virtue of the foregoing releases, LIGA shall have no duty to defend or indemnify the Estate with respect to any Claim under the Reliance Policies. Notwithstanding anything that could be construed to the contrary above, nothing in

---

[6] This is a summary only. Reference should be made to the complete Agreement attached as Exhibit A to the LIGA Motion. In the event of any discrepancies between the Agreement and the summary set forth in this brief, the Agreement controls.

       the releases shall relieve LIGA of its obligation to pay the Settlement Amount pursuant to the conditions set forth in this Agreement.

E.    LIGA fully, finally, and completely remises, releases, covenants not to sue, and forever discharges the RBC Released Parties from and with respect to any and all Claims and interests whether actual or alleged, known or unknown, accrued or unaccrued, existing or potential, suspected or unsuspected, under, arising out of, related to, and/or in connection with the Reliance Policies.

F.    Pursuant to the proposed Order approving the Agreement and the compromise and settlement memorialized, (a) all Persons who hold or assert, or may in the future hold or assert, any Claim against the Debtor, Reliance, LIGA, or the Estate arising in connection with the activities covered by the Reliance Policies, or in connection with the Debtor's activities giving rise to the Claims that have been made or that could be made under the Reliance Policies, and (b) any other Person who may claim to be an insured, additional insured, or otherwise entitled to any benefit under the Reliance Policies, shall be directed to assert such Claim or right solely and exclusively against the Estate and the proceeds of the Settlement Amount, and such Persons shall be permanently stayed, barred, restrained, and enjoined from asserting any such Claim or right to entitlement, from commencing a proceeding, or taking any other action against LIGA or the LIGA Released Parties for the purpose of obtaining any recovery or other relief from LIGA or the LIGA Released Parties based on, under, arising out of, related or attributable to, and/or in connection with the Reliance Policies.

As explained in the Motion, of critical importance to the Trustee is the fact that LIGA's statutory obligations under the LIGA Act are capped, and therefore create a limited pool.[7] The settlement with LIGA creates a fund that can be used to pay all deserving claimants equally. Because more than 18,000 claimants have already asserted claims against the Debtor, without this settlement, the first few claimants to win the "race to the courthouse" to obtain recoveries

---

[7] The LIGA statute in effect on the date of Reliance's insolvency (October 3, 2001) imposed on LIGA a maximum statutory limit of liability of $150,000 per claim and $300,000 per accident or occurrence as stated in La. R.S. 22:1382(A)(1)(a)(iii) at that time. According to La. R.S. 22:1382(A)(1)(b) then in effect, "[t]he applicable limit per claim and per accident or occurrence shall be exhaustive of the entire liability of the association [LIGA] under this Part, however arising, without regard to the nature of or basis for that liability, except court costs incurred subsequent to the date of insolvency." The proposed settlement is the maximum amount available under the LIGA Act and applicable insurance law under the facts. Indeed, even if there were the possibility of pursuing claims under the Reliance Policies beyond the full products/completed hazard aggregate limits of the policies, when Reliance was declared insolvent and placed into liquidation in 2001, all claims against LIGA under the Reliance Policies became subject to the specific limitations provided for under the LIGA Act, which would foreclose any additional recovery above the Reliance Policies remaining aggregate limits (that is, above the amount LIGA would actually pay under the Parties' Settlement Agreement).

would exhaust LIGA's remaining obligations under the Reliance policies and the LIGA Act, leaving nothing for equally deserving claimants. The settlement ensures that the Trustee can address all potential claims against the Debtor and will allow for pro rata payments to all deserving claimants, thereby promoting equality of treatment among similarly situated creditors, a key bankruptcy policy.

In addition, issuing an injunction barring any person from asserting any Claim against LIGA relating to the Reliance Policies is both necessary and appropriate. *See, e.g., In re Johns-Manville Corp.,* 837 F.2d 89, 93 (2d Cir. 1988) (approving the imposition of an injunction in favor of certain insurers under both sections 363 and 105). Just as in *Johns-Manville*, the court's injunction is "necessary to effectuate the Court's channeling authority, that is, to make sure that claims to Manville's insurance proceeds were, in fact, channeled to the settlement fund and could not be asserted directly against the insurers." *Id.* at 92; *see also See also Picard v. Fairfield Greenwich Ltd.,* 762 F.3d 199, 211 (2d Cir. 2014) *(quoting In re Quigley Co., Inc.,* 676 F.3d 45, 58 (2d Cir. 2012)).[8] LIGA has stated that it will not proceed with the settlement and turnover of the funds to the estate absent an injunction. LIGA is a quasi-governmental body of limited power and funding. It cannot subject itself to the risks of continued litigation without the clarity of the requested injunction.

### B. *No adversary proceeding is required for the relief sought under Rule 9019*

As a threshold matter, there is no basis whatsoever for any argument that the relief sought by the Trustee under Bankruptcy Rule 9019 (approval of the settlement) requires an adversary proceeding. The list of adversary proceedings in Bankruptcy Rule 7001 makes no mention of

---

[8] *Picard*, 762 F.3d at 211 ("[A] court has the power pursuant to section 105(a) to enjoin claims against a non-debtor third party where those claims are derivative, … or otherwise 'pose[ ] the specter of direct impact on the res of the bankrupt estate.' The question is, essentially, 'whether the direct result of a suit against a third party will be the removal of assets from the bankruptcy estate.'").

