| Service Office Number | Agency number | | Old Policy No. |
|---|---|---|---|
| 580 | 117048 | | XBC 7 58 83 |

Hughes Walmsley & Company Inc.
New Orleans, La.
IOD Code J

☐ New; ☒ Renewal; ☐ Rewrite of:

←Agency Name
←Address

# EXCESS BLANKET CATASTROPHE
## LIABILITY POLICY

## INSURANCE COMPANY OF NORTH AMERICA

XBC ___ 7 59 93 ___

**Named Insured**

REILLY-BENTON COMPANY, INC.
(See Endorsement Attached)
P.O. Box 53246
**Address**   New Orleans, Louisiana 70130

Policy Period: From **July 1, 1972** to **July 1, 1973**

12:01 A.M., standard time at the address of the Named Insured as stated herein.

Audit Period: Annual, unless otherwise stated.
Endorsements attached to policy at inception: 1 Nuclear Energy Liability Exclusion: LC1012

2. Exclusion Contamination or Pollution LC1454
3. Premium Computation Endorsement LC746c

## LIMITS OF LIABILITY

INA'S LIMIT OF LIABILITY:

ITEM 1. $1,000,000. arising out of any one occurrence because of personal injury, property damage or advertising injury or any combination thereof.

ITEM 2. $1,000,000. arising out of all occurrences during each policy year because of the products hazard, or the completed operations hazard, or both combined.

INSURED'S RETAINED LIMIT:
Underlying Insurance, or

ITEM 3. $ 10,000. because of personal injury, property damage or advertising injury arising out of any one occurrence not within the terms of coverage of underlying insurance but within the terms of the coverage of this insurance.

## PREMIUM COMPUTATION

| Estimated | Rate per | Total Advance Premium |
|---|---|---|
| Annual Sales | $1,000. of Sales | |
| $3,300,000. | .144 | $475. |

MINIMUM PREMIUM $ 350. (Annual)

in the event of cancellation by the Named Insured, INA shall receive and retain not less than $ 125. as the Minimum Premium.

Countersigned By

 

► Issued by ...................................................................................................................................

(Name of Insurance Company)

This Endorsement, effective        Forms a part of Policy No.        Issued to:

►                            ►                         ►

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

NAME OF INSURED

REILLY BENTON COMPANY, INC., THE PEABODY CO., INC.,

PROFIT SHARING TRUST FUND.

Authorized Agent



# SCHEDULE OF UNDERLYING INSURANCE

| SCHEDULE A | POLICY NO. XBC |
|---|---|

| Carrier, Policy Number & Period | Type of Policy | Applicable Limits |
|---|---|---|
| a) Pacific Employers Insurance Company PWC 001760 1/1/72 to 1/1/73 | Standard Workmen's Compensation & Employers' Liability | Coverage B-Employers' Liability $100,000. one accident |
| b) Reliance Insurance of Philadelphia ZM7940102 7/1/72 to 7/1/73 | General Liability | Bodily Injury Liability $100,000. each person $300,000. each occurrence $300,000. aggregate products<br><br>Property Damage Liability $50,000. each occurrence $50,000. aggregate premises operations $50,000. aggregate protective $50,000. aggregate products $50,000. aggregate contractual |
| c) INA CAL 94776 1/1/72 to 1/1/73 | Automobile Liability | Bodily Injury Liability $100,000. each person $300,000. each occurrence<br><br>Property Damage Liability $25,000. each occurrence |

wh3  7/27/72

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

Endorsement # 1

Named Insured_____

Effective_____ Policy No_____

Issued by_____
(Name of Insurance Company)

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following

### ALL AUTOMOBILE LIABILITY, GENERAL LIABILITY AND MEDICAL PAYMENTS
### INSURANCE OTHER THAN FAMILY AUTOMOBILE, SPECIAL PACKAGE AUTOMOBILE,
### COMPREHENSIVE PERSONAL AND FARMER'S COMPREHENSIVE PERSONAL INSURANCE

---

It is agreed that:

I. The policy does not apply:

   A. Under any Liability Coverage, to bodily injury or property damage

   (1) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

   C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

   (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

   (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

   (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

II. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

_____
Authorized Agent

# EXCLUSION
### (Contamination or Pollution)

Endorsement # 2

Named Insured_____

Effective_____ Policy No_____

Issued by_____
**(Name of Insurance Company)**

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

### MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE

### OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

### COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE

### CONTRACTUAL LIABILITY INSURANCE

### OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE

### SPECIAL PROTECTIVE AND HIGHWAY LIABILITY INSURANCE— NEW YORK DEPARTMENT OF PUBLIC WORKS

### STOREKEEPER'S INSURANCE

It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Authorized Agent



PREMIUM COMPUTATION ENDORSEMENT



Named Insured _____

Effective _____ Policy No. _____

Issued by _____

(Name of Insurance Company)

