**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| IN RE: | : | CASE NO. 17-12870 |
| --- | --- | --- |
| | : | |
| REILLY-BENTON COMPANY, INC. | : | SECTION "B" |
| | : | |
| DEBTORS | : | CHAPTER 7 |

**BRIEF OF THE CHAPTER 7 TRUSTEE AND LIGA**
**IN RESPONSE TO THE COURT'S INSTRUCTIONS**
**AT THE JANUARY 26 STATUS CONFERENCE**

**NOW INTO COURT**, comes David V. Adler, Trustee ("Trustee") and the Louisiana Insurance Guaranty Association ("LIGA"), who submit this response to the following questions raised by the Court at the January 26, 2021 status conference: "whether the Court has the authority to use Rule 9019 to approve settlements that would compromise the rights of individuals who are not parties to those settlements by enjoining them from proceeding against entities other than the Debtor for their asbestos tort claims, when 1) this case was filed under chapter 7 and 2) the applicable Louisiana law grants tort claimants the right to proceed directly against insurance companies."

**I.  Introduction and Summary of Argument**

The Trustee and LIGA note that the general legal analysis and argument in response to the Court's questions have been addressed in detail in the Trustee/Century Brief [P-  ] filed this same day, and those arguments and analysis are equally applicable to the Trustee's Compromise Motion with The Louisiana Insurance Guaranty Association [P-48] ("the LIGA Compromise") and are adopted herein in full. The purpose of this brief is to supplement the Trustee/Century brief to address two additional issues that are particularly relevant to the agreement between the Trustee and LIGA.

*First,* this Brief explains how the analysis in the Trustee/Century Brief applies equally in the context of the LIGA Compromise which has a different structure from the Trustee's settlement with Century ("Century Compromise"). As discussed below, any structural differences have no effect on the key issues before this Court because in both instances the claims against the insurer are channeled to the proceeds.

*Second,* as it relates to the LIGA Compromise, none of the Objectors have standing to object that the requested injunction would cut off their claims against LIGA. The reason is that none of the Objectors timely filed proofs of claim with LIGA, and thus none of the Objectors have any cognizable claim against LIGA that would be cut off by the injunction. As such, no Objector is in any way prejudiced by, or would incur any injury-in-fact due to, the injunction to which they object.

II. **Law and Argument**

   A. **For the same reasons set forth in the Trustee/Century Brief, this Court has the authority to approve the LIGA Compromise and issue the requested injunction in this Chapter 7 case.**

The legal authority and analysis addressed in detail in the Trustee/Century Brief is equally applicable to the LIGA Compromise and is adopted fully in this Brief. However, the Trustee will address here the one distinction in the structure of the settlements. While the Century Compromise would be structured as a sale of the policies free and clear of claims with the claims being channeled to the proceeds, the LIGA Compromise would instead be an agreed turnover to the estate, pursuant to §§ 542 and 363 of the Bankruptcy Code, of the full aggregate limits of liability remaining under the policies of the insolvent insurers Reliance Insurance Company and United Pacific Insurance Company (collectively "Reliance") for which LIGA has limited statutory

responsibility under the LIGA Act, La. R.S. 22:2051, *et seq.*[1] (the "LIGA Act"). However, as with the Century Compromise, under the LIGA Compromise, all of the associated claims against LIGA will be channeled to the proceeds that will be turned over to the estate so that the limited funds available can be administered by the Trustee in accordance with the one of the prime purposes of bankruptcy law—the promotion of the ratable distribution of property of the estate to the creditors of the debtor.

The reason for this difference lies in the nature of the estate's claims. LIGA is not an insurer, and the LIGA Act limits its obligations to pay and/or defend LIGA-covered claims on behalf of an insolvent insurer.[2] Because the LIGA Compromise does not relate to policies of an existing insurer, but rather to LIGA's statutory obligations to pay certain amounts in connection with the insurance policies of an insolvent insurer, the LIGA turnover motion does not incorporate the § 363 mechanism because there is no need to transfer or cancel any policies. Nevertheless, the effect of the relief is identical in that, as with a § 363 "free and clear" sale that channels the asbestos claims to the proceeds, LIGA's turnover of its statutory obligations, stemming from the policies of the insolvent Reliance, likewise channels the asbestos claims to the property of the estate that LIGA is turning over.

