## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| REILLY-BENTON COMPANY, INC. | ) | CASE NO. 17-12870 |
| | ) | |
| | ) | SECTION A |
| | ) | |

### LIBERTY MUTUAL INSURANCE COMPANY'S
### OPPOSITION TO ROUSSEL & CLEMENT CREDITORS'
### AND COURVILLE PARTIES' MOTIONS FOR "SUMMARY JUDGMENT"

Liberty Mutual Insurance Company ("Liberty Mutual") hereby opposes the Motion for Summary Judgment and Supporting Memorandum of Law (ECF Nos. 163 and 163-1) filed by the so-called Roussel & Clement Creditors on July 26, 2022 (the "Motion").[1]  In their Motion, the Roussel & Clement Creditors seek summary judgment that the proceeds of insurance policies allegedly issued by Liberty Mutual (the "Alleged Liberty Policies") and other insurers to Reilly-Benton Company, Inc. ("Reilly-Benton") are not assets of Reilly-Benton's bankruptcy estate, and that the automatic stay therefore does not apply to direct action claims against Reilly-Benton's insurers.  The Motion is both procedurally improper and substantively wrong.

Procedurally, the Motion suffers from at least two dispositive flaws.  First and foremost, there are no pending claims asserted against or by Liberty Mutual in this proceeding on which summary judgment could be granted, in whole or in part.  Second, even if the Motion somehow

---

[1]    On August 24, 2022, Mary Patsy Courville, Mavis Todd Courville, Michael Wade Courville and Joseph Eric Courville (the "Courville Parties") filed a separate motion for summary judgment that was substantively identical to the Roussel & Clement Creditors' Motion.  *See* Dkt. No. 198 and 198-1.  The Courville Parties are among the Roussel & Clement Creditors, and therefore had joined in the initial Motion.  Thus, it is not clear to Liberty Mutual why the second motion was necessary, or what it purported to accomplish.  Regardless, this Opposition responds to both motions.

could be considered a motion for summary judgment, which it cannot, virtually every "fact" stated in the Motion is disputed.  The Motion therefore can and should be denied on those procedural grounds alone.

Substantively, to the extent that what the Roussel & Clement Creditors are really seeking is relief from stay, their arguments are wrong as a matter of settled Fifth Circuit law.  Reilly-Benton is a debtor in a Chapter 7 mass tort bankruptcy case.  Under binding Fifth Circuit precedent, the automatic bankruptcy stay applies to bar direct action claims against the insurers of a mass tort debtor such as Reilly-Benton, because in those circumstances the insurance proceeds are considered assets of the estate.  *See In re OGA Charters, LLC*, 910 F.3d 599 (5th Cir. 2018); *Sosebee v. Steadfast Ins. Co*., 701 F.3d 1012 (5th Cir. 2012).  And, the Fifth Circuit has held that the stay applies if the policy proceeds are even "arguably" property of the estate, meaning that any reasonably close calls must be resolved in favor of the stay.  *See In Re Chestnut,* 422 F.3d 298 (5th Cir. 2005).

The Roussel & Clement Creditors do not dispute, distinguish or even address this dispositive Fifth Circuit authority in their Motion.  Rather, they seek to divide the asbestos claims against Reilly-Benton into two categories: (a) products claims, meaning claims in which the underlying plaintiffs are exposed to asbestos-containing products manufactured, sold and/or distributed by Reilly-Benton ("Products Claims"); and (b) contracting claims, meaning claims in which the underlying plaintiffs are exposed to asbestos due to the contracting activity of Reilly-Benton, such as the installation or rip-out of asbestos ("Contracting Claims").  According to the Roussel & Clement Creditors, Products Claims are subject to the aggregate limits of the Alleged Liberty Policies, and therefore may be assets of the estate, but Contracting Claims are not subject to an aggregate limit, and therefore may not be assets of the estate.  The Motion seeks relief only

as to the Contracting Claims.  Once again, the Roussel & Clement Creditors' arguments fail, for at least three reasons.

*First*, neither Reilly-Benton nor the Roussel & Clement Creditors have identified even a single insurance policy issued by Liberty Mutual to Reilly-Benton, such that the existence, terms and conditions of the Alleged Liberty Policies remain in dispute.  Thus, how Products and Contracting Claims should be treated under any Alleged Liberty Policies proven by the Roussel & Clement Creditors, if any, is at best unclear.  *Second*, the secondary evidence on which certain of the Roussel & Clement Creditors have relied in other cases to prove the existence of the Alleged Liberty Policies are three certificates of insurance, each of which state on their face that the aggregate limits apply to "all hazards including products."  Thus, if the Roussel & Clement Creditors are able to prove the existence of any of the Alleged Liberty Policies, the aggregate limits of those policies may very well apply to Contracting Claims, which would undermine a fundamental premise of the Motion.  *Third*, if the Roussel & Clement Creditors succeed in proving the existence and terms of any Alleged Liberty Policies **and** that the aggregate limit of such policies does not apply to Contracting Claims, each plaintiff will have to prove that his or her claim is actually a Contracting Claim rather than a Products Claim to fall within the construct advanced by the Roussel & Clement Creditors in the Motion.  Yet, none of the Roussel & Clement Creditors have even attempted to offer such proof with respect to their claims.  And, more generally, virtually every lawsuit filed against Liberty Mutual as alleged insurer of Reilly-Benton includes allegations of products exposure, meaning that every such claim is at least potentially a Products Claim.  As a result, the policy proceeds are at least "arguably" assets of the estate.

