# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FELTON ADAM ROBICHAUX,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-610** |
| **HUNTINGTON INGALLS INCORPORATED, ET AL.,**<br>    **Defendants** | **SECTION: "E" (5)** |

## ORDER AND REASONS

On April 1, 2022, Defendants Employers Insurance Company of Wausau and Liberty Mutual Insurance Company (collectively "the Insurers") filed a motion to dismiss or stay Plaintiff Felton Adam Robichaux's ("Plaintiff") claims.[1] Plaintiff did not file an opposition.

On April 20, 2022, the Insurers filed a motion to dismiss or stay Huntington Ingalls Incorporated's ("Avondale") cross claims.[2] Avondale did not file an opposition.

## BACKGROUND

This personal injury suit is based on Plaintiff's alleged exposure to asbestos. Plaintiff alleges he was "diagnosed with asbestos-related mesothelioma on or about January 14, 2022."[3] Plaintiff alleges he was exposed to asbestos containing products on Avondale's premises—that is, at Avondale Shipyards.[4] Plaintiff alleges he worked at Avondale Shipyards from 1961 to 1979 as a carpenter and insulator.[5] Plaintiff further alleges from 1961 to 1979 he was exposed to injurious levels of asbestos during

---

[1] R. Doc. 22.
[2] R. Doc. 38.
[3] R. Doc. 1-2 at p. 2, ¶ 3.
[4] *Id.* at ¶ 4.
[5] *Id.* at ¶ 12.

1

**EXHIBIT 4**

his employment at Avondale Shipyards through his exposure to asbestos-containing products supplied, distributed by Defendants Eagle, Inc and Taylor-Seidenbach, Inc.[6] Plaintiff alleges his brother also worked at Avondale Shipyards during the relevant time frame, that Plaintiff's brother was exposed to asbestos fibers, and that the asbestos fibers and dust contaminated his brother's person, clothing, vehicle, home, and personal items, and that Plaintiff was exposed to the asbestos fibers carried home by his brother.[7] Plaintiff further alleges he was exposed to asbestos contaminated clothing from other Avondale workers aboard the labor bus Plaintiff took to and from the Avondale Shipyards.[8]

On January 27, 2022, Plaintiff filed a petition for damages in Civil District Court, Parish of Orleans, State of Louisiana, against several Defendants, including the Insurers.[9] Plaintiff brings negligence claims against all Defendants based on the Defendants' failure to warn Plaintiff of the dangers of asbestos exposure, failure to provide adequate ventilation to minimize asbestos exposure, failure to provide respiratory equipment to protect Plaintiff from asbestos exposure, and failure to implement an asbestos decontamination policy or procedure to prevent asbestos fibers and dust from exposing others outside of the Avondale Shipyards.[10] Plaintiff also brings negligence and strict liability claims against Eagle, Inc., Union Carbide Corporation, Taylor-Seidenbach, Inc., Foster Wheeler Energy Corporation, General Electric Company, Hopeman Brothers, Inc., Liberty Mutual Insurance Company,

---

[6] *Id.* at ¶¶ 4, 12.
[7] *Id.* at ¶ 13.
[8] *Id.* at ¶ 14.
[9] *See generally id.*
[10] *Id.* at ¶¶ 22–25.

2

International Paper Company, Maryland Casualty Company, Uniroyal, Inc., Sentry Insurance Company, Employers Insurance Company of Wausau, Viacom CBS, Inc., 3M Company, Metropolitan Life Insurance Company, and Bayer Conscience, Inc., for manufacturing, distributing, supplying, selling, or using asbestos-containing products, causing Plaintiff to be exposed to asbestos-containing products.[11] Plaintiff also brings negligence and strict liability claims against Avondale, alleging Avondale is liable for Plaintiff's injuries for failing to provide Plaintiff "a safe place to work free from the dangers of respirable asbestos-containing dust."[12]

Plaintiff sued Liberty Mutual Insurance Company in its capacity "[a]s an insurer of Hopeman Brothers, Inc., Wayne Manufacturing, [and] Reilly-Benton Company, Inc."[13] Plaintiff sued Employers Insurance Company of Wausau individually and in its capacity "as insurer of Reilly-Benton Company, Inc."[14] Specifically, Plaintiff alleged as follows:

> Plaintiff avers that Liberty Mutual Insurance Company issued policies of insurance to Wayne Manufacturing Company, Hopeman Brothers, and Reilly Benton Co., that provide coverage for the causes of action asserted by plaintiff. As such, Liberty Mutual Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Wayne Manufacturing Company, Hopeman Brothers, and Reilly Benton Co., individually, jointly and in solido.
>
> Plaintiff avers that Employers Insurance of Wausau, Liberty Mutual Insurance Company, and Sentry Insurance Company issued policies of insurance to Reilly-Benton Company Inc., that provide coverage for the causes of action asserted by plaintiff against Reilly-Benton Company Inc. As such, Employers Insurance of Wausau, Liberty Mutual Insurance Company, and Sentry Insurance Company are liable for the damages alleged in the Original Petition and any supplement against Reilly-

---

[11] *Id.* at ¶¶ 26–30.
[12] *Id.* at ¶¶ 31–55.
[13] *Id.* at ¶ 2.B.8.
[14] *Id.* at ¶ 2.B.13.

3

Benton Company Inc., individually, jointly and in solido.[15]

Avondale removed Plaintiff's suit to federal court on March 10, 2022.[16] On March 10, 2022, Avondale filed its answer with incorporated third-party claims and crossclaims.[17] As relevant to the instant motion,[18] Avondale asserted crossclaims against Liberty Mutual Insurance Company, "as insurer of Hopeman Brothers, Inc, Wayne Manufacturing Co., and Reilly-Benton Company, Inc.," and against Employers Insurance Company of Wausau "individually and as insurer of Reilly-Benton Company, Inc."[19]

On April 1, 2022, the Insurers filed a motion to dismiss or stay Plaintiff's claims against them.[20] Plaintiff failed to file an opposition to the motion. On April 20, 2022, the Insurers filed a motion to dismiss or stay Avondale's cross claims against them.[21] Avondale failed to file an opposition

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of her claim that would entitle her to relief.[22] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[15] *Id.* at ¶¶ 56–57.
[16] R. Doc. 1.
[17] R. Doc. 3.
[18] R. Doc. 38.
[19] . Doc. 3 at p. 11.
[20] R. Doc. 22.
[21] R. Doc. 38,
[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

4

plausible on its face.'"[23] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[25] "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[26]

"Factual allegations must be enough to raise a right to relief above the speculative level."[27] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."[28] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[29]

## LAW AND ANALYSIS

In these motions to dismiss or stay, the Insurers argue that Plaintiff and Avondale purport to assert direct action claims against the Insurers, under Louisiana Revised Statute 22:1269, on the grounds that the Insurers allegedly provided coverage to Reilly Benton Company Inc. ("Reilly Benton"), "for the liability asserted herein."[30] The Insurers further assert that

---

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[24] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556.
[25] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[26] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[27] *Twombly*, 550 U.S. at 555.
[28] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)) (internal quotations omitted).
[29] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam).
[30] R. Docs. 22-1, 38-1.

5

> since 2017 Reilly-Benton has been a debtor in a Chapter 7 mass tort bankruptcy case, and the automatic stay imposed by 11 U.S.C. § 362(a) has barred the filing or prosecution of lawsuits against the Debtor as well as actions seeking to obtain possession of property of Reilly-Benton's bankruptcy estate. Under the Fifth Circuit's controlling decisions in *Sosebee v. Steadfast Ins. Co.* and *In re OGA Charters*, the proceeds of insurance policies issued to Reilly-Benton by the Insurers are deemed property of the estate, protected by the automatic stay, because the Reilly-Benton bankruptcy is a mass tort bankruptcy case.[31]

The Insurers further argue that, because Plaintiff's petition and Avondale's crossclaims were filed in violation of the automatic stay imposed in the Reilly Benton chapter 7 case, Plaintiff's and Avondale's direct action claims against the Insurers are void.[32] The Insurers further argue the automatic stay bars Plaintiff's and Avondale's claims against them.

It is undisputed that, upon Reilly Benton's bankruptcy filing, the automatic stay under § 362(a) of the Bankruptcy Code immediately went into effect, barring all acts, including lawsuits, seeking to obtain possession of property of Reilly Benton's bankruptcy estate or to exercise control over property of the estate. The gist of the Insurers motions is that Plaintiff's and Avondale's direct action claims, asserted against the Insurers in their capacity as insurers of Reilly Benton, should not be allowed to proceed because the insurance policies are property of Reilly Benton's estate. Thus, whether the direct action claims against the Insurers can go forward depends on whether the insurance policies or their proceeds are property of Reilly Benton's bankruptcy estate.