Rule 9019. One consequence of this fact is that any person who did not file an objection is deemed to have consented to the relief sought in the Motion, including the request for an injunction channeling the claims to the property of the estate being turned over to the Trustee by LIGA pursuant to the settlement.[9] Accordingly, any person who did not file an objection to the Motion should be deemed to have consented to the Motion and the relief sought therein, including the requested injunction. The only timely objection filed to the LIGA Motion was filed by the Roussel firm, but the Roussel firm did not assert in its original objection that they believed that an adversary proceeding was required. Therefore, as it relates to the procedural issue before the Court, neither the Roussel claimants nor any other person or entity should be permitted to raise this procedural issue, having waived the right to do so.

   C. *No adversary proceeding is required for a limited, ancillary injunction enforcing the benefits of the automatic stay as it relates to the Trustee's efforts to obtain the turnover of property of the estate in a proceeding that channels all claims to the proceeds of the estate property.*

The objectors argue that the Motion is "procedurally defective" because the Trustee is seeking entry of an injunction without commencing an adversary proceeding. But the objectors cite no case that imposes such a requirement in the context of the turnover of property of the estate in a mass tort action where the claims against the estate property are channeled to the proceeds of the property being turned over to the estate. In fact, courts have consistently held that Bankruptcy Rule 7001(7) is not applicable in such cases where the motion is not seeking a new injunction beyond that already provided for in section 362(a). *See, e.g., In re Kalikow*, 602 F.3d 82, 93 (2d Cir. 2010) (agreeing that "the enforcement of a preexisting injunction" may be accomplished as a contested matter rather than through an adversary proceeding); *In re Ritchie*

---

[9] *See, e.g., Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 763 (5th Cir. 1995) (recognizing that where a party is entitled to an adversary proceeding, such right can be waived).

*Risk-Linked Strategies Trading (Ireland), Ltd.*, 471 B.R. 331, 337 (Bankr. S.D.N.Y. 2012) ("[T]he Motion need not have been brought as an adversary proceeding since U.S. Bank seeks only the enforcement of an injunction already in effect..., not the issuance of a new injunction.").[10]

It makes great sense not to require the filing of an adversary proceeding to obtain an injunction that is merely a corollary to the power of the Trustee to collect property of the estate and channel claims to the proceeds."[11] Considering the more than 18,000 asbestos claimants listed in the Debtor's bankruptcy case, LIGA has a legitimate concern about making sure that once it turns over the estate property to the Trustee for administration, it will not be the subject of any further lawsuits. Unfortunately, litigants may disregard the compromise and turnover order, thus making protective corollary injunctive relief necessary in certain instances. Indeed, without the injunction, litigants may be prone to freely disregard the concepts of equitable distribution under the Bankruptcy Code and ignore the terms of any compromise-turnover order entered by this Court so that they can pursue direct claims against LIGA instead of (or in addition to) claims against the property of the estate which LIGA will have already turned over to the Trustee for administration on behalf of all deserving claimants equally.

The fact, however, is that the requested injunction is truly ancillary to the main relief sought—i.e., the compromise with LIGA to turn over property of the estate, which does not require an adversary proceeding. It would surely elevate form over substance in an entirely unwarranted and perverse way to require the Trustee to sue more than 18,000 claimants - all but

---

[10] *See also In re Texaco, Inc.,* 182 B.R. 937, 945 (Bankr. S.D.N.Y. 1995) ("Rule 7001 simply does not provide that a motion to enforce must be brought by adversary proceeding. So also with subsection (7) 'to obtain an injunction or other equitable relief' and subsection (9) 'to obtain a declaratory judgment relating to any of the foregoing.'").

[11] *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988).

eight of whom filed an objection to the Motion - merely to establish that they cannot willfully violate the terms of an order entered by this Court.[12] Moreover, a lawsuit of such unmanageable proportions would impose unimaginable costs on the estate. The requirement the objectors seek to impose would forever hamstring trustees and debtors in possession in their efforts to monetize assets of the estate for distribution to creditors on an equitable basis.[13]

The objectors base their argument that an adversary proceeding is required on the Fifth Circuit's decision in *Zale Corp.*[14] That case is distinguishable, however, because it did not involve an injunction entered as a corollary to a turnover and compromise order that channeled the claims of all creditors to the property of the estate being turned over to the trustee. Significantly, no decision has applied *Zale* to an injunction entered as a corollary to a turnover order that is necessary to protect and administer property of the estate. In addition, unlike the case here, there was no prior notice to the affected parties of the proposed injunction in *Zale*.[15] By contrast, the Trustee in this case gave notice of the Motion, including his intent to seek an injunction, and also widely published notice in one national paper and in multiple local papers throughout Louisiana in an attempt to reach unknown claimants. Thus, the objectors, who filed