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

The premium for this policy shall be based upon the:

Endorsement No. ____3____

1. [x] One year wording:

☐ Admissions
☐ Remuneration
☐ Receipts
☐ Cost
[x] Sales
☐

of the Named Insured during the policy period and shall be computed by applying to such estimated premium basis, the rate set forth in the declarations. Upon delivery of this policy the Named Insured shall pay the advance premium shown in the declarations and upon termination of the policy shall render to INA a statement of the premium basis for the policy period and the earned premium shall be computed thereon. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to INA; if less, INA shall return to the Named Insured the unearned premium paid by the Named Insured.

1. ☐ Three year wording:

☐ Admissions
☐ Remuneration
☐ Receipts
☐ Cost
☐ Sales
☐

of the Named Insured during the policy period and shall be computed by applying to such estimated premium basis, the rate set forth in the declarations. Upon delivery of this policy the Named Insured shall pay the advance premium shown in the declarations and at the end of each twelve months during the policy period, shall render to INA a statement of the premium basis during that period and the earned premium shall be paid to INA, except that the advance premium shown in the declarations shall be credited against the premium found to be due INA for the last twelve months of the policy period.

2. Earned premiums shall be subject to any applicable minimum premiums stated in the declarations.

3. When used as a premium basis:

a) "admissions" means the total number of persons, other than employees of the Named Insured, admitted to the event(s) insured or to events conducted on the premises, whether on paid admission tickets, complimentary tickets or passes;

b) "remuneration" means the entire renumeration earned during the policy period by all employees of the Named Insured engaged in the Insured's operations, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by INA;

c) "receipts" means the gross amount of money charged by the Named Insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division;

d) "cost" means the total cost to the Named Insured for operations performed for the Named Insured, during the policy period, by independent contractors on all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or sub-contractor, including all fees, allowances, bonuses or commissions made, paid or due;

e) "sales" means the gross amount of money charged by the Named Insured or by others trading under his name for all goods or products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division; monies charged one Insured under this policy by another Insured under this policy, for goods, products, installation, servicing or repair shall not be considered sales within the meaning of this definition.

Authorized Agent

CANC. P/R

XBC 7 59 93     580     117048

REILLY-BENTON CO., INC., ET AL.

P. O. BOX 53246, NEW ORLEANS, LA.    70130

HUGHES WALMSLEY & CO., INC.
1415 RICHARDS BLDG.
NEW ORLEANS, LA.    70112

XX

5- 2-73

VOL. STATEMENT
7-1-72/1-1-73
7-1-72/73

8

EXCESS BLANKET LIAB.-SALES     17     M    1808079

260.00

XXXXXXXX

260.00
475.00
215.00CR

.00
.00
215.00C

SS

5

ACCOUNTING-STATISTICAL
COPY

| | |
|---|---|
| EFFECTIVE CANCELLATION DATE | POLICY NUMBER |
| *1-1-73* | *XBC 75953* |
| CANCELLATION METHOD | FLAT AS OF |
| ☒ PRO RATA ☐ SHORT RATA ☐ FLAT | INSTALLMENT |

"SPECIAL INSTRUCTIONS"

*Re-Write by XBC 03047* **A**

*Subject to Audit*

☒ SUBJECT TO AUDIT

☒ POLICYHOLDERS' SERVICE INSPECTION (IF CHECKED INDICATE INSURED'S NAME ABOVE)

SIGNATURE

(APPROVAL) *Acey Conito* DATE: *3-15-73*

C-1938D 250M 9/71
PRINTED IN U.S.A.

**PROCESSING COPY**

EXCESS BLANK~
LIABILI~

Named Insured
REILLY-BENTON~
(See Endorse~
P.O. Box 5324
Address
New Orleans, Louisiana 70130

Policy Period: From **July 1, 1972** to **July 1, 1973**

12:01 A.M. standard time at the address of the Named Insured as stated herein.

Audit Period: Annual, unless otherwise stated
Endorsements attached to policy at inception: 1. Nuclear Energy Liability Exclusion LC1012

2. Exclusion Contamination or Pollution LC1454
3. Premium Computation Endorsement LC746e

## LIMITS OF LIABILITY

INA'S LIMIT OF LIABILITY:

ITEM 1. $ 1,000,000.  arising out of any one occurrence because of personal injury, property damage or advertising injury or any combination thereof.

ITEM 2. $ 1,000,000.  arising out of all occurrences during each policy year because of the products hazard, or the completed operations hazard, or both combined.