As explicitly recognized by the Court in *Macarthur Co. v. Johns-Manville Corp.,* 837 F.2d 89, 94 (2d Cir. 1988), the distinction between a voluntary settlement and sale free and clear of liens is a distinction without a difference as long as in both instances the claims against the insurer

---

[1] The substantive law applicable to claims against LIGA is the LIGA Act that was in effect on the date of insolvency of the insurer from whom LIGA's liability is derived. *Prejean v. Dixie Lloyds Insurance Company,* 660 So.2d 836, 837 (La. 1995). At the time of the Reliance insolvency in 2001, the LIGA Act was found at La. R.S. 22:1375, *et seq.* (2001). The LIGA Act was renumbered by Acts 2008, No. 415, §1, eff. Jan. 1, 2009. The current citations of the Act are used herein for the Court's convenience; and differences from the 2001 Act are noted herein.

[2] *Bownes v. General Motors Corp.,* 608 So. 2d 999, 1004-05 (La. 1992). "Whether or not one agrees with its reasoning, the Legislature has chosen to specifically limit LIGA's responsibility. Unlike the insurer, LIGA's liability arises not out of its voluntary contracts, but rather from legislative mandate." Guglielmo and Balhoff, *The ABC's of LIGA*, 53 La. L. Rev. 1759, 1777 (July, 1993).

are channeled to the proceeds. As the Court explained:

> Admittedly, the insurance settlement and accompanying injunction in this case are not precisely the same as the traditional sale of real property free and clear of liens followed by a channeling of the liens to the proceeds of the sale…. Here, the property of the estate at issue (insurance policies) was not technically 'sold'; rather, Manville liquidated its interest via a voluntary settlement….Nevertheless, the underlying principle of preserving the debtor's estate for the creditors and funneling claims to one proceeding in the bankruptcy court remains the same."

*Id.* at 94.

The LIGA Compromise unquestionably channels the claims to the proceeds. Therefore, the authority to accomplish the settlement in a Chapter 7 case that provides for a § 105 ancillary injunction where it is essential to give effect to the settlement applies equally here.[3] The ancillary injunction is necessary in this case, as it is in all mass tort asbestos settlements, to protect LIGA as the settling party from being subjected to attempts by persons seeking to circumvent the Trustee's administration of the property of the estate and the LIGA Act by continued pursuit of claims against LIGA after it has satisfied its statutory obligations under the LIGA Act through the turnover to the estate and the channeling of all claims to the statutory proceeds. For settlement purposes, LIGA understandably needs assurances that once it turns over the proceeds representing the extent of its statutory obligations, for the Trustee's equitable administration among equally deserving claimants, all potential claims to the LIGA funds will be administered here under the supervision of this Court. LIGA is a quasi-governmental body of limited power and funding and cannot subject itself to the risks of continued litigation without the certainty of the requested injunction.

---

[3] Just as in *Johns-Manville* cited above, the court's injunction is "necessary to effectuate the Court's channeling authority, that is, to make sure that claims to Manville's insurance proceeds were, in fact, channeled to the settlement fund and could not be asserted directly against the insurers." *Id.* at 92; *see also Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 211 (2d Cir. 2014) (*quoting In re Quigley Co., Inc.*, 676 F.3d 45, 58 (2d Cir. 2012)).

**B. Of the more than 18,500 potential claimants, the only claimants that raised objections to the LIGA Compromise do not even have standing to object to the requested injunction because their claims are time-barred under the LIGA Act.**

Neither the Roussel & Clement Claimants nor the Landry & Swarr Claimants have standing to object that the requested injunction in the LIGA compromise would cut off their claims against LIGA because their alleged statutory claims against LIGA were filed well beyond the statutory "bar date" provided in the LIGA Act for the filing of a claim for which LIGA would be responsible. LIGA's obligation to pay claims against Reilly-Benton arises from its status as the statutory obligor for claims of the insolvent insurer Reliance who provided certain policies of insurance to Reilly-Benton, with LIGA's obligation being subject to the limits, protections, exclusions, credits, and other provisions of the LIGA Act, including the bar date provisions.