Fundamentally, the issue of whether insurance policies are assets of the Reilly-Benton bankruptcy estate is a key issue to be decided in the upcoming hearings on the motions to approve

the LIGA and Century settlements.  The decisions in those cases either will resolve the issues presented by the Motion, or at least provide guidance as to how they should be resolved.  Thus, the status quo should be maintained, and the stay should not be lifted as to claims against Liberty Mutual as alleged insurer of Reilly-Benton, until those hearings are complete and a decision has been rendered.

## STATEMENT OF FACTS

I.     **The Asbestos Claims Against Reilly-Benton**.

To understand the context of the relief being sought by the Roussel & Clement Creditors in the Motion, Liberty Mutual will briefly describe the relevant background of the asbestos claims asserted against Reilly-Benton.

Beginning in the 1990s, Reilly-Benton alleged that Liberty Mutual, along with several other insurers, provided coverage for asbestos-related claims asserted against Reilly-Benton.  *See* Affidavit of Fred Wiedmann ("Wiedmann Aff."), ¶ 4.[2]  Neither Liberty Mutual nor Reilly-Benton ever located any insurance policies issued by Liberty Mutual to Reilly-Benton that could respond to those asbestos claims.  *Id.*, ¶ 5.  The principal documents on which Reilly-Benton (and later, certain asbestos claimants) relied bearing on the existence of any policy are three certificates of insurance located by Reilly-Benton, and provided to Liberty Mutual by Reilly-Benton.  *Id.*, ¶ 6.  These certificates appear to refer to three general liability policies allegedly issued to Reilly-Benton for the following periods:  October 1, 1961 to October 1, 1962; October 1, 1965 to October 1, 1966; and October 1, 1966 to October 1, 1967, each of which was identified as having an

---

[2]     The Wiedmann Affidavit has been publicly filed by Liberty Mutual in other cases in which it has been sued as an alleged insurer of Reilly-Benton.  A version of the affidavit filed in the case of *Courville v. Lamorak Ins. Co.,* No. 2017-01117 (Orleans Parish), with exhibits, is attached as Ex. 1.

occurrence and aggregate limit of $500,000 for bodily injury claims. *Id.,* Ex. B.  The three

certificates reflect total occurrence and aggregate limits of $1.5 million ($500,000 per year for

each of three years). *Id.*  In the absence of copies of any policies or evidence pertaining to their

issuance or material terms, a significant question existed -- and continues to exist -- as to whether

Liberty Mutual owed any coverage obligations to Reilly-Benton and, if so, the terms and

conditions of such coverage.

Nonetheless, Liberty Mutual agreed in good faith to pay certain defense and indemnity

costs in connection with asbestos claims asserted against Reilly-Benton, in accordance with a

compromise cost sharing agreement effective January 1, 1995 (the "Cost Sharing Agreement").

*Id.,* ¶ 7.  Liberty Mutual paid $3 million in indemnity costs in accordance with the Cost Sharing

Agreement, after which it informed Reilly-Benton that it had satisfied and exhausted any possible

coverage obligation owed to Reilly-Benton.  *Id.,* ¶¶ 8-9.[3]

Even after the $3 million in payments, Reilly-Benton sought additional coverage from

Liberty Mutual, which Liberty Mutual disputed.  *Id.,* ¶ 9.  Three issues in particular drove the

parties' dispute: (a) whether Reilly-Benton could prove the existence, terms and conditions of any

alleged Liberty Mutual insurance policies; (b) if so, did the policies have general aggregate limits

that applied to all claims, or did the aggregate limits apply only to Products Claims; and (c) if the

---

[3]     Although the three certificates reflect a total per occurrence and aggregate limit of
$1.5 million ($500,000 per year for each of three years), based only on those certificates (which
do not establish the existence or terms of coverage), Liberty Mutual in good faith indemnified
Reilly-Benton for the annual $500,000 limit over the six-year period from the earliest to the latest
certificate, *i.e.*, from October 1, 1961 to October 1, 1967.

limits applied only to Products Claims, how much exposure, if any, did Reilly-Benton face for Contracting Claims.[4]

Liberty Mutual and Reilly-Benton agreed to enter mediation and engaged in adversarial negotiations, and ultimately resolved all of their disputes in July 2013.  *Id.,* ¶ 11. Specifically, Liberty Mutual agreed to pay an additional $10.5 million into a newly created and independent trust, which in turn would pay compensation and defense costs for asbestos-related claims asserted against Reilly-Benton.  *See* Wiedmann Aff., Ex. A.  In return, Reilly-Benton agreed that all of Liberty Mutual's alleged policies, not one of which has ever been located, were released and exhausted.  *See* Settlement Agreement, § II.B.  Liberty Mutual believed that the Settlement Agreement ended any possible obligation Liberty Mutual could have under the Alleged Liberty Policies in connection with asbestos claims asserted against Reilly-Benton.