---

[31] R. Doc. 22-1 at pp. 1–2.
[32] *Id.*

6

The Insurers argue that the bankruptcy court has already found that the proceeds of the insurance policies provided to Reilly Benton are property of the estate. The Insurers further argue that, even if the bankruptcy court had not made such a finding, the proceeds of the insurance policies are property of Reilly Benton's estate because Reilly Benton was subject to more than 18,000 asbestos claims when it filed its chapter 7 petition, making Reilly Benton's case a "mass torts" case under Fifth Circuit precedent.

On the day Reilly Benton's chapter 7 petition was filed, certain asbestos claimants filed a motion for relief from the automatic stay, arguing that the stay Reilly-Benton has "collectable insurance coverage," and, pursuant to Louisiana's direct action statute, the asbestos claimants argued they had a right of direct action against Reilly Benton's insurers and that lifting the automatic stay would not prejudice Reilly Benton because the asbestos claimants may recover against Reilly Benton's insurers pursuant to Louisiana's direct action statute.[33] The chapter 7 trustee filed an opposition to the motion to lift the stay, arguing that "this case is a mass tort case, involving claims for damages allegedly caused by asbestos" and that, in such cases "where the claims will exhaust the insurance proceeds," courts, including the Fifth Circuit, have found that the insurance policies and their proceeds were property of the debtor's estate.[34] The bankruptcy court denied the asbestos claimant's motion for relief from the automatic stay.[35] The Insurers further argue that the bankruptcy court's

---

[33] *In re. Reilly-Benton Company, Inc.* Case No. 17-12870, R. Doc. 3 (Bankr. E.D. La.).
[34] *Id.* at R. Doc. 6 at pp. 2–3.
[35] *Id.* at R. Doc. 12. The order does not contain written reasons, and, instead, states that the motion is denied "[c]onsidering the arguments of counsel and for reasons orally assigned." *Id.* A transcript of the hearing on the motion is not available on the docket in the case.

7

approval of the trustee's retention of special insurance counsel for the express purpose of, among other things, maximizing any insurance recoveries and negotiating settlements, further shows that the bankruptcy court has already determined that Reilly-Benton's bankruptcy case is a mass torts case in which the claims threaten to exhaust the proceeds of Reilly Benton's liability insurance proceeds, making the insurance proceeds property of Reilly Benton's bankruptcy estate.[36] Specifically, the Insurers state that, in approving the trustee's retention of special insurance counsel, the bankruptcy court

> specifically overruled an objection by the same asbestos claimants, which included an argument that such retention was not necessary because the proceeds of Reilly-Benton's insurance policies are not property of the bankruptcy estate. Authorizing employment of special counsel would have made little sense if the bankruptcy court did not regard the policy proceeds as property of the estate to be marshaled for the benefit of all creditors; otherwise, the court would have allowed individual claimants to proceed to judgment and collect proceeds directly from the insurers.[37]

The Insurers further argue that, even if the bankruptcy court had not already decided that the insurance proceeds at issue are part of Reilly Benton's bankruptcy estate, that "the matter is self-evident" because at the time Reilly Benton filed its chapter 7 petition, it "faced more than 18,000 asbestos claims," and had only very limited insurance assets.[38]

"Where a court finds insurance proceeds to be property of the bankruptcy estate the automatic stay will apply to direct actions against insurers."[39] While the Fifth Circuit has held that a personal injury plaintiff's direct action against the insurer of a

---

[36] R. Doc. 22-1 at p. 11 (citing *In re. Reilly-Benton Company, Inc.* Case No. 17-12870, at R. Docs. 42, 47. (Bankr. E.D. La.)).
[37] R. Doc. 22 at p. 11.
[38] *Id.* at p. 12.
[39] *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1025 (5th Cir. 2021).