---

[12] *See, e.g., In re American Dev. Int'l. Corp.,* 188 B.R. 925, 935 (N.D. Tex. 1995) (where rights of affected parties have been adequately protected and affected parties have had an opportunity to be heard, form should not be elevated over substance). The objectors seek to represent the interests of persons who are not present before the court, including persons with notice of the Motion who failed to object. (*See* Roussel Obj. at 2 ("This order seeks not only to affect the Roussel and Clement creditors but numerous other Reilly-Benton tort victims as well as future tort victims of Reilly-Benton whose diseases have not yet manifested").) The objectors, however, lack standing to represent the interests of those who did not object. *See, e.g., Locks v. U.S. Trustee,* 157 B.R. 89 (W.D. Pa. 1993) (attorney for asbestos claimants could not argue for the interests of future claimants).

[13] It similarly would be unreasonable to require an adversary proceeding against LIGA to approve a settlement that has, as one of its benefits to the estate, the avoidance of litigation.

[14] *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995).

[15] *See id.* at 749 (noting that the request for an injunction was added via a modification to the proposed settlement agreement during "the evening of the first day of the hearing"). In fact, the two Fifth Circuit cases cited by *Zale* as authority recognizing waiver (but denying waiver in the particular cases) also involved situations where the parties had no real prior notice of the requested relief that required the filing of an adversary. *See In re Haber Oil Co.*, 12 F.3d 426, 440 (5th Cir. 1994) ("the record shows that Haber Oil was not given proper notice prior to the commencement of the post-confirmation proceedings in the bankruptcy court"); *In re Village Mobile Homes*, 947 F.2d 1282, 1283 (5th Cir. 1991) ("Counsel for Village Mobile was not present when the conversion claim was first raised in bankruptcy court").

extensive objections, cannot claim that they did not receive adequate notice of the Trustee's request for an ancillary § 105 injunction to give effect to the turnover and compromise order.

Moreover, courts within the Fifth Circuit have held, following *Zale*, that it is not necessary to commence an adversary proceeding in every instance to obtain an order enjoining third-party claims, so long as the parties who would be subject to the injunction are given a "full and fair" hearing.[16] For example, in rejecting an argument that an injunction was *per se* improper because it was entered without an adversary proceeding in the context of a hearing to consider a proposed settlement, the court in *Bayoud* noted that, "[u]nlike the facts of *Zale,* in which appellants' challenge to a settlement was prevented by the bankruptcy court and treated as a collateral and irrelevant sideshow in an otherwise complex and extended hearing, in the instant case [the objector's] attack on the settlement easily consumed the bulk of the hearing and was in all respects heard as if in the context of an adversary proceeding."[17]

The question of whether to approve the proposed turnover and compromise under Rule 9019 and issue an ancillary channeling injunction to enforce the order will be no sideshow here. Rather, it will be the main event. The objectors have had notice of the Motion, they have filed extensive objections, they will be permitted to take discovery,[18] and they will have a chance to participate in an evidentiary hearing devoted solely to the Motion. This provides the Objectors with the same "full and fair" opportunity for a hearing as an adversary proceeding. Nothing more is or should be required.[19]

---

[16] *See, e.g.*, *Bayoud v. Medical Center Hospital of Garland, Inc.*, 188 B.R. 925, 935 (N.D. Tex. 1995).

[17] *Id.* (citation omitted). The district court found that the bankruptcy court's injunction nevertheless was improper because the bankruptcy court had not conducted the proper injunction analysis and remanded.

[18] Bankruptcy Rule 9014 incorporates all of the discovery tools available through Bankruptcy Rules 7026 and 7-28-7037 into contested matters.

[19] Even where an adversary proceeding is otherwise strictly necessary, which is not the case here, courts will overlook non-compliance with Rule 7001 where no harm results from doing so. *See* cases cited in footnote 24 of the Brief filed by the Trustee and Century contemporaneously with the filing of this Brief. (Dkt. No. 99).

*Conclusion*

An adversary proceeding is not required here. The Court can and should issue the requested ancillary injunction in this contested matter. The objectors' rights and interests are not adversely affected if this matter proceeds by motion rather than by complaint.

DATED: January 21, 2021

Respectfully submitted,

**CHAFFE MCCALL, LLP**
2300 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone: (504) 585-7000

By: */s/ David J. Messina*
David J. Messina, #18341
messina@chaffe.com
Fernand L. Laudumiey, IV, #24518
laudumiey@chaffe.com
*Counsel to the Trustee*

**STEWART, ROBBINS BROWN & ALTAZAN, LLC**
301 Main St., Suite 1640
Baton Rouge, LA 70801
(225) 231-9998 Telephone
(225) 709-9467 Fax

By: */s/ William S. Robbins*
William S. Robbins (La. # 24627)
wrobbins@stewartrobbins.com
Brandon A. Brown (La. #25592)
bbrown@stewartrobbins.com
*Counsel to Louisiana Insurance Guaranty Association*