INSURED'S RETAINED LIMIT:
Underlying Insurance, or

ITEM 3. $ 10,000.  because of personal injury, property damage or advertising injury arising out of any one occurrence not within the terms of coverage of underlying insurance but within the terms of the coverage of this insurance.

## PREMIUM COMPUTATION

| Estimated Annual Sales | Rate per $1,000. of Sales | Total Advance Premium |
|---|---|---|
| $3,300,000. | .144 | $475. |

MINIMUM PREMIUM $ 350. (Annual)

in the event of cancellation by the Named Insured, INA shall receive and retain not less than $ 125. as the Minimum Premium.

HD/mo 7/27/72

Countersigned By



 **ADVICE OF CANCELLATION** 

INSURANCE COMPANY OF NORTH AMERICA

Name of Insured   PELLY BENTON CO., INC., etal

PACIFIC EMPLOYERS GROU

Date   4/6/73

Policy Period: From   7/1/72          To          7/1/73

Bond No. or Policy No.   XBC 7 59 93

Canc. Basis ☒ PRO RATA ☐ SHORT RATE ☐ FLAT ☐ PREM. FULLY EARNED

Canc. Factor:          Canc. Date   1/1/73

Return Premium   s   Subj. to .aud

PRODUCER

HUGHES WALMSLEY & CO., INC.
1415 Richards Bldg.
New Orleans, La. 70112

Comm.:

Service Office   580

C-1480d 100M 11/72 Ptd. in U.S.A.

REGIONAL INFORMATION CENTER COPY



this original
policy

*April T. Ruth*

April T. Ruth



### INSURANCE COMPANY OF NORTH AMERICA, PHILADELPHIA, PENNSYLVANIA

...erations hazard" includes personal injury and property damage aris-
...erations or reliance upon a representation or warranty made at any
...ject thereto, but only if the personal injury or property damage occurs
...erations have been completed or abandoned and occurs away from
...ed by or rented to the Insured. "Operations" include materials, parts
...furnished in connection therewith. Operations shall be deemed
...the earliest of the following times:

...rations to be performed by or on behalf of the Insured under the

policy;
The wor...
"occurr...
conditio...
nor ine...
"person...
ment or...

## EXCESS BLANKET CATASTROPHE

## LIABILITY POLICY

### A Stock Insurance Company, herein called INA

In consideration of the premium to be paid, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the Named Insured as follows:

## INSURING AGREEMENT

Coverage A—Personal Injury Liability

Coverage B—Property Damage Liability

Coverage C—Advertising Liability

INA will indemnify the Insured for ultimate net loss in excess of the retained limit hereinafter stated which the Insured shall become legally obligated to pay as damages because of

      A. personal injury or

      B. property damage or

      C. advertising injury

to which this insurance applies, caused by an occurrence, and

(1) With respect to any personal injury, property damage or advertising injury not within the terms of the coverage of underlying insurance but within the terms of coverage of this insurance; or

(2) If limits of liability of the underlying insurance are exhausted because of personal injury, property damage or advertising injury during the period of this policy

INA will

    (a) have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury, property damage or advertising injury, even if any of the allegations of the suit are groundless, false or

fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient; but INA shall not be obligated to pay any claim or judgment or to defend any suit after INA's limit of liability has been exhausted by payment of judgments or settlements;

(b) in addition to the amount of ultimate net loss payable:

    (i) pay all expenses incurred by INA, all costs taxed against the Insured in any suit defended by INA and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before INA has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of INA's liability thereon;

    (ii) pay premiums on appeal bonds required in any suit, premium on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the Insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies but INA shall have no obligation to apply for or furnish any such bonds;

    (iii) pay reasonable expenses incurred by the Insured at INA's request in assisting INA in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $50 per day.

In jurisdictions where INA may be prevented by law or otherwise from carrying out this agreement, INA will indemnify the Insured for such expense incurred with its written consent in accordance with this provision.

## PERSONS OR ENTITIES INSURED

(1) The Named Insured is the organization(s) named in the declarations of this policy and includes:

    (a) any subsidiary company (including subsidiaries thereof) and any other company under their control and active management at the inception date of this policy;

    (b) new organizations acquired by the Named Insured during the policy period, through consolidation, merger, purchase of the assets of, or assumption of control and active management; provided such acquisition or assumption is reported to INA within 60 days after it is effected and provided further such acquisition is endorsed on this policy;

    (c) if the Named Insured in the declarations is a partnership or joint venture, any partner or member thereof is included as a Named Insured but only with respect to his liability as a partner or member of such partnership or joint venture.