The applicable LIGA bar date in this case was determined as follows. The Commonwealth Court of Pennsylvania issued an Order of Liquidation with findings of insolvency of the Reliance Insurance Company on October 3, 2001.[4] The Order provided that the "Liquidator shall give notice…advising claimants to file with the Liquidator their claims…on or before the date (which shall be no earlier than one year from the date of the notice) the Liquidator shall specify therein.[5] The Liquidator was required to give notice to all persons who may have claims against Reliance and to publish notice in newspapers of general circulation where Reliance had its principal places of business, as well as in the national edition of the Wall Street Journal, providing the deadline and procedure for filing a claim.[6] The required Notice from the Liquidator provided a deadline for filing proofs of claim of no later than December 31, 2003.[7]

---

[4] *Koken v. Reliance Insurance Company,* 269 M.D. 2001, Commonwealth Ct. of Penn., Order of Liquidation, 10/03/2001. Because this Brief is addressed to the limited questions posed by the Court, the Trustee and LIGA are not attaching all of the documents supporting the evidentiary record to this Brief.
[5] *Id.,* p. 7.
[6] *Id.*
[7] Notice to Claimants, Statutory Liquidator of Reliance Insurance Company.

The Objectors' alleged claims against LIGA are time barred because their demands were not filed in accordance with the statutory deadline provided in La. R.S. 22:2058(A)(1)(c)(i)[8], which plainly provides in pertinent part that:

> Notwithstanding any other provision of this Part, a "covered claim" shall not include a claim filed with the association after the earlier of five years after the date of the order of liquidation of the insolvent insurer or the final date set by the domiciliary court for the filing of claims against the liquidator or receiver of an insolvent insurer.

*Id.* In this case, the earlier of the dates referenced in the statute is <u>December 31, 2003</u>, the claim deadline set by the Order of the Commonwealth Court of Pennsylvania in connection with the Reliance Insurance Company liquidation. Any claim filed after December 31, 2003 is filed too late and is not a "covered claim" as defined by the LIGA Act. Because all of the cited Roussel & Clement Claimants filed their claims more than ten (10) years after the "bar date", their claims are not "covered claims."[9] The Landry & Swarr Claimants filed their claims more than ten (10) years after the bar date (or did not file them at all), so they likewise do not have "covered claims."[10]

---

[8] *Id.*

[9] The *Courville* claim was filed on February 3, 2017, more than thirteen (13) years after the bar date for the filing of claims against LIGA as the statutory successor to Reliance. See Petition for Damages, *Courville v. Lamorak Insurance Company, et al.,* No. 2017-1117, Division "J", Section "5", Civil District Court, Parish of Orleans, State of Louisiana. The *Brazan* claim was filed on September 29, 2017, more than thirteen (13) years after the bar date. See Petition for Damages, *Brazan v. Lamorak Insurance Company, et al.,* No. 2017-9390, Division "M", Section "13", Civil District Court, Parish of Orleans, State of Louisiana. The *Hedges* claim was filed on August 17, 2016, more than twelve (12) years after the bar date. See Petition for Damages, *Hedges v. Pennsylvania General Inaurance Company, et al.,* No. 2016-8284, Division "M", Section "13", Civil District Court, Parish of Orleans, State of Louisiana. The *Tregre* claim was filed on May 11, 2015, more than eleven (11) years after the bar date. *See* Petition for Damages, *Tregre v. Pennsylvania General Insurance Company, et al.,* 2015-4474, Division "N", Section "8", Civil District Court, Parish of Orleans, State of Louisiana.

[10] *Donald Bridges'* claim was filed on July 8, 2019, more than sixteen and a half (16 ½) years after the bar date. Docket No. 2019-7987, Civil District Court, Parish of Orleans, State of Louisiana. Neither Reliance nor LIGA as its statutory successor is named as a Defendant. *Tena Danos'* claim was filed on August 23, 2018, more than fifteen and a half (15 ½) years after the bar date. Docket No. 2018-8425, Civil District Court, Parish of Orleans, State of Louisiana. Neither Reliance nor LIGA as its statutory successor is named as a Defendant. *Mary Sanderson's* claim was filed on October 11, 2018, more than fifteen and a half (15 ½) years after the bar date for the filing of claims against LIGA as the statutory successor to Reliance. Docket No. 2018-10279, Civil District Court, Parish of Orleans, State of Louisiana. Neither Reliance nor LIGA as its statutory successor is named as a Defendant.