## II.     The Reilly-Benton Bankruptcy And Post-Bankruptcy Litigation.

On October 25, 2017, Reilly-Benton filed its petition for bankruptcy.   With Reilly-Benton in liquidation, certain individuals brought direct action claims against Liberty Mutual and Reilly-Benton's other insurers, in violation of the automatic stay.  Virtually every one of those complaints included allegations of exposure to products manufactured, distributed or sold by Reilly-Benton -- *i.e.* Products Claims.  *See, e.g*., Ex. 2.  A much smaller number of complaints **also** included allegations relating to exposure to contracting activities -- *i.e.* Contracting Claims.  *See, e.g.,* Ex. 3.  Thus, virtually every case either affirmatively was, or could have been, a Products Claim.

---

[4]      Reilly-Benton was a distributor of asbestos-containing products.  Claims against Reilly-Benton as a distributor would be considered Products Claims.  Under certain commercial general liability ("CGL") policies, aggregate policy limits -- *i.e.* the maximum amount that can be paid out under a policy regardless of the number of separate occurrences or claims -- apply only to Products Claims.  Under those policies, Operations Claims might not be subject to the aggregate limit.

A threshold question that Liberty Mutual sought to address was whether its 2013 Settlement Agreement with Reilly-Benton barred plaintiffs from pursuing direct action claims against Liberty Mutual.  Liberty Mutual obtained summary judgment in its favor on that issue in two trial courts, one of which was the *Courville* matter.  The *Courville* plaintiffs filed a writ to the Fourth Circuit, and the Fourth Circuit reversed the summary judgment decision in favor of Liberty Mutual.  *See Courville v. Lamorak Ins. Co.*, 301 So. 2d 557 (La. App. 4th Cir. 2020), *writ denied* 302 So. 3d 1121.

As respects the claims of Liberty Mutual, the Court's decision was narrow.  Specifically, the Court held that Liberty Mutual's 2013 Settlement Agreement was not enforceable against third-party tort claimants under La. Rev. Stat. 22:1262, which prohibits an insurer and insured from retroactively rescinding or annulling an insurance policy.  *Id*. at 559-60.  Of note, the *Courville* court was not presented with, and therefore did not resolve, any of the following issues:

- Whether Liberty Mutual issued insurance policies to Reilly-Benton and, if so, which ones;

- The terms, conditions and exclusions of any such policies;

- Whether those policies had general aggregate limits;

- Whether those policies were exhausted by payments, as opposed to solely through the 2013 Settlement Agreement;

- Whether Mr. Courville's claim, or any other asbestos claim against Reilly-Benton, was a Products or Contracting Claim; and

- Whether those policies were assets of the Reilly-Benton bankruptcy estate.

After the *Courville* decision, the Trustee advised certain plaintiffs' lawyers, including the Roussel & Clement firm, that their continuing litigation against Reilly-Benton's insurers (including Liberty Mutual) violated the automatic stay.  When plaintiffs' counsel continued to pursue that litigation, state and federal courts were asked to enforce the stay.  In all but one case,

the courts enforced the stay, at least pending a ruling from the bankruptcy court lifting the stay.[5]

*See Robichaux v. Huntington Ingalls, Inc*., Civ. Action No. 2:22-cv-00610 (E.D. La.) ("The Court therefore believes it is appropriate to stay the claims against the Insurers, in their capacity as insurers of Reilly-Benton, until such time, if ever, that the bankruptcy court grants relief from the stay . . . ."), Ex. 4; *Parfait v. Huntington Ingalls et al*., No. 2019-3539 ("However, when an asset is arguably property of the debtor's bankruptcy [estate], a creditor must obtain a lift of stay from the bankruptcy court before proceeding against the asset."), Ex. 5[6];  *Savoie, et al. v. Huntington Ingalls, Inc.,* Civ. Action No. 15-cv-1220 (E.D. La.), Ex. 6.  It is against that backdrop that the Roussel & Clement Creditors filed their Motion.

## ARGUMENT

### I.      The Motion Is Procedurally Improper.

The Motion is procedurally improper in at least two respects, and should be denied on that basis alone.  *First*, pursuant to Fed. R. Civ. P 56, which is incorporated into bankruptcy proceedings via Rule 7056: "A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."  *See* Fed. R. Civ. P 56(a).  Liberty Mutual has not asserted a claim or defense against anyone in this bankruptcy case, nor has a claim or defense been asserted against it, by the Roussel & Clement Creditors or by anyone else.  Accordingly, although the Motion purports to be a motion for summary judgment, it is not, and no judgment can be issued in response to it.  *See, e.g., Martin v. Fid. Nat'l Title Ins. Co*., No. 09-4195, 2011 U.S. Dist. LEXIS 57793, at *9–10 (E.D. La. May 31,

---

[5]      The lone exception was the *Sanderson* case, which has been addressed in a separate filing. *See* Dkt. No. 170.

[6]      The *Parfait* court granted a stay in open court on June 2, 2022, but a signed judgment to that effect has not been rendered.  The Court's reasons for granting the stay were the same as those reflected in Exhibit 5, which pertains to the stay granted as to another insurer defendant.

2011) ("Plaintiffs have not identified a claim, defense, or a part of a claim or defense on which they seek summary judgment. . . . This failure is dispositive of plaintiffs' motion [for summary judgment]").