8

bankrupt tortfeasor does not implicate property of the debtor-tortfeasor's estate when the claim "is the result of an isolated accident to which the mass tort precedents are inapplicable,"[40] the Fifth Circuit has held that "where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds [of the insurance policy] as property of the estate."[41] In *In re OGA Charters*, a chapter 7 bankruptcy case, a charter bus accident killed nine passengers and injured more than 40 others.[42] The tort claims against the chapter 7 debtor were alleged to exceed $400 million, and the debtor had a single liability insurance policy, and policy limit was $5 million.[43] The Fifth Circuit addressed the issue of whether the proceeds of the debtor's liability policy are property of the estate when the policy limit is insufficient to cover a multitude of tort claims, and held the policy proceeds were part of the debtor's estate.[44] The Fifth Circuit explained that

> [i]n the limited circumstances, as here, where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate. Here, over $400 million in related claims threaten the debtor's estate over and above the $5 million policy limit, giving rise to an equitable interest of the debtor in having the proceeds applied to satisfy as much of those claims as possible.[45]

In *Savoie et al. v. Pennsylvania General Insurance Company et al.*, an asbestos case similar to the instant case, Defendants Pacific Employers Insurance Company, Employers Insurance Company of Wausau, Liberty Mutual Insurance Company, and Century Indemnity Company filed a motion to dismiss or stay that is nearly identical

---

[40] *Id.* at 1023.
[41] *In re OGA Charters, L.L.C.*, 901 F.3d 599 (5th Cir. 2018).
[42] *Id.* at 601.
[43] *Id.* at 602.
[44] *Id.* at 603–604.
[45] *Id.* at 604.

9

to the motions now pending before this Court.[46] Judge Barbier granted the motion to stay,[47] stating that the parties should bring the issues underlying the motion—whether the insurance proceeds should be considered part of Reilly Benton's estate and therefore should be subject to the bankruptcy court's automatic stay order—before the bankruptcy court and allow the bankruptcy court rule on that issue in the first instance.[48]

The Court agrees with the Insurers that, given the large number of asbestos claims, this case is a candidate for the "mass tort" exception expressly recognized by the Fifth Circuit in *OGA Charters*, under which insurance proceeds become part of the debtor's estate. However, the Court agrees with the reasoning of Judge Barbier in the *Savoie* case that whether or not such proceeds are property of the bankruptcy estate subject to the protections of the automatic stay is for the bankruptcy court—as the court imposing the stay—to decide. The Court therefore believes it is appropriate to stay the claims against the Insurers, in their capacity as insurers of Reilly Benton, until such time, if ever, that the bankruptcy court grants relief from the stay, allowing persons with claims against Reilly Benton to pursue their direct action claims against the Reilly Benton's insurers.

## **CONCLUSION**

**IT IS ORDERED** that Defendants Employers Insurance Company of Wausau and Liberty Mutual Insurance Company's motion to dismiss or stay Plaintiff Felton Adam Robichaux's claims[49] is **GRANTED IN PART AND DENIED IN PART**. To

---

[46] Case No. 15-1220, R. Doc. 713 (E.D. La.).
[47] *Id.* at R. Doc. 724.
[48] *Id.* at R. Doc. 725 at p. 37.
[49] R. Doc. 22.

10

the extent the motion seeks dismissal of Plaintiff's claims, the motion is **DENIED**. To the extent the motion seeks a stay of Plaintiff's claims, the motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Employers Insurance Company of Wausau and Liberty Mutual Insurance Company's motion to dismiss or stay Huntington Ingalls Incorporated's cross claims[50] is **GRANTED IN PART AND DENIED IN PART**. To the extent the motion seeks dismissal of Plaintiff's claims, the motion is **DENIED**. To the extent the motion seeks a stay of Plaintiff's claims, the motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Felton Adam Robichaux's claims against Defendants Employers Insurance Company of Wausau and Liberty Mutual Insurance Company are **STAYED** until such time, if ever, that the bankruptcy court grants relief from the stay, allowing persons with claims against Reilly Benton to pursue their direct action claims against the Reilly Benton's insurers.

**IT IS FURTHER ORDERED** that Huntington Ingalls Incorporated's cross claims against Defendants Employers Insurance Company of Wausau and Liberty Mutual Insurance Company are **STAYED** until such time, if ever, that the bankruptcy court grants relief from the stay, allowing persons with claims against Reilly Benton to pursue their direct action claims against the Reilly Benton's insurers.

**New Orleans, Louisiana, this 17th day of May, 2022.**

                                  *Susie Morgan*
                                  **SUSIE MORGAN**
                       **UNITED STATES DISTRICT JUDGE**

---

[50] R. Doc. 38.