(2) Each of the following is an Insured under this policy to the extent set forth below:

(a) any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract or permit to provide insurance such as is afforded by the terms of this policy, but only with respect to operations by or on behalf of the Named Insured or to facilities of or facilities used by the Named Insured and then only to the extent of the coverage required by such contract and for the limits of liability specified in such contract, but in no event for insurance not afforded by this policy nor for limits of liability in excess of the applicable limits of liability of this policy;

(b) at the option of the Named Insured and subject to the terms of the coverage of this insurance, any additional Insured(s) included in the underlying insurance listed in Schedule A, but only to the extent that insurance is provided for such additional Insured(s) thereunder;

(c) except with respect to the ownership, maintenance or use, including loading or unloading, of automobiles or aircraft,

    (i) any officer, executive, employee, director or stockholder of the Named Insured while acting on behalf of such Named Insured; (ii) any person or organization while acting as real estate manager for the Named Insured;

## PERSONS OR ENTITIES INSURED
(continued)

any person while using, with the permission of the Named Insured, any automobile or aircraft owned by, loaned to or hired for use by or on behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual operation or other actual use is within the scope of such permission, and any officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured but only while such automobile or aircraft is being used in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under this paragraph (d):

(i) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place;

(ii) to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or a lessee (of whom the

Named Insured is a sub-lessee) thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

(iii) to any manufacturer of aircraft, aircraft engines or aviation accessories, or any aviation sales, service or repair organization or airport or hangar operator or their respective employees or agents.

does not
s limit of    If this policy is issued for a period of three years, the limits
             shall apply separately to each consecutive policy year thereo

the same   11.  Maintenance of Underlying Policies
ble under
he applic-      The Named Insured shall maintain the underlying policies
                thereof) with limits of liability as stated in Schedule A in fu
                this policy period, except for any reduction or exhaustion o
                limit or limits contained in such policies solely by payment

## RETAINED LIMIT—INA'S LIMIT OF LIABILITY

egardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain injury or damage, or (3) claims made or suits brought because of ersonal injury, property damage, or advertising injury, INA's liability is limited s follows:

With respect to personal injury, property damage or advertising injury, or any combination thereof, INA's liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of:

(a) an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured; or

(b) the amount specified in Item 3. of the Limits of Liability section of the declarations because of personal injury, property damage or advertising injury not within the terms of the coverage of the underlying insurance listed in Schedule A:

and then for an amount not exceeding the amount specified in Item 1. of the Limits of Liability section of the declarations arising out of any one occurrence.

There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of INA, because of either the products hazard or the completed operations hazard, or both combined, arising out of all occurrences during each policy year shall not exceed the amount specified in Item 2. of the Limits of Liability section of the declarations.

If the aggregate limits of liability of the underlying insurance listed in Schedule A are reduced or exhausted because of personal injury, property damage or advertising injury during the period of this policy, INA will, subject to INA's limit of liability stated above, continue such coverage as is afforded by such listed underlying insurance for the remainder of the policy year of such underlying insurance in excess of the reduced or exhausted limits.

For the purpose of determining the limits of INA's liability, (1) all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence, and (2) with respect to advertising injury, all injury arising out of any advertisement, publicity article, broadcast or telecast or any combination thereof involving the same injurious material or act, regardless of the frequency of repetition thereof or the number or kind of media used, whether claim is made by one or more persons, shall be deemed to arise out of one occurrence.

## POLICY PERIOD, TERRITORY

This policy applies to personal injury, property damage or advertising injury which occurs anywhere during the policy period.

## EXCLUSIONS

This policy does not apply:

(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(b) to property damage to (1) property owned by the Insured, or (2) the Insured's products arising out of such products or any part of such products, or (3) work performed by or on behalf of the Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(c) to loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

for the withdrawal, inspection, repair, replacement or loss
mpleted by or for the Insured

ucts, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(e) to advertising injury resulting from (1) failure of performance of contract, (2) infringement of trade mark, service mark or trade name by use thereof as the trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans, (3) incorrect description of any article or commodity, or (4) mistake in advertised price;

(f) to property damage in accordance with the provisions of the property damage exclusion endorsement attached hereto;

(g) as respects parts (b), (c), and (d) of the definition of personal injury, to injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the Named Insured;

(h) as respects part (c) of the definition of personal injury, to injury arising out of any publication or utterance, if the first injurious publication or utterance of the same or similar material by or on behalf of the Named Insured was made prior to the effective date of this policy;

(i) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

"advertising injury" means libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy, arising out of the Insured's advertising activities;

"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

"completed operations hazard" includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

i) when all operations to be performed by or on behalf of the Insured under the contract have been completed,

ii) when all operations to be performed by or on behalf of the Insured at the site of the operations have been completed, or

iii) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete shall be deemed completed.