A claimant's existing rights vest <u>against LIGA</u> only upon the insolvency of the insurer.[11] Therefore, the LIGA Act's time limitation for filing all claims against LIGA includes those claims arising prior to the determination of the insurer's insolvency. The Louisiana First Circuit Court of Appeal has squarely addressed this issue, and held that an action was untimely when it was brought against an insolvent insurer after the filing deadline despite the accident having occurred after the deadline for filing because there was a need for "a degree of finality in liquidation proceedings."[12] The First Circuit held that plaintiff's claim was untimely filed, stating that, "the fact that the plaintiff's claim did not come into existence until after the filing deadline, consequently resulting in an untimely claim, prevents her from asserting a claim against the assets of the defunct insurer."[13]

As a general rule, the Louisiana Supreme Court has opined that "[r]emedial statutes and statutes governing procedure apply to all actions brought subsequent to their promulgation."[14] The U. S. Fifth Circuit Court of Appeals further ruled that prescriptive statutes are remedial, and the shelter they provide is not a fundamental right of the individual, but rather is a right provided by the State for its own purposes and not because of the merits of the obligation."[15] "Such statutes may be modified by shortening the period prescribed providing the time is still running and a reasonable time remains for commencement of the action, or may be lengthened until such time as

---

There is no record of a claim filed on behalf of *Frank Tranchina* in either the regular business records of LIGA or the on-line records of the Civil District Court, Parish of Orleans, State of Louisiana. It has been more than seventeen and a half (17 ½) years since the bar date for the filing of claims against LIGA as the statutory successor to Reliance.

[11] *Prejean v. Dixie Lloyds Insurance Company, supra; Harvey v. Traylor,* 96-1321 (La. App. 4 Cir. 02/05/97), 688 So.2d 1324.
[12] *Thompson v. Citizens National Insurance Company, et al.,* 98-CA-0269, 10 (La. App. 1 Cir. 02/19/99), 729 So.2d 709, 712.
[13] *Id.*
[14] *Stallings v. Stallings,* 177 La. 488, 496, 148 So. 687, 689 (La. 1933), citing *State v. Brossette,* 163 La. 1035, 113 So. 366 (La. 1997).
[15] *United States v. Nebo Oil Co.,* 19 F.2d 1003, 1009 (5th Cir. 1951).

the bar of the statute is complete and property rights have vested."[16] The LIGA "bar date" meets this test because the time for filing claims against LIGA for all existing insolvencies (and thus, vested claims) was still running at the time of its enactment, it applied prospectively only to insolvencies after its effective date, and it allowed claimants up to five (5) years to file their claims against LIGA. Therefore, no fundamental rights of individuals are divested by the application of this bar date to claims that did not yet exist at the time of the expiration of the claim-filing period.

In contrast, LIGA obtained a vested substantial right at midnight on December 31, 2003— i.e., that it had received timely notice of any and all claims for which it would be responsible on behalf of Reliance, and that any claims it might receive after that date were time-barred by the LIGA Act. The Louisiana Legislature has made clear its intent to provide a "bar date" for claims against LIGA, which had lapsed before any of the claims of the Objectors were asserted.

In fact, one of the Roussel & Clement Claimants. Joseph F. Brazan, identified in footnote 1 of the Roussel & Claimant Objection to the LIGA Compromise, asserted claims against LIGA arising out of the insolvency of another insurer in the same suit in which he also asserted his claims against Reilly-Benton. Mr. Brazan's claims against LIGA were dismissed on the basis that they were not filed by the "bar date" and therefore LIGA had no liability for his claims.[17] The Louisiana Fourth Circuit Court of Appeals held that the LIGA "bar date" is "clear and unambiguous; thus, it must be applied as written."[18] Since Mr. Brazan's claim was not filed by the bar date set by the Liquidation Order, his claim was not a "covered claim" under the Act; "stated otherwise, his claim is prescribed."[19] This same reasoning applies to his claims against LIGA on behalf of Reliance,

---

[16] *Id.*
[17] *Brazan v. Lamorak Insurance Company, et al.,* 2018-0609 (La. App. 4 Cir. 07/23/18), attached hereto.
[18] *Id.,* at 2.
[19] *Id.,* at 3.

and to the remainder of the claims of the Roussel & Clement Claimants, as well as all of the claims of the Landry & Swarr Claimants.