*Second*, even if the Motion could be considered a motion for summary judgment, it could only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). However, virtually every purported "fact" set forth in the Motion is disputed by Liberty Mutual, including:

- Whether Liberty Mutual issued insurance policies to Reilly-Benton covering the relevant time period and, if so, which one(s);

- The terms and conditions of such alleged insurance policies;

- Whether any or all of such alleged policies contain an aggregate limit applicable to all claims or only certain claims; and,

- To the extent it matters whether a particular claim is a Products or Contracting Claim, whether any particular claim is a Products or Contracting Claim (or both).

*See* Liberty Mutual's Response to the Roussel & Clement Creditors' Statement of Undisputed Material Facts ("RSUMF", No. 1).

The principal "facts" advanced by the Roussel & Clement Creditors in support of their Motion, at least as it relates to Liberty Mutual, involve the discussion of alleged policy language. *See* 163-1 at 3-5. Notably, none of that language is contained in a policy actually issued by Liberty Mutual to Reilly-Benton. Rather, the language comes from generic policy forms.[7] There is,

---

[7] The policy forms are attached to an affidavit of Robert Hughes, who was an expert retained by the Roussel & Clement firm in connection with certain of the asbestos claims asserted against Liberty Mutual, including the *Courville* claim. Mr. Hughes has not been identified or qualified as an expert in this case, and he is not a competent fact witness with regard to any of the alleged facts advanced in his affidavit, as he had no involvement whatsoever with the alleged policies at issue. *See* RSUMF, No. 1.

however, no evidence that Liberty Mutual issued policies to Reilly-Benton in the 1960's that included these (or any other) forms -- or, if it did, whether such policies included endorsements that may have modified the language contained in the coverage forms. *See* RSUMF, No. 1. Thus, any suggestion that the relevant Liberty Mutual policy language -- or how such policy language might apply to Products or Contracting Claims -- is "undisputed" is plainly wrong.

In sum, the Motion is not a summary judgment motion and, if it was, the Roussel & Clement Creditors cannot satisfy the governing summary judgment standard. For those reasons alone, the Motion should be denied.[8]

## II. The Roussel & Clement Creditors Are Not Entitled To Relief From Stay.

Although the Motion is advanced solely as a motion for summary judgment, the relief that the Roussel & Clement Creditors seek is more akin to relief from stay. Based on settled Fifth Circuit law, and the governing facts, they are not entitled to such relief.

### A. The Motion Ignores On-Point Fifth Circuit Law, Which Mandates a Stay.

The law in the U.S. Fifth Circuit is clear regarding when insurance policy proceeds are considered property of the estate. A personal injury claimant's direct action claim against an insurer does not implicate property of the estate where the claim "is the result of an isolated accident to which the mass tort precedents are inapplicable." *See Sosebee*, 701 F.3d at 1023. But "where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate." *OGA Charters*, 901 F.3d at 604; *see also Sosebee*, 701 F.3d at 1025 ("Where a court finds insurance proceeds to be property of the bankruptcy estate the automatic stay will apply to direct actions against insurers, *see* 11 U.S.C. § 362(a)(3), but where

---

[8]     Liberty Mutual also adopts, and incorporates by reference, the procedural arguments advanced by Wausau and Century in their opposition briefs.

the proceeds of the insurance policies are not property of the bankruptcy estate, direct actions against insurers will not be affected by the stay"). Reilly-Benton was subject to more than 18,000 asbestos claims when it commenced its Chapter 7 case, making its case a "mass torts" case under U.S. Fifth Circuit precedent.

The Roussel & Clement Creditors completely ignore this dispositive case law. Rather, they rely on earlier U.S. Fifth Circuit case law which held that, in many instances, proceeds of insurance policies were not property of a debtor's bankruptcy estate because the proceeds would be paid to claimants, not to the debtor. *See* 163-1 at 2.[9] However, the more recent *Sosebee* and *OGA Charters* cases made it clear that the rule should be different in mass tort cases. For example, the *Sosebee* court stated:

> Only in the limited instance of a mass tort action where hundreds or thousands of claims against the debtor's insurer might exhaust insurance proceeds and thus threaten the debtor's estate over and above limits of liability insurance policies have courts held the *proceeds* of liability insurance policies are property of the bankruptcy estate.

*Sosebee*, 701 F.3d at 1025 *(*emphasis in the original). The Fifth Circuit explained that a different rule is required in mass tort cases because "the court would not otherwise be able to prevent a free-for-all against the insurer outside the bankruptcy proceeding." *Id.* (quoting *In re Edgeworth*, 993 F.2d 51, 56 n.21 (5th Cir. 1993)) ("In the mass tort context, the decisions by several courts to include the proceeds as property of the estate appear to be motivated by a

---

[9]  *See, e.g.*, *In re La. World Exposition*, 832 F.2d 1391, 1399-400 (5th Cir. 1987). *Louisiana World Exposition* involved director's and officer's policies. A subsequent Fifth Circuit decision, *In re Vitek*, suggested that liability policy proceeds might always be property of the debtor's estate. *See In re Vitek, Inc.*, 51 F.3d 530, 535 (5th Cir. 1995) ("when a debtor corporation owns an insurance policy that covers its own liability vis-a-vis third parties, we – like almost all other courts that have considered the issue – declare or at least imply that both the policy and the proceeds of that policy are property of the debtor's bankruptcy estate").

concern that the court would not otherwise be able to prevent a free-for-all against the insurer outside the bankruptcy proceeding").