The completed operations hazard does not include personal injury or property damage arising out of (1) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or a vehicle created by the loading or unloading thereof, (2) the existence of tools, installed equipment or abandoned or unused materials;

"damages" means only those damages which are payable because of personal injury, property damage or advertising injury to which this insurance applies and include damages for (1) death and for care and loss of services resulting from bodily injury, (2) loss of use of property resulting from property damage, and advertising injury;

"Insured" means any person or organization qualifying as an Insured under the Persons or Entities Insured section of this policy. The insurance afforded applies

separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of INA's liability;

"Insured's products" means goods or products manufactured, sold, handled or distributed by the Insured or by others trading under his name, including any container thereof (other than a vehicle) but "Insured's products" shall not include a vending machine or any property other than such a container, rented to or located for use of others but not sold;

"Named Insured" means the organization(s) named in the declarations of this policy;

The word "Insured" includes the Named Insured;

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the Insured;

"personal injury" means, (a) bodily injury; (b) false arrest, detention or imprisonment or malicious prosecution; (c) the publication or utterance of a libel or slander or of other defamatory or derogatory material, or a publication or utterance in violation of an individual's right of privacy, except when any of the foregoing of this part (c) arises from publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Named Insured; (d) wrongful entry or eviction, or other invasion of the right of private occupancy; (e) assault and battery not committed by or at the direction of the Insured, unless committed for the purpose of protecting persons or property;

"products hazard" includes bodily injury and property damage arising out of the Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the Insured and after physical possession of such products has been relinquished to others;

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

"ultimate net loss" means the sum actually paid or payable in cash in the settlement or satisfaction of losses for which the Insured is liable either by adjudication or compromise with the written consent of INA, after making proper deduction for all recoveries and salvages collectible, but excludes all loss expenses and legal expenses (including attorneys' fees, court costs and interest on any judgment or award) and all salaries of employees and office expenses of the Insured, INA or any underlying insurer so incurred.

## CONDITIONS

### Premium

The premium for this policy shall be as stated in the Declarations.

If the premium as stated in the declarations is an advance premium, it shall be computed in accordance with the premium computation endorsement attached to the policy. If the Named Insured includes more than one person, partnership or organization they shall be jointly and severally liable for the premium for this policy.

### Inspection and Audit

INA shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither INA's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation. INA may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

### Insured's Duties in the Event of Occurrence, Claim or Suit

a. In the event of an occurrence, reasonably likely to exceed the retained limit, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to INA or any of its authorized agents as soon as practicable.

b. If claim is made or suit is brought against the Insured, the Insured shall immediately forward to INA every demand, notice, summons or other process received by him or his representative.

c. The Insured shall cooperate with INA and upon INA's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of personal injury or property damage or advertising injury with respect to which insurance is afforded under this policy; and the Insured shall attend hearings and trials and assist in secur-

ing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense; however, if the amount of ultimate net loss becomes certain either through trial court judgment or agreement among the Insured, the claimant and INA, then, the Insured may pay the amount of ultimate net loss to the claimant to effect settlement and, upon submission of due proof thereof, INA shall indemnify the Insured for that part of such payment which is in excess of the retained limit, or, INA will, upon request of the Insured, make such payment to the claimant on behalf of the Insured.

(d) The Named Insured shall promptly reimburse INA for any amount of ultimate net loss paid on behalf of any Insured within the retained limit.

(e) As this policy is excess insurance, the Insured warrants that coverage under the uninsured motorist laws will be maintained during the policy period. It is agreed that the Named Insured shall promptly reimburse INA for any amount of ultimate net loss paid on behalf of any Insured as respects any payment made under an uninsured motorist law, or any similar law.

### 4. Appeals

If the Insured or the Insured's underlying insurer elects not to appeal a judgment in excess of the retained limit, INA may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of INA for ultimate net loss exceed the amount specified in the Limits of Liability section of the Declarations plus the taxable costs, disbursements and interest incidental to such appeal.

### 5. Action Against INA

No action shall lie against INA unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and INA. Any person or organization or the

legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join INA as a co-defendant in any action against the Insured to determine the Insured's liability, nor shall INA be impleaded by the Insured or his Legal Representative. Bankruptcy or insolvency of the Insured shall not relieve INA of any of its obligations hereunder.

## 6. Other Insurance

If collectible insurance with any insurer is available to the Insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over INA's limit of liability provided in this policy.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, INA shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, INA shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, INA shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

## 7. Subrogation

In the event of any payment under this policy, INA shall be subrogated to all the Insured's rights of recovery therefor against any person or organization; and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Any amount so recovered shall be apportioned as follows:

Any interest (including the Insured's) having paid an amount in excess of the retained limit plus INA's limit of liability hereunder shall be reimbursed first to the extent of actual payment. INA shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains unpaid, it shall be applied to reimburse the Insured or any underlying insurer, as their interest may appear. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by INA, it shall bear the expenses thereof.