Significantly, none of the more than 11,000 asbestos claimants that filed timely LIGA claims (and would have standing to object to the injunction requested in the LIGA Compromise Motion) has objected. This Court should overrule the Objectors primary objection to the LIGA settlement on this basis alone. The Objectors have no standing because their claims against Reilly-Benton were asserted too late to constitute valid "covered claims" against LIGA, and they are in no way prejudiced by the Trustee's LIGA Compromise.

### III. Conclusion

The initial rulings by this Court (Judge Brown) set the course for the Trustee's efforts in this case.[20] The Objectors have repeatedly misconstrued Judge Brown's prior rulings in this case and have falsely claimed that the Trustee has acted at the behest of Century and LIGA. Nothing could be further from the truth. David Adler, the Chapter 7 panel trustee in this case, has been a highly respected Chapter 7 trustee for more than 36 years and has an impeccable reputation in the bankruptcy community. He understands his obligation to administer property of the estate in accordance with the fundamental policy of equality of distribution imbedded in the Bankruptcy Code, and when Judge Brown agreed that this case was a mass tort case, the Trustee proceeded accordingly.

Indeed, the Trustee retained special counsel for the express purpose, among other things, of "maximiz[ing] any insurance recoveries," "[n]egotiating settlements, agreements-in-principle or other resolutions of coverage disputes," and "[a]ssisting the Trustee with any insurance-related matters arising in connection with the formulation of pleadings and orders relating to compromise

---

[20] A summary of the Court's initial rulings are included on pages 25-26 of the Trustee/Century Brief.

agreements, sales, and injunctions as may be necessary for the recovery of insurance proceeds for distributions to claimants." The Court approved the employment of special insurance counsel, specifically overruling the Roussel & Clement firm's objection, which had argued that such retention was not necessary because the proceeds of Debtor's insurance policies were not property of the estate and instead were owned by the claimants. In addition, both of the compromises that were reached involved complicated issues, and they were vigorously negotiated, with the understanding that these compromises would likely set the standard in this case for potential compromises with other Reilly-Benton liability insurers.

No one can dispute the devastating health consequences that asbestos caused for the many victims that were exposed to the product over the years, and the fact that this bankruptcy case involves more than 18,500 asbestos claimants is devastating to all of those with legitimate claims. But under the Bankruptcy Code, the Objectors in this case have no greater rights to grab the insurance proceeds ahead of other claimants. The Roussel & Clement plaintiffs argued two times to Judge Brown that they should be allowed a prior right to the policy proceeds, and Judge Brown rejected those arguments, correctly recognizing that this case is a mass tort case, which under clear Fifth Circuit precedent requires "oversight by the court…to assure an equitable distribution of the available assets."[21] The Trustee should be given the right to present his compromise agreements to the Court for approval.

---

[21] *Martinez v. OGA Charters, L.L.C.* (*In re OGA Charters, L.L.C.*), 901 F.3d 599, 604 (5th Cir. 2018).

DATED: January 21, 2021

        Respectfully submitted,

        **CHAFFE McCALL, LLP**
        2300 Energy Centre, 1100 Poydras Street
        New Orleans, Louisiana 70163-2300
        Telephone: (504) 585-7000

        By: */s/ David J. Messina*
        David J. Messina, #18341
        messina@chaffe.com
        Fernand L. Laudumiey, IV, #24518
        laudumiey@chaffe.com
        *Counsel to the Trustee*

        **STEWART, ROBBINS BROWN & ALTAZAN, LLC**
        301 Main St., Suite 1640
        Baton Rouge, LA 70801
        (225) 231-9998 Telephone
        (225) 709-9467 Fax

        By: */s/ William S. Robbins*
        William S. Robbins (La. # 24627)
        wrobbins@stewartrobbins.com
        Brandon A. Brown (La. #25592)
        bbrown@stewartrobbins.com
        *Counsel to Louisiana Insurance Guaranty Association*

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing pleading has been served by this Court's CM/ECF system to all parties participating in the CM/ECF system.