The U.S. Fifth Circuit reaffirmed its *Sosebee* analysis in *In re OGA Charters*, a Chapter 7 mass tort case arising from a charter bus accident that killed nine passengers and injured more than 40 others. The tort claims against the debtor were alleged to exceed $400 million, and the debtor had only a single liability insurance policy with limits of $5 million. The court held that in such a circumstance, the policy proceeds were property of the debtor's estate. The court explained its holding as follows:

> We now make official what our cases have long contemplated: In the "limited circumstances," as here, where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate. Here, over $400 million in related claims threaten the debtor's estate over and above the $5 million policy limit, giving rise to an equitable interest of the debtor in having the proceeds applied to satisfy as much of those claims as possible.

*OGA Charters*, 901 F.3d at 604.

The Fifth Circuit emphasized that a "holding to the contrary would 'prevent [the] bankruptcy court from marshalling the insurance proceeds, and, along with the other assets, arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate.'" *Id.* at 604-05 (quoting *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 560 (1st Cir. 1986)). Thus, the court held, the proceeds of the debtor's liability policy were property of the bankruptcy estate. *Id.* at 605.

Together, *Sosebee* and *OGA Charters* conclusively establish that the automatic stay applies to bar direct action claims against the insurers of a mass tort debtor. In addition, the Fifth Circuit has held that if the property at issue is even "arguably" an asset of the estate, the stay should apply. *See In Re Chesnut,* 422 F.3d 298 (5th Cir. 2005). Thus, the Roussel & Clement Creditors face a high burden in seeking to avoid application of the stay. They must prove that the proceeds of the

Alleged Liberty Policies are not even "arguably" assets of the estate. They cannot meet that burden

here. To the contrary, each of their arguments fails as a matter of fact and/or law.

> B.      The Alleged Liberty Policies Are At Least Arguably Property Of The Estate.

The Roussel & Clement Creditors' principal argument is that, as applied to Contracting

Claims, the Alleged Liberty Policies "cannot be considered property of Reilly-Benton's

bankruptcy estate because they have no limits as to injured tort victims." *See* 163-1 at 3. This

argument is based on the premise that the "mass tort" liability rule laid out in *Sosebee* and *OGA*

*Charters* is limited only to claims that are subject to an aggregate policy limit, and the conclusion

that Contracting Claims are not subject to the aggregate limit of the Alleged Liberty Policies. Even

if the premise was correct, which Liberty Mutual disputes (*see* n. 8, *supra*), the conclusion does

not follow, for several reasons.

*First,* the Roussel and Clement Creditors have not established the existence or terms of the

Alleged Liberty Policies, which is their burden. *See Barnett v. Watkins*, 970 So. 2d 1028, 1037

(La. App. 1st Cir. 2007) ("As the parties claiming the benefit of that policy, plaintiffs would bear

the burden of proof at trial that [the insurer] is liable to them under the terms of that policy.");

*Barber v. Best*, 394 So. 2d 779, 780-81 (La. App. 4th Cir. 1981) ("A plaintiff suing on an insurance

contract has the burden of establishing the *existence of the policy* sued on *and its terms and*

*conditions*.") (emphasis added). That burden is substantial:

> Of course, we cannot state that a party can never prove the terms of a policy
> without a copy of the policy or a reasonable facsimile thereof. But the party
> trying to do so certainly faces a formidable burden. Here no jury could find,
> absent sheer speculation, the scope of coverage, the relevant notice
> requirements, and all of the other aspects of the policy, on which coverage often
> hinges.

*Time Ins. Co. v. Estate of White*, 447 Fed. Appx. 561, 566 (5th Cir. 2011) (quoting *Harrow Prods.*

*v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1021 (6th Cir. 1995)). Unless and until the Roussel &

Clement Creditors meet that burden, they cannot establish how, if at all, the Alleged Liberty Policies' limits apply to Contracting Claims. Unauthenticated certificates of insurance[10] and policy forms that cannot be linked to the insured[11] are nowhere close to enough evidence to meet their burden of proof, much less to prove that no aggregate limits even "arguably" apply.

*Second*, if the certificates of insurance are determined to provide sufficient evidence of the existence and terms of any Alleged Liberty Policies, then the plain language of those certificates must be applied as written. The certificates on their face state that the aggregate limits apply to "**all hazards** including products," which means that "**all**" amounts paid by Liberty Mutual are subject to the aggregate limits. *See* Wiedmann Aff., Ex. B (emphasis supplied). Again, the Roussel & Clement Creditors cannot establish that the Alleged Liberty Policies do not even "arguably" have applicable aggregate limits.

*Third*, even if the Roussel & Clement Creditors were to establish the existence and terms of the Alleged Liberty Policies **and** that those policies do not have a general aggregate limit, **and**

---

[10]    *See, e.g., John W. Wallace & Co. v. Continental Ins. Co.*, No. A-35555-89T5 (N.J. Sup. Ct. App. Div. Nov. 8, 1990), reprinted in 5 Mealey's No. 6 at C-1 p. 4 (Dec. 11, 1990) (certificate of insurance insufficient to prove existence, terms or conditions of an insurance policy); *Zurich Am. Ins. Co. v. Broadway Moving & Storage,* 2006 N.J. Super. Unpubl. LEXIS 1622, at *6 (N.J. Sup. Ct. App. Div. Dec. 7, 2006) ("[C]ertificates of insurance ... do not, and cannot, prove the *terms* of the alleged concurrent separate ... insurance policies ...") (emphasis in original); *Metlife Capital Corp. v. Westchester Fire Ins. Co*, 224 F. Supp.2d 374, 387 (D. P.R. 2002) (certificates of insurance "do not specify or describe any specific provisions such as a duty to defend clause, or any exclusions that may be applicable").