## 8. Changes

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop INA from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

## 9. Assignment

Assignment of interest under this policy shall not bind INA until its consent is endorsed hereon; if, however, the Named Insured shall die, or be adjudged bankrupt or insolvent, such insurance as is afforded by this policy shall apply (a) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (b) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

## 10. Three Year Policy

If this policy is issued for a period of three years, the limits of INA's liability shall apply separately to each consecutive policy year thereof.

## 11. Maintenance of Underlying Policies

The Named Insured shall maintain the underlying policies (and renewals thereof) with limits of liability as stated in Schedule A in full effect during this policy period, except for any reduction or exhaustion of the aggregate limit or limits contained in such policies solely by payment of claims arising out of occurrences which happen during this policy period. Failure of the Named Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure INA shall be liable only to the extent that it would have been liable had the Named Insured complied therewith.

The Named Insured shall give INA written notice as soon as practicable of any change in the scope of coverage or in the amount of limits of insurance under any underlying policy, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

## 12. Cancellation

This policy may be cancelled by the Named Insured by surrender thereof to INA or any of its authorized agents or by mailing to INA written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by INA by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by INA shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If INA cancels, earned premium shall be computed pro rata. When this policy insures more than one Named Insured cancellation may be effected by the first named of such Named Insured for the account of all Insureds. Notice of cancellation by INA to the first named Named Insured shall be deemed notice to all Insureds and payment of any unearned premium to such first named Named Insured shall be for the account of all Insureds. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

## 13. Acceptance

By acceptance of this policy, the Insured agrees that this policy embodies all agreements existing between himself and INA or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the INSURANCE COMPANY OF NORTH AMERICA has caused this policy to be signed by its President and a Secretary at Philadelphia, Pennsylvania, and countersigned on the Declarations page by a duly Authorized Agent of the Company.

GEOFFREY STENGEL Secretary

FRANK E. RAAB, President

CODING AND INSTRUCTION SHEET

GENCY  **Hughes Walmsley & Company Inc.**

COMM. RATE  15% 1st  $1000. 10 %over

AME OF INSURED  **REILLY-BENTON COMPANY INC., et al**

POLICY PERIOD  FROM 1/1/73 to 1/1/74

DDRESS OF INSURED  **P.O. Box 52346, New Orleans, La.  70130**

SUBJECT TO ANNUAL RE-RATING?  ☒ YES  ☐ NO

UDIT DATA ☒ ANNUAL  ☐ SEMI-ANNUAL  ☐ QUARTERLY  ☐ MONTHLY  ☐ EXPIRATION  ☐ NOT SUBJECT

IMITS DATA $ 1,000,000. (SINGLE LIMIT) OR $ (B.I.) AND/OR $ (P.D.)

OTAL POLICY PREMIUM: $ 425. ADVANCE PREMIUM OF $ 425. IS TOTAL POLICY PREMIUM.

☐ INTERIM AUDIT BASIS. ☐ PREMIUM PAYMENT PLAN INITIAL INSTALLMENT®)

JAN 29 1973

☐ A B C D E F G H I J K L M

| S/O USE COUNTER-SIGNATURE ROCEDURE STATE | IS STATE FILING RE-QUIRED | AUTO | | GEN'L. LIAB. | | GEN'L. LIAB. | | W.C. |
|---|---|---|---|---|---|---|---|---|
| | | B.I. % | P.D. % | B.I. % | P.D. % | B.I. % | P.D. % | |
| | | EJ EZ | | MT | | | | HZ |
| 17 | 0 | 10% | 5% | 30% | 54% | | | 1% |

**REMARKS**

A. AVIATION $ (INDICATE IF EXCLUDE
LINE CLASS INCL. PASS- EXCL.
20 % 51 82 G6 R6 OWNE
80 % 51 82 G7 R7 N. OWN

B. FACULTATIVE REINSURANCE? ___ (YES), X (N
TARGET RISK? ___ (YES), X (N
HEAD OFFICE AUTHORITY? ___ (YES), X (IN

C. TAPE, WORKSHEET USED: FORM #LC 752c
OPTIONS: A ___, B ___, C ___

D. "BASIC" EXCESS RATING
(FROM SECT. III-A JUDGME
OF FORM #LC-1342) PREMIUMS MODIFIE
G.L. TOTAL $ 570. 55.
A.L. TOTAL $ 103. 100.

E. RATING BASIS: .129 Per $1000. of Sal

F. G.L. UNDERLYING COVERAGE:

(1) INA POL. #

(2) CARRIER: Reliance Ins. of Phila.