        Respectfully submitted,

        By: */s/ David J. Messina*
          David J. Messina, #18341

NO. 2018-C-0609

COURT OF APPEAL, FOURTH CIRCUIT

STATE OF LOUISIANA

JOSEPH F. BRAZAN

VERSUS

LAMORAK INSURANCE COMPANY, ET AL

IN RE: THE LOUISIANA INSURANCE GUARANTY ASSOCIATION

APPLYING FOR: EXPEDITED SUPERVISORY WRIT

DIRECTED TO: HONORABLE PAULETTE IRONS
CIVIL DISTRICT COURT, ORLEANS PARISH
DIVISION "M", 2017-09390

**WRIT GRANTED**

The Relator, Louisiana Insurance Guaranty Association ("LIGA"), seeks review of the trial court's July 11, 2018 judgment, denying its peremptory exception of prescription. For the reasons that follow, we grant LIGA's writ and reverse the trial court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 29, 2017, Joseph Brazan commenced this suit against numerous defendants, including Eagle, Inc. (formerly known as Eagle Asbestos & Packing Company, Inc.) ("Eagle"), alleging that he was exposed to asbestos in numerous employment settings. On December 8, 2017, Mr. Brazan filed a First Supplemental and Amending Petition adding LIGA as a defendant. Mr. Brazan averred that Eagle's excess insurer from August 1968 to August 1974 was The Home Insurance Company ("Home"); that Home was now insolvent; and that LIGA was responsible for Home's liability. In response, LIGA filed a peremptory

1

exception of prescription. Following a hearing, the trial court denied LIGA's prescription exception. This writ followed.

## DISCUSSION

The gist of LIGA's prescription exception is that Mr. Brazan's claim does not satisfy the requirements of a "covered claim," set forth in La. R.S. 22:2058(A)(1)(c)(i), because it was not timely filed. The pertinent portion of the statutory definition of a "covered claim" is as follows:

> ... Notwithstanding any other provision of this Part, a "covered claim" shall not include a claim filed with the association after the earlier of five years after the date of the order of liquidation of the insolvent insurer or the final date set by the domiciliary court for the filing of claims against the liquidator or receiver of an insolvent insurer.

La. R.S. 22:2058(A)(1)(c)(i).

Construing this statute, a commentator has observed that "LIGA Law requires claims to be filed with LIGA within the deadline set by the domiciliary court for the filing of claims against the liquidator or receiver or at least before the expiration of five years after the date of the order of liquidation, whichever occurs first." Stephanie B. Laborde, James E. Moore, Jr., and Heather Landry, *The DEF's of LIGA: An Update to the ABC's of LIGA*, 77 LA. L. REV. 997, 1014 (2017). We find, as LIGA contends, that this statutory provision is clear and unambiguous; thus, it must be applied as written. *See* La. C.C. art. 9 (providing that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature").

For purposes of applying the statute, the relevant dates in this case are two-fold: (i) the order of liquidation of Home was issued on June 13, 2003; and (ii) the Superior Court of Merrimack County, New Hampshire, set the claim deadline—"bar date"—for claims against Home as June 13, 2004. Thus, Mr. Brazan's claim,

2

to be a "covered claim," had to filed against LIGA—standing in the insolvent insurer's (Home's) place—by June 13, 2004, the bar date set by the New Hampshire court. Mr. Brazan did not file his claim by that date; his claim was not filed until December 8, 2017. His claim against LIGA is thus not a "covered claim" under La. R.S. 22:2058(A)(1)(c)(i); stated otherwise, his claim is prescribed.

Accordingly, LIGA's writ is granted. Mr. Brazan's claim against LIGA for any coverage associated with policies issued to Eagle by Home is prescribed. The trial court's judgment denying LIGA's peremptory exception of prescription is reversed.

New Orleans, Louisiana this __23rd__ day of ____July____, 2018.

_____
JUDGE ROSEMARY LEDET

_____
JUDGE TIFFANY G. CHASE

_____
JUDGE DALE N. ATKINS

A TRUE COPY
NEW ORLEANS
JUL 23 2018
Justin L. Woods CLERK
COURT OF APPEAL FOURTH CIRCUIT