[11]    *See, e.g., Klopman v. Zurich Am. Ins. Co*, 233 Fed. Appx. 256, 261 (4th Cir. 2007) (reliance on standard policy terms "omits, for example, any exceptions or unique terms [the policy] might have contained"); *Kleenit Inc. v. Sentry Ins. Co.*, 486 F. Supp.2d 121, 133 (D. Mass. 2007) ("'courts generally will require more proof than that the insurer used standard forms'") (citations omitted); *SCA Disposal Services of N.E., Inc. v. Central Nat'l Ins. Co. of Omaha*, 1994 Mass. Super LEXIS 617 (Mass. Super. Apr. 12, 1994) ("[b]ecause insurance policies are often customized or manuscripted, the use of a standard form in one policy is not itself proof that it was included in a different policy"); Ostrager and Newman, *Handbook on Insurance Coverage Disputes*, § 17.04 (collecting cases).

that the aggregate limit does not apply to Contracting Claims, they still must prove that any particular claim presented under any such policies is actually a Contracting Claim to avoid application of the automatic stay to that claim.  They have not even attempted to make that showing here.  Nor could they, because: (a) none of the Roussel & Clement Creditors have claims pending against Liberty Mutual, other than the settled *Courville* claim; and (b) asbestos claimants generally allege either only Products Claims or both Products and Contracting Claims, such that every claim may be a Products Claim, in whole or in part, pending resolution at trial.  *See supra* at 6-7.

In sum, the Roussel & Clement Creditors cannot establish that the Alleged Liberty Policies are not "arguably" property of the estate.  Thus, the stay should not be lifted.  A much more logical approach is for the Court to keep the stay in place until after its decision on the Trustee's motions for approval of his settlements with LIGA and Century.  Those decisions will go a long way toward resolving the issues presented by the Motion, and there is no reason to upset the status quo until then.

C.      The *Courville* Decision Does Not Require A Different Result.

The Roussel & Clement Creditors rely heavily in their Motion on the Louisiana state intermediate appellate court decision in *Courville.*  That reliance is misplaced.  As a threshold matter, the court simply overturned a grant of summary judgment for Liberty Mutual, because "genuine issues of material fact exist, precluding summary judgment for Liberty Mutual and Wausau." *Id.* at 561–63.  A denied motion for summary judgment simply means that a live issue remains to be litigated, not that there has been a final decision. *See Williams v. City of Yazoo,* No. 20-61061, 2022 U.S. App. LEXIS 19644, at *7 (5th Cir. July 15, 2022) ("denial of a summary judgment motion . . . is [ordinarily] not final within the meaning of 28 U.S.C. § 1291"); *Hunter v.*

*Transamerica Life Ins. Co.*, 498 F. App'x 430, 439 (5th Cir. 2012) ("an order denying a motion for summary judgment . . . is not final and therefore . . . is [not] entitled to preclusive effect").

Moreover, although not a final judgment, *Courville* stands for, at most, a very narrow proposition: that a buy-out agreement between an insurer and insured is not retroactively binding on a third-party tort plaintiff. *Supra* at 7. The Court did not purport to reach the question of whether the Alleged Liberty Policies were assets of the Reilly-Benton bankruptcy estate. Nor did it answer any of the predicate questions underlying that analysis, including whether Liberty Mutual issued policies to Reilly-Benton, the terms, conditions or limits of those alleged policies, how those limits apply to Contracting or Products Claims or whether any particular claims asserted against Reilly-Benton are Contracting or Products Claims. *Id.*[12] Hence, *Courville* is totally irrelevant to the issues presented here.[13]

The Roussel & Clement Creditors also point to the affidavit of Fred Weidman in the *Courville* case, in which he indicated that the Alleged Liberty Policies were exhausted, to argue that the Alleged Liberty Policies could not be assets of Reilly-Benton's bankruptcy estate. 163-1 at 8. Liberty Mutual was unsuccessful in the *Courville* appeal, meaning that the Court did not

---

[12]     The Fourth Circuit in *Courville* did not, as the Motion implies, hold that the Alleged Liberty Policies provided unlimited coverage for Contracting Claims. 163-1 at 3. That issue was not before the Court, and such a decision would have been contrary to long-settled Louisiana law. *See Carter v. Safeco Ins. Co.*, 435 So. 3d 1076, 1080 (La. App. 1st Cir. 1983) ("[I]t is well-settled law in Louisiana that an insurer may enter into reasonable, good faith settlements even though such settlements exhaust or diminish the proceeds available to other claimants.") (citing, *inter alia*, *Holtzclaw v. Falco, Inc.*, 355 So. 2d 1276 (La. 1978)); *Bohn v. Sentry Ins. Co.*, 681 F. Supp. 357, 365 (E.D. La. 1988) ("[T]he exhaustion of policy limits by payment in good faith of judgments or settlements should relieve the insurer of further obligation to defend."). Rather, the Court held only that *if* a CGL policy provided unlimited coverage, a post-injury settlement agreement between the insurer and the insured could not retroactively annul or rescind that coverage. *Courville*, 301 So. 3d at 560.