(3) TERM: 1 yr. to 1/1/74

4)  G. L. UNDERLYING LIMITS

SPLIT B.I. 100 / 300 / 300  SINGLE LIMIT  Products Included
LIMITS P.D. 50 / 50 / 50

| SERVICE OFFICE 1-3 | AGENCY NO. 4-9 | STAT. & ACCT. | POLICY | | | AUDIT TERM 19 | CO. 21 | REGISTRATION 22-28 | INS. IN. 29 |
|---|---|---|---|---|---|---|---|---|---|
| 580 New Orleans, La. | 117048 | | SYM. 10-12 | NUMBER 13-18 | | | | | |
| | | | SEE ABOVE | | | | | | 1 |

| RATE PLAN 20 | POL. YR. 31 | TERM 32-33 | EXPIRATION MO. 34-35 | STAT. YR. 36-37 | ACCT. YR. 38 | LINE 39-40 | MASS ISS. MO. 41-44 TAX DIST. | TAX STATE 45-46 | MASS. COV. 47-48 TERR. M.M. | CLASS 49 50 51 52 53 54 55 | VARIOUS 56 57 58 | EXPOSURE 59 60 61 62 63 | TOTAL PREMIUM 64-70 | COMM. RATE 71-73 | P.D. PREMIUM OR COMM. AMT. 74-80 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20 | 31 | 32-33 | 34-35 36-37 | | 38 | 39-40 | | | | CLASS AVIATION | COMP. COV. COLL. COV. | LIMITS B.I. P.D. MED EXPOSURE | 64-70 | 71-73 | 74-80 |

| RATE PLAN 20 | INCEPTION MO. 31-32 YR. 33 | EXPIRATION MO. DAY YR. 34-35 36-37 38 | LINE 39-40 | INSURED 41-54 | 55-56 | NET PREMIUM 57-63 | PREMIUM 64-70 | COMM. RATE OR AMT. 71-73 | CERT. NO. 74-79 | EX |
|---|---|---|---|---|---|---|---|---|---|---|
| ☒ | | SEE SOURCE DOCUMENT | | SEE SOURCE DOCUMENT | ☒ | | | | | |

2324R 12/10/60  PTD IN U.S.A

**INSURANCE COMPANY OF NORTH AMERICA**, PHILADELPHIA, PENNSYLVANIA

Hughes Walmsley & Company Inc.
New Orleans, La.
IOD Code J

Renewal of XBC 7 59 93

## EXCESS BLANKET CATASTROPHE LIABILITY POLICY

## DECLARATIONS

XBC 10 36 39

**Named Insured**

REILLY-BENTON COMPANY, INC.
(See Endorsement Attached)
P.O. Box 53246

**Address**

New Orleans, Louisiana 70130

Policy Period: From **January 1, 1973** to **January 1, 1974**

12:01 A.M., standard time at the address of the Named Insured as stated herein.

Audit Period: Annual, unless otherwise stated
Endorsements attached to policy at inception: 1 — Nuclear Energy Liability Exclusion LC1012
    2) Exclusion Contamination or Pollution LC1454
    3) Premium Computation Endorsement LC746e
    4) Amendment of Inspection And Audit Condition LC1577

### LIMITS OF LIABILITY

**INA'S LIMIT OF LIABILITY:**

ITEM 1.  $1,000,000.    arising out of any one occurrence because of personal injury, property damage or advertising injury or any combination thereof.

ITEM 2.  $1,000,000.    arising out of all occurrences during each policy year because of the products hazard, or the completed operations hazard, or both combined.

**INSURED'S RETAINED LIMIT:**
Underlying Insurance, or

ITEM 3.  $ 10,000.    because of personal injury, property damage or advertising injury arising out of any one occurrence not within the terms of coverage of underlying insurance but within the terms of the coverage of this insurance.

### PREMIUM COMPUTATION

| Estimated Annual Sales | Rate per $1,000. of Sales | Total Advance Premium |
|---|---|---|
| $3,300,000. | .129 | $425. |

MINIMUM PREMIUM $ 350. (Annual)

in the event of cancellation by the Named Insured, INA shall receive and retain not less than $ 125. as the Minimum Premium.