[13]     For the same reasons, the Roussel & Clement Creditors' reliance on *Long v. Eagle, Inc.*, 158 So. 3d 968 (La. App. 4th 2015) and *Washington v. Savoie*, 634 So. 2d 1176 (La. 1994) is similarly misplaced. 163-1 at 7.

accept Liberty Mutual's position.  More generally, almost every defendant in litigation argues that it is not liable for the plaintiffs' claims.  That does not, of course, mean that if the defendant is unsuccessful, in whole or in part, the proceeds are not assets of the estate.  The relevant question is not whether it is Liberty Mutual's position that its policies are exhausted; it is whether, if that position is unsuccessful, the policy proceeds are assets of the estate.  Under *Sosebee* and *OGA Charters*, the answer is clear: yes.  *Supra* at 10-13.

That answer does not change depending on whether the funds ultimately are to be paid to a third-party claimant as opposed to the debtor, because the purpose of the "mass tort" rule is to prevent a "free for all" outside the bankruptcy context and to instead allow the bankruptcy court to marshal and fairly distribute the debtor's assets.  *OGA Charters*, 901 F.3d at 604-05; *Sosebee*, 701 F.3d at 1025. The Fifth Circuit in *OGA Charters* explained as follows:

> When there are multiple claimants to the policy proceeds, the court should be able to oversee the allocation of the proceeds among claimants.  Although policy proceeds are not available to all creditors, and in that sense are different from other property of the estate, they may be available to a class of creditors whose claims are covered by insurance, and may be insufficient to satisfy that class fully.  In such a case, oversight by the court is necessary to assure an equitable distribution of the available assets.

*OGA Charters*, 901 F.3d at 604.  Thus, whether Reilly-Benton itself is entitled to recover under the Alleged Liberty Policies is, for purposes of the Motion, irrelevant.

D.      The Direct Action Statute Does Not Help The Roussel & Clement Creditors.

The Roussel & Clement Creditors argue that the Louisiana Direct Action Statute, La. R.S. 22:1269 (B)(1), gives them an absolute right to proceed against Reilly-Benton's insurers.  163-1 at 9-10.  This argument has already been expressly rejected by the Fifth Circuit, in the exact circumstances presented here -- *i.e.* where the debtor is a mass tort defendant.  *See Sosebee*, 701 F.3d at 1025 ("Where a court finds insurance proceeds to be property of the bankruptcy estate, *the*

*automatic stay will apply to direct actions against insurers*") (emphasis supplied).[14]   This argument, therefore, is a non-starter.

## CONCLUSION

For the reasons set forth herein, the Motion should be denied.  Moreover, there is no reason to lift the automatic stay prior to the Court resolving the pending motions to approve the LIGA and Century settlements, which will address, and potentially resolve, many if not all of the issues presented by the Motion.

Respectfully submitted,

*/s/ H. Minor Pipes, III*
H. Minor Pipes, III, 24603
Katie Seegers Roth, 28224
Kelsey L. Meeks, 33107
Luke M. Donovan, 37451
PIPES | MILES | BECKMAN, LLC
1100 Poydras Street, Suite 1800
New Orleans, Louisiana 70163
Telephone: (504) 322-7070
Facsimile: (504) 322-7520
mpipes@pipesmiles.com
kroth@pipesmiles.com
kmeeks@pipesmiles.com
ldonovan@pipesmils.com

*Attorneys for Liberty Mutual Insurance Company, as alleged insurer Reilly-Benton Company, Inc.*

---

[14]   The Roussel & Clement Creditors cite to a one-page order from 2015 in the case of *In Re Eagle, Inc.*, Bankruptcy No. 15-12437, in which the bankruptcy court denied a request to extend the automatic stay to certain insurers.  163-1 at 8-9.  That order does not explain the basis for the decision, the arguments presented or the facts at issue.  Regardless, the holding of the Fifth Circuit in *Sosebee* is clear, and it is binding on this Court.

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to this Court's Notice (Doc. 175), Standing Order 2006-5 and Local Rule 2002-1:

This is to certify that a copy of the above and foregoing Opposition to Roussel & Clement Creditors' And Courville Parties' Motions For Summary Judgment was served on September 7, 2022 by:

ELECTRONIC FILING through the court's electronic filing system upon:

David V. Adler
adler_d@bellsouth.net, LA26@ecfcbis.com

Frederick L. Bunol on behalf of Debtor Reilly-Benton Company, Inc.
fbunol@derbeslaw.com, derbespacer@gmail.com, derbeser72443@notify.bestcase.com

Jonathan Clement on behalf of Creditor Roussel & Clement Creditors
rcfirm@rousselandclement.com

Jonathan Clement on behalf of Interested Party Bonnie Ann Loupe
rcfirm@rousselandclement.com

Jonathan Clement on behalf of Interested Party Joseph E Courville
rcfirm@rousselandclement.com

Jonathan Clement on behalf of Interested Party Lee Ann Cortez
rcfirm@rousselandclement.com

Jonathan Clement on behalf of Interested Party Mary S Courville
rcfirm@rousselandclement.com

Jonathan Clement on behalf of Interested Party Mavis T Courville
rcfirm@rousselandclement.com