MD/mp 1/24/73

Countersigned By _____

Authorized Agent

SCHEDULE OF UNDERLYING INSURANCE

| SCHEDULE A | POLICY NO. XBC |
| --- | --- |

| Carrier, Policy Number & Period | Type of Policy | Applicable Limits |
| --- | --- | --- |
| A) Pacific Employers Ins. Co. PWC 001779 1/1/73 to 1/1/74 | Standard Workmen's Compensation & Employers' Liability | Coverage B-Employers' Liability $100,000.   one accident |
| B) Reliance Ins. of Phil. ZM7940102 1/1/73 to 1/1/74 | General Liability | Bodily Injury Liability $100,000.   each person $300,000.   each occurrence $300,000.   aggregate products  Property Damage Liability $50,000.   each occurrence $100,000.   aggregate premises- operations $100,000.   aggregate protective $100,000.   aggregate products $100,000.   aggregate contractual |
| C) INA CAL 104085 1/1/73 to 1/1/74 | Automobile Liability | Bodily Injury Liability $100,000.   each person $30,000.   each occurrence  Property Damage Liability $50,000.   each occurrence |

LC-1148  15M 8-6-68  PRINTED IN U.S.A.

► Issued by _____

(Name of Insurance Company)

This Endorsement, effective            Forms a part of Policy No.       Issued to:

►                               ►                        ►

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

NAME OF INSURED

REILLY BENTON COMPANY, INC., THE PEABODY CO., INC.
PROFIT SHARING TRUST FUND.

_____

Authorized Agent



## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(Broad Form)

Endorsement # 1

Named Insured_____

Effective_____ Policy No._____

Issued by_____
(Name of Insurance Company)

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### ALL AUTOMOBILE LIABILITY, GENERAL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN FAMILY AUTOMOBILE, SPECIAL PACKAGE AUTOMOBILE, COMPREHENSIVE PERSONAL AND FARMER'S COMPREHENSIVE PERSONAL INSURANCE

---

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to bodily injury or property damage

   (1) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

   (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

   (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

   (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

II. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

_____
Authorized Agent



**EXCLUSION**

(Contamination or Pollution)

Endorsement # 2

Named Insured _____

Effective _____ Policy No. _____

Issued by _____

(Name of Insurance Company)

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE

OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE

CONTRACTUAL LIABILITY INSURANCE

OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE

SPECIAL PROTECTIVE AND HIGHWAY LIABILITY INSURANCE—
NEW YORK DEPARTMENT OF PUBLIC WORKS

STOREKEEPER'S INSURANCE

---

It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Authorized Agent

Named Insured

Effective                                                                                    Policy No.

Issued by
                                                    (Name of Insurance Company)

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

The premium for this policy shall be based upon the—                                    Endorsement No. ___ 3

1. [X] One year wording

   [ ] Admissions
   [ ] Remuneration
   [ ] Receipts
   [ ] Cost
   [X] Sales

   of the Named Insured during the policy period and shall be computed by applying to such estimated premium basis, the rate set forth in the declarations. Upon delivery of this policy the Named Insured shall pay the advance premium shown in the declarations and upon termination of the policy shall render to INA a statement of the premium basis for the policy period and the earned premium shall be computed thereon. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to INA; if less, INA shall return to the Named Insured the unearned premium paid by the Named Insured.

1. [ ] Three year wording

   [ ] Admissions
   [ ] Remuneration
   [ ] Receipts
   [ ] Cost
   [ ] Sales

   of the Named Insured during the policy period and shall be computed by applying to such estimated premium basis, the rate set forth in the declarations. Upon delivery of this policy the Named Insured shall pay the advance premium shown in the declarations and at the end of each twelve months during the policy period, shall render to INA a statement of the premium basis during that period and the earned premium shall be paid to INA, except that the advance premium shown in the declarations shall be credited against the premium found to be due INA for the last twelve months of the policy period.

2. Earned premiums shall be subject to any applicable minimum premiums stated in the declarations.

3. When used as a premium basis:

   a) "admissions" means the total number of persons, other than employees of the Named Insured, admitted to the event(s) insured or to events conducted on the premises, whether on paid admission tickets, complimentary tickets or passes;

   b) "remuneration" means the entire remuneration earned during the policy period by all employees of the Named Insured engaged in the Insured's operations, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by INA.

   c) "receipts" means the gross amount of money charged by the Named Insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division;

   d) "cost" means the total cost to the Named Insured for operations performed for the Named Insured, during the policy period, by independent contractors on all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or sub-contractor, including all fees, allowances, bonuses or commissions made paid or due;

   e) "sales" means the gross amount of money charged by the Named Insured or by others trading under his name for all goods or products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division; monies charged one Insured under this policy by another Insured under this policy, for goods, products, installation, servicing or repair shall not be considered sales within the meaning of this definition.

                                                                    Authorized Agent

 AMENDMENT OF INSPECTION AND AUDIT CONDITION 

Endorsement # 4

Named Insured _____

Policy No. _____ Policy Period _____  Effective Date
                                                               of Endorsement _____

Issued by _____
                              (Name of Insurance Company)

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that the first paragraph of the "Inspection and Audit" Condition is amended to read as follows:

"The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation."

Authorized Agent