Jonathan Clement on behalf of Interested Party Michael W Courville
rcfirm@rousselandclement.com

Jonathan Clement on behalf of Interested Party Sherry Tregre Cortez
rcfirm@rousselandclement.com

Leo D. Congeni on behalf of Creditor Landry & Swarr Creditors
leo@congenilawfirm.com, michelle@congenilawfirm.com

Leo David Congeni on behalf of Creditor Landry & Swarr Creditors
leo@congenilawfirm.com, michelle@congenilawfirm.com

Martha Y. Curtis on behalf of Interested Party Century Indemnity Company, as Successor to CCI Insurance Company, Successor to Insurance Company of North America
mcurtis@shergarner.com

Albert J. Derbes, IV on behalf of Trustee David V. Adler
ajdiv@derbeslaw.com, derbespacer@gmail.com, derbeser72443@notify.bestcase.com

Nicole Celia Katz on behalf of Trustee David V. Adler
katz@chaffe.com

Stephanie B. Laborde on behalf of Interested Party Louisiana Insurance Guaranty Association
slaborde@lalalawfirm.com, 7435683420@filings.docketbird.com

Mickey P. Landry on behalf of Creditor Landry & Swarr Creditors
mlandry@landryswarr.com

Mary S. Langston on behalf of U.S. Trustee Office of the U.S. Trustee
Mary.Langston@usdoj.gov

Timothy S. Madden on behalf of Interested Party Estate of Julian Paul Guidry
tmadden@kingjurgens.com

Timothy S. Madden on behalf of Interested Party Lori Guidry Keating
tmadden@kingjurgens.com

Timothy S. Madden on behalf of Interested Party Paul Guidry
tmadden@kingjurgens.com

Thomas J. Madigan on behalf of Interested Party Century Indemnity Company, as Successor to CCI Insurance Company, Successor to Insurance Company of North America
tmadigan@shergarner.com

David J. Messina on behalf of Trustee David V. Adler
messina@chaffe.com, bankruptcy@chaffe.com, laudumiey@chaffe.com

Mark D. Plevin on behalf of Interested Party Century Indemnity Company, as Successor to CCI Insurance Company, Successor to Insurance Company of North America
mplevin@crowell.com, cromo@crowell.com

William S. Robbins on behalf of Interested Party Louisiana Insurance Guaranty Association
wrobbins@stewartrobbins.com, wrobbins@ecf.courtdrive.com, kheard@stewartrobbins.com, kheard@ecf.courtdrive.com, gtaylor@stewartrobbins.com, gtaylor@ecf.courtdrive.com

Gerolyn Roussel on behalf of Interested Party Bonnie Ann Loupe
gerolynroussel@icloud.com

Gerolyn Roussel on behalf of Interested Party Joseph E Courville
gerolynroussel@icloud.com

Gerolyn Roussel on behalf of Interested Party Lee Ann Cortez
gerolynroussel@icloud.com

Gerolyn Roussel on behalf of Interested Party Mary S Courville
gerolynroussel@icloud.com

Gerolyn Roussel on behalf of Interested Party Mavis T Courville
gerolynroussel@icloud.com

Gerolyn Roussel on behalf of Interested Party Michael W Courville
gerolynroussel@icloud.com

Gerolyn Roussel on behalf of Interested Party Sherry Tregre Cortez
gerolynroussel@icloud.com

Perry J. Roussel, Jr. on behalf of Interested Party Bonnie Ann Loupe
rcfirm@rousselandclement.com

Perry J. Roussel, Jr. on behalf of Interested Party Joseph E Courville
rcfirm@rousselandclement.com

Perry J. Roussel, Jr. on behalf of Interested Party Lee Ann Cortez
rcfirm@rousselandclement.com

Perry J. Roussel, Jr. on behalf of Interested Party Mary S Courville
rcfirm@rousselandclement.com

Perry J. Roussel, Jr. on behalf of Interested Party Mavis T Courville
rcfirm@rousselandclement.com

Perry J. Roussel, Jr. on behalf of Interested Party Michael W Courville
rcfirm@rousselandclement.com

Perry J. Roussel, Jr. on behalf of Interested Party Sherry Tregre Cortez
rcfirm@rousselandclement.com

Office of the U.S. Trustee
USTPRegion05.NR.ECF@usdoj.gov

and by FIRST CLASS MAIL, POSTAGE PREPAID upon:

Nicole M Babb on behalf of Interested Party Estate of Julian Paul Guidry, Interested

Party Lori Guidry Keating, and Interested Party Paul Guidry
King, Krebs & Jurgens, P.L.L.C.
201 St. Charles Avenue
45th Floor
New Orleans, LA 70170
Autry Earl Barney
517 Cherry Ave
Jackson, AL 36545-3607

James M. Garner, Amanda R. Schenck and Amelia L. Hurt on behalf of Interesed Party Century
Indemnity Company, as Successor to CCI Insurance Company, Seccessor to Insurance Company
of North America
Sher Garner Cahill Richter Klein
909 Poydras Street, 28th Floor
New Orleans, LA  70808

Stephanie B. LaBorde on behalf of Interested Party Louisiana Insurance Guaranty Association
Milling Benson Woodward, LLP
6421 Perkins Road
Building B, Suite B
Baton Rouge, LA  70808

                                            */s/ H. Minor Pipes, III*_____