**MINUTE ENTRY**
**BARBIER, J.**
**MARCH 23, 2022**
**JS-10:  46 min.**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LORITA M. SAVOIE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 15-1220** |
| **PENNSYLVANIA GENERAL INSURANCE COMPANY, ET AL.** | **SECTION: "J"(3)** |

| | |
|---|---|
| **COURTROOM DEPUTY:** | **COURT REPORTER:** |
| **Gail Chauvin** | **Alexis Vice** |

### WEDNESDAY, MARCH 23, 2022 AT 9:30 A.M.
### JUDGE CARL J. BARBIER PRESIDING

### STATUS CONFERENCE AND ORAL ARGUMENT

**Case called at 9:35 a.m.**
**MOTION to Dismiss or Stay by Pacific Employers Insurance Company, Employers Insurance Company of Wausau, Liberty Mutual Insurance Company, Century Indemnity Company (Rec. Doc. 713). MOTIONS argued; ORDERED: Motion to Dismiss is DENIED, Motion to Stay is GRANTED for reasons stated on the record. Court adjourned at 10:21 a.m.**

**PRESENT:**  **Gerolyn Roussel, Jonathon Clement, Martha Y. Curtis, Mary R. Arthur, Katherine Roth, Charles Pisano, Sydney Cunningham, Lawrence Pugh**

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

**EXHIBIT 6**

1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5   LORITA M. SAVOIE, ET AL
                                        CIVIL ACTION
6                                       NO. 15-1220
    VERSUS                              SECTION "J"(3)
7                                       MARCH 23, 2022

8   PENNSYLVANIA GENERAL INSURANCE COMPANY, ET AL

9

10

11          TRANSCRIPT OF STATUS CONFERENCE AND MOTION HEARING
                HEARD BEFORE THE HONORABLE CARL J. BARBIER
12                     UNITED STATES DISTRICT JUDGE

13

14

15  APPEARANCES:

16  FOR PLAINTIFFS:                    Gerolyn P. Roussel, Esq.
                                        Jonathan B. Clement, Esq.
17                                      ROUSSEL & CLEMENT
                                        1550 West Causeway Approach
18                                      Mandeville, LA  70471

19

20
    FOR CENTURY INDEMNITY AND
21  PACIFIC EMPLOYERS:
                                        Martha Y. Curtis, Esq.
22                                      SHER GARNER CAHILL RICHTER
                                               KLEIN & HILBERT
23                                      909 Poydras Street
                                        Suite 2800
24                                      New Orleans, LA 70112

25


                        OFFICIAL TRANSCRIPT

```
 1    APPEARANCES CONTINUED:

 2

 3    FOR EMPLOYERS INSURANCE OF WAUSAU:

 4

 5                              Charles M. Pisano, Esq.
                               Sydne R. Cunningham, Esq.
 6                              ROEDEL PARSONS BLACHE FONTANA
                                    PIONTEK & PISANO
 7                              1515 Poydras Street
                               Suite 2330
 8                              New Orleans, LA  70112

 9

10

11    FOR LIBERTY MUTUAL:         Katherine S. Roth, Esq.
                               PIPES MILES BECKMAN
12                              1100 Poydras Street
                               Suite 1800
13                              New Orleans, LA 70163

14

15

16    FOR UNIROYAL HOLDING:       Mary R. Arthur, Esq.
                               FORMAN, WATKINS & KRUTZ
17                              201 St. Charles Avenue
                               Suite 2100
18                              New Orleans, LA  70170

19

20

21    FOR ARROWOOD INDEMNITY:     Lawrence G. Pugh, III, Esq.
                               PUGH ACCARDO
22                              1100 Poydras Street
                               Suite 3200
23                              New Orleans, LA  70163

24

25


                       OFFICIAL TRANSCRIPT
```

1  Official Court Reporter:          Alexis A. Vice, RPR, CRR
                                     500 Poydras Street, HB-275
2                                    New Orleans, LA  70130
                                     (504) 589-7777
3                                    *Alexis_Vice@laed.uscourts.gov*

4

5

6

7

8

9  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
   PRODUCED BY COMPUTER.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                        OFFICIAL TRANSCRIPT

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2                      (MARCH 23, 2022)

 3           (STATUS CONFERENCE AND MOTION HEARING)

 4

 5               (The Court was called to order.)

 6         THE COURT: Good morning, everyone.  Please be seated.

 7         All right, Gail, call the case.

 8         DEPUTY CLERK: Civil Action 15-1220, Lorita M. Savoie,

 9   et al, versus Pennsylvania General Insurance Company, et al.

10         THE COURT: All right, Counsel, has everyone who is

11   here and needed to sign in signed the sheet?

12         MS. CURTIS: Yes, Your Honor.

13         THE COURT: If you haven't, you can sign it

14   afterwards.

15         All right, I think we had originally scheduled a

16   status conference for this morning after the plaintiffs had

17   filed the, what was it, third supplemental amended complaint.

18         And then there was a motion, this motion to dismiss

19   filed by the defendants, the newly added defendants, I guess,

20   and a request for oral argument.  So we'll take up those

21   matters here this morning.

22         Who is going to argue for the movers in this motion

23   to stay or dismiss?

24         MS. CURTIS: Good morning, Your Honor.  Martha Curtis

25   at Sher, Garner.  We represent Century Indemnity Company and
```

OFFICIAL TRANSCRIPT

1  Pacific Employers Insurance Company.  We took the lead in the
2  briefing.  I don't know if any of the other insurers would want
3  to argue as well.

4           **THE COURT:** Okay.  Well, you can come forward and
5  start off, okay.

6           I believe I've read everything that the parties have
7  filed.  I also went back and read the hearing in front of Judge
8  Brown in bankruptcy court from 2017 which was referenced.  So
9  go ahead.

10          **MS. CURTIS:** Yes, good morning, Your Honor.  I'm glad
11 you read that transcript because it's really easy what we're
12 here about today.  Because based on the *Chestnut* case, the
13 Fifth Circuit, if property is arguably the property of the
14 bankruptcy estate, you go in favor of the bankruptcy estate.

15          So in this case, it's not even arguably.  The
16 plaintiffs have alleged in paragraph 75 of their petition that
17 the plaintiff, deceased plaintiff now, but the employee was
18 exposed to Reilly-Benton's products.  It is undisputed that all
19 the insurance policies have an aggregate limit for exposure to
20 products claims.

21          So if Mr. Savoie's heirs are able to be here and try
22 and get money from the insurance policies that have limits for
23 those claims, that upsets the other creditors who are in the
24 bankruptcy.

25          **THE COURT:** Let me ask you this.  It's represented --

OFFICIAL TRANSCRIPT

1    I saw it in some of the briefing, and it's referenced in the

2    statements made in front of Judge Brown in his hearing -- that

3    there's some 18,000, I believe it is, claims.

4         **MS. CURTIS:** At that point, it was 18,500.  I think we

5    may be pushing 20,000.  I don't know if the trustee is here.

6    But yes, that has been taken as true.

7         **THE COURT:** That number, does that encompass claims

8    filed in bankruptcy court or claims in litigation or some

9    combination, or where are these claims?

10        **MS. CURTIS:** What it was, was when Reilly-Benton

11   declared bankruptcy, went for Chapter 7, Reilly-Benton

12   represented to the Court, "I have 18,500 pending claims against

13   me."  So at that stage, were there already pending claims in

14   litigation or someone went to them and said, "I need money,"

15   but they represented to the court they have 18,500.

16        Now we can get for Your Honor, if you'd like, there

17   have been now, you know, people who have put in claims in the

18   bankruptcy court.  And the bankruptcy trustee for Century's

19   settlement that they're proposing, for LIGA's settlement that

20   they're proposing, they've talked about getting in touch with

21   all 18,000 claimants, you know, to put them on notice and

22   everything about if they have any objection.

23        **THE COURT:** Are you telling me that some 18,000 people

24   have filed claims in bankruptcy court?

25        **MS. CURTIS:** I understand that the bankruptcy trustee

OFFICIAL TRANSCRIPT

1  is planning to notice 18,000 people.  So they have that number
2  of claims.  I don't know if when Reilly-Benton went to
3  bankruptcy, they attached a list.  I think we referenced it in
4  our pleadings.
5          **THE COURT:** There's usually a bar date in bankruptcy
6  court.  Has that passed; do you know?
7          **MS. CURTIS:** I don't think we've had that yet, Your
8  Honor.  I'm sorry, I don't want to misrepresent.  I don't think
9  there has been.  Because I think the idea was the trustee was
10 going to notice all the people they have about the two pending
11 settlements, and then they can decide if they object to those
12 settlements or not.
13         **THE COURT:** Here's my question.  This bankruptcy was
14 filed in 2017 apparently; right?
15         **MS. CURTIS:** Yes, Your Honor.
16         **THE COURT:** Judge Brown had this hearing in October of
17 2017.  It sounded like that hearing was occurring literally the
18 day after the bankruptcy petition was filed.
19         **MS. CURTIS:** Yes.  What was happening is Ms. Roussel,
20 who's here today, was in the middle of trial against
21 Reilly-Benton.  Not against the insurers of Reilly-Benton,
22 against Reilly-Benton.  So in the middle of trial,
23 Reilly-Benton declares bankruptcy, and she asks the court to
24 lift it to let her proceed with her trial against
25 Reilly-Benton.

OFFICIAL TRANSCRIPT

8

1         Judge Brown said no, because Reilly-Benton is the
2  debtor.  Here we are.  Now we're one step beyond that because
3  we're going against Reilly-Benton's insurers.

4         **THE COURT:** Well, I'm trying to get a little more
5  background information, the history of the procedure.
6  Ms. Roussel can answer for herself in a minute, but what do you
7  know.

8         The plaintiffs in that case, it's not this case, it's
9  the *Tregre* case, I think?

10         **MS. CURTIS:** Yes, Your Honor.

11         **THE COURT:** They went to trial against the remaining
12  parties, everyone other than Reilly-Benton.

13         **MS. CURTIS:** That's my understanding, either settled
14  or went to trial against them.

15         **THE COURT:** Yeah, okay.  But it's been represented to
16  the Court that there are other cases, I guess, in state courts,
17  different state courts, that are pending and moving forward in
18  state court currently against Reilly-Benton; is that correct?

19         **MS. CURTIS:** Well, there are no cases going against
20  Reilly-Benton in state court.

21         **THE COURT:** Or the insurers.

22         **MS. CURTIS:** Okay, and my insurer, Ms. Roussel listed
23  cases that supposedly she has, we're not in any of those cases.
24  So I'm sorry, Your Honor, I can't represent about what --

25         **THE COURT:** You're not in it, meaning, your law firm

OFFICIAL TRANSCRIPT

1   is not in it?

2       **MS. CURTIS:** No, the insurers I represent.  Other

3   Reilly-Benton insurers may be in it, but Century and Pacific

4   are not in those cases.

5       And any other cases that are against the insurers of

6   Reilly-Benton that we've been involved in for Century, we have

7   reached out to the plaintiff's counsel, and they either have

8   voluntarily agreed that there's a stay, or we've filed

9   exceptions, motions to dismiss, similar to what we have pending

10  in front of Your Honor, saying that they should be dismissed or

11  stayed.

12      **THE COURT:** Okay, all right.  Here's my next question.

13  Has anybody figured out -- in reading, again, this transcript

14  of the hearing before Judge Brown in 2017, Mr. Derbes, I

15  believe, who represented the debtor, he represented to the

16  court, the bankruptcy court that there was only $1.1 million of

17  insurance, liability insurance remaining.

18      Did that encompass all the insurers?

19      **MS. CURTIS:** I think that was a misstatement by

20  Mr. Derbes, Your Honor.  Because right now, the pending

21  settlement that Century and the trustee reached after the

22  trustee hired -- with the order of the Court, with Judge Brown,

23  over their objections, over the objections -- national

24  insurance coverage counsel, the pending settlement with our

25  clients is $3 1/2 million.

OFFICIAL TRANSCRIPT

1         So we have reached an agreement, if approved by the

2 bankruptcy court, that our clients would pay $3 1/2 million

3 into a fund to be equitably distributed by someone to all the

4 claimants.

5         The problem we have, again, is in this case the

6 *Savoie* plaintiffs are trying to go against our policies now

7 which have limits on products which is one of their claims, and

8 this is, again, the bankruptcy stay is not just for the

9 debtor --

10         **THE COURT:** Your policies have aggregate limits?

11         **MS. CURTIS:** For products claims, Your Honor.  And

12 they're making claims for both products, which we cited

13 paragraph 75, and for exposure, for non-product, like

14 contracting claims.

15         **THE COURT:** Explain to me what that means.  I'm not

16 sure what you mean by "contracting claims."

17         **MS. CURTIS:** Okay.  I think what they are alleging is

18 that Reilly-Benton was putting up asbestos or sawing or doing

19 something with it near the injured employee.  So physically

20 contracting, working with asbestos, that's under --

21         **THE COURT:** As opposed to just supplying the product?

22         **MS. CURTIS:** As opposed to just supplying.

23         **THE COURT:** Could they have been doing both?  That's

24 what they allege?

25         **MS. CURTIS:** They're alleging both.  They're alleging

1  both.  But our policies have an aggregate limit for products

2  claims, for just, "This is your product."  Whether you touched

3  it, put it up, worked with it at all, that is your product.

4  And the problem is --

5        **THE COURT:** What about do you have an aggregate limit

6  for the other type of claim?

7        **MS. CURTIS:** Most of the other types of claims have

8  occurrence limits, but not aggregate limits.  So each

9  individual plaintiff may have a limit, but not all of them

10 together.

11       But the problem in this case with paragraph 75 with

12 the plaintiffs' alleging both a products claim and a contract

13 or premises claim or non-products -- let me just say a products

14 and a non-products claim -- is that if they were successful in

15 this case it would diminish the product side of the aggregate

16 to the detriment of the other 18,500 people.

17       **THE COURT:** What if they only pursued or were able to

18 pursue the non-product claim?

19       **MS. CURTIS:** Well, that's not their complaint, Your

20 Honor.

21       **THE COURT:** I guess theoretically, this Court or the

22 bankruptcy court could allow them to proceed on one claim, but

23 not on the other.

24       **MS. CURTIS:** Where we are right now, they're

25 proceeding on both.  And again, with the *Chestnut* case, it says

1  if it's arguably property of the bankruptcy estate, it should
2  go to bankruptcy.

3          And we have some other cases we've cited too, Your
4  Honor.  Even without aggregates, it's again when you have a
5  mass tort litigation and the insured is -- I mean, yeah, the
6  insured declares bankruptcy, the bankruptcy court should take
7  control of that and equitably distribute the assets.

8          **THE COURT:** But in those cases, the premise of those
9  cases is that the insurance policy is obviously not sufficient
10 to satisfy all the claims.  So you have to take that into
11 account also.

12         **MS. CURTIS:** Yes, Your Honor.

13         **THE COURT:** In other words, you could have hundreds of
14 thousands of claims, but if you got plenty of insurance.

15         **MS. CURTIS:** Right, yeah.  And the problem is that
16 Century in its settlement, in its proposed settlement with the
17 bankruptcy trustee has said we'll pay you 3 1/2 million now,
18 now, without anybody going through litigation, without waiting
19 for people to be sick, without showing proof, whatever proof
20 you, trustee, want.  We'll give it to you now to pay all these
21 people, but in return, we're off for all of our policies.

22         **THE COURT:** I'm trying to understand how this works.
23 The creditors don't have a say in that?

24         **MS. CURTIS:** Oh, they do.  They can object to the
25 settlement in bankruptcy court, and they have.

OFFICIAL TRANSCRIPT

1      **THE COURT:** That hasn't been decided?

2      **MS. CURTIS:** Yeah, I think part of the problem, Your

3   Honor, of course, is Judge Brown retired and then unfortunately

4   died.  And then we've had COVID.  I mean it's nobody's fault.

5   It's just what it is.

6      And actually, we're glad actually that we're coming

7   to a head.  I think magistrate -- I mean bankruptcy Judge

8   Grabill has set a status conference for next Friday,

9   April 1st.  I don't know if you have the list, Your Honor.

10      **THE COURT:** I haven't seen it.  What is she going to

11   consider?

12      **MS. CURTIS:** She has like eight topics.  This has been

13   submitted.

14      **THE COURT:** Is there a pending motion to lift the stay

15   in front of her now --

16      **MS. CURTIS:** Not that I know of.

17      **THE COURT:** -- pertaining to these plaintiffs?

18      **MS. CURTIS:** Not that I know of, a motion to lift the

19   stay.  That's what our argument is about.  But you know, they

20   may be right, you may be right, Your Honor, that maybe they can

21   lift it to pursue some claim outside of bankruptcy.  But

22   because the policy as a whole --

23      **THE COURT:** I didn't say that.  I just asked a

24   question.

25      **MS. CURTIS:** Yes.  Maybe depending --

OFFICIAL TRANSCRIPT

1    **THE COURT:** I wasn't making a ruling.

2    **MS. CURTIS:** Okay, right, Your Honor.

3    **THE COURT:** Okay.

4    **MS. CURTIS:** So that's what we're just saying.  It's

5 one policy.  So that one policy is clearly an asset of the

6 bankruptcy estate.

7    **THE COURT:** The thing that makes this type of case a

8 little -- these asbestos cases a little bit more complex in

9 many ways is that they're alleging exposure that occurred over,

10 I think in this case, 40 years or something, 50 years.

11    So you got policy limits for each year; right?

12    **MS. CURTIS:** Yes, Your Honor.

13    **THE COURT:** So here's my question.  Mr. Derbes said

14 there was 1.1.  You said that was a misstatement.  You're now

15 offering or you're trying to get out for 3-point-something?

16    **MS. CURTIS:** 3.5 million just for Century and Pacific.

17    **THE COURT:** I understand.  What are your aggregate

18 limits?

19    **MS. CURTIS:** I would have to go back and add the

20 products aggregate limits.

21    **THE COURT:** You're offering 3.5.  But do you have

22 5 million, 10 million, 100 million left, or what?

23    **MS. CURTIS:** No, no, definitely not.  I mean I can

24 supplement.

25    **THE COURT:** No as to which one of those numbers?

OFFICIAL TRANSCRIPT

1      **MS. CURTIS:** Your Honor, I haven't looked at -- I've

2 looked at that issue, that precise issue of what products

3 aggregate limits we have left.  I wanted to say it was around

4 4 million.  Don't hold me to it, but I want to say that was

5 around where it was.

6      **THE COURT:** But your point is, that's something that

7 Judge Grabill should, at least in the first instance, decide?

8      **MS. CURTIS:** Yeah.  It was a hard-fought negotiation

9 with the trustee's attorney, the trustee's national coverage

10 counsel.  We argued all these things.  They argued all these

11 things, and we came to that settlement.

12      **THE COURT:** This motion is filed on behalf of your

13 client Century?

14      **MS. CURTIS:** Yes, and Pacific.

15      **THE COURT:** Also, Pacific?

16      **MS. CURTIS:** Yes.

17      **THE COURT:** And then there are other insurers,

18 Employers Insurance of Wausau, Liberty Mutual; right?

19      **MS. CURTIS:** Yeah.  As far as I know, they do not have

20 any pending settlements with the trustee.  The only other party

21 that I'm aware, that I'm sitting here aware of, LIGA as the

22 Louisiana Insurance Guaranty Association for some of the

23 insurers who went bankrupt, I understand they have a pending

24 settlement with the trustee.

25      **THE COURT:** So the 3.5 million that you've mentioned,

OFFICIAL TRANSCRIPT

1 | is that just for Century?

2 |         **MS. CURTIS:** Yes, that's just for the Century

3 | insurers, Your Honor.

4 |         **THE COURT:** What's the status with Pacific?

5 |         **MS. CURTIS:** No, Century and Pacific. They're

6 | together. We call them the Century insurers. I'm sorry, Your

7 | Honor.

8 |         **THE COURT:** Oh, okay. Anything else you want to say?

9 |         **MS. CURTIS:** I just want to stress, Your Honor, that

10 | this is a motion to dismiss without prejudice or alternatively

11 | motion to stay.

12 |         **THE COURT:** I understand.

13 |         **MS. CURTIS:** It's nothing more than *Chestnut* where the

14 | property at issue was argued as whether it was community

15 | property or separate property. And actually, the people

16 | foreclosed on it actually were correct that they could

17 | foreclose with separate property.

18 |         But Judge Clement on appeal at the Fifth Circuit said

19 | even though they ended up being correct, it was certainly

20 | arguably property of the community property that was stayed at

21 | the time of the foreclosure, and they could be sanctioned for

22 | going against the stay.

23 |         So this is certainly arguably property. And we

24 | attached the letter from Mr. Derbes to Ms. Roussel, I commend

25 | you, Exhibit A to our reply where as counsel for the trustee he

OFFICIAL TRANSCRIPT

1  again says it's violating the stay.  So we just think it should

2  proceed in bankruptcy, and whatever happens there, we'll abide

3  by.

4       **THE COURT:** Okay, thank you.

5       Wait a minute.  Anybody else want to say anything for

6  any of the insurers?

7       **MR. PISANO:** Chuck Pisano, Your Honor, on behalf of

8  Employers Insurance Company of Wausau.  We fit into this, we

9  had coverage --

10       **THE COURT:** Do you have a settlement pending too?

11       **MR. PISANO:** No, we do not have a settlement pending,

12  and I'll address that.

13       We had three years of coverage, from mid-'69 to

14  mid-'72.  Under those policies, we had an aggregate limit of

15  $1 million per year.  And as of 2009, we had paid out all of

16  that money on those aggregates.

17       **THE COURT:** All of those policies are wasting policies

18  where the costs of defense come out of the limits?

19       **MR. PISANO:** Well, at least, as to the aggregate limit

20  that applies to products claims, all that money has been paid

21  out.

22       Part of the background here that may help explain

23  some of this is that these pending settlements in the

24  bankruptcy court with LIGA and with Century, my understanding

25  is that those were agreed to and they've been pending now for

OFFICIAL TRANSCRIPT

1  close to two years.  And there are various reasons as
2  Ms. Curtis alluded to, but the bottom line is they've been
3  pending.
4           And you asked about other Reilly-Benton cases pending
5  in state court.  There are.  There are some others in federal
6  court.  But none of them have gone to trial since this
7  bankruptcy issue came up.
8           From my client's standpoint, we have had preliminary
9  discussions with the trustee about a settlement similar to the
10 ones entered by LIGA and Century.  Because of the pending
11 approval in the bankruptcy court of those first two
12 settlements, the trustee wants to take a wait-and-see approach.
13          So essentially, what he's told us is let's see what
14 happens with Century.  If the Court approves that, then we'll
15 talk to you about doing a similar deal.
16          **THE COURT:** Okay.
17          **MR. PISANO:** So my position has been in the other
18 cases that we have just let them go on because in all but one
19 of them, there are other defendants; but it's been with the
20 intention of waiting to see what happens in the bankruptcy
21 court.  And if we got to the point where one of those was
22 looking at an imminent trial and there was no resolution of
23 these bankruptcy issues, then it is our intention to file
24 motions to stay those cases or to have them dismissed like this
25 so that these issues can be decided in bankruptcy court.

OFFICIAL TRANSCRIPT

1       From our perspective, the bottom line is all of these

2  issues are pending in the bankruptcy court.  What the aggregate

3  limits are, whether there's any money left under them, those

4  would be issues for the bankruptcy court to decide because it

5  would be a limited pot of money that all of the claimants would

6  have to fight over.

7       In addition, with respect to the so-called

8  contracting claims, there's been a big fight in the bankruptcy

9  proceeding with oppositions that have been filed by these

10 plaintiffs contesting the scope of the relief that the

11 bankruptcy court can grant and what effect it may or may not

12 have on the contracting claims.  So my plea would be that those

13 issues need to be decided by the bankruptcy court first before

14 we do anything else.  That's all I have.  Thank you.

15       **THE COURT:** Okay, thank you.  Anyone else on this

16 side?

17       **MS. ROTH:** I'm sitting on the wrong side of the

18 courtroom, Your Honor.  But my name is Katie Roth, and I'm here

19 on behalf of Liberty Mutual, one of the insurance companies

20 that has joined in the motion today.

21       Just briefly, I just wanted to echo what my

22 co-counsel have said today and give you a very brief background

23 of kind of where Liberty Mutual fits into this picture.

24       We are alleged to have provided insurance to

25 Reilly-Benton from, I believe, years '61 to '67.  To date, we

OFFICIAL TRANSCRIPT

1   have not located insurance policies, and our position is that

2   insurance policies were not issued. And if so, there's no --

3   well, that there's no proof that insurance policies were

4   issued. We have seen certificates of insurance, but nothing

5   else evidencing an actual policy.

6         Alternatively, even were a policy to be located, in

7   2013, Liberty settled separately with Reilly-Benton, and that

8   settlement exhausted the funds that would have been available

9   under those policies if they do, in fact, exist.

10       **THE COURT:** How did you settle with the insured?

11       **MS. ROTH:** Your Honor, I honestly don't know the

12   specific details of that settlement, but I believe that we --

13   well, exactly what do you mean by that?

14       **THE COURT:** Well, you said you settled with

15   Reilly-Benton. They're not the people with the claim. They're

16   the insured, but the money, the proceeds, assuming liability is

17   proved, would belong to the claimants. It's their claims.

18       **MS. ROTH:** My understanding is in an act of good faith

19   we paid Reilly-Benton a sum of money.

20       **THE COURT:** They can't release you from these

21   plaintiffs' claims, can they?

22       **MS. ROTH:** Well, I believe that's what our position

23   is.

24       **THE COURT:** That would be strange to me.

25       **MS. ROTH:** And that the aggregate limits of the

OFFICIAL TRANSCRIPT

1  policies were exhausted.  We paid out in advance basically

2  everything we thought we would ever owe under these policies.

3          **THE COURT:** You gave the money to the insured?

4          **MS. ROTH:** Correct.

5          **THE COURT:** Wow, that's interesting.

6          **MS. ROTH:** I hope I've said that correctly.  That's my

7  understanding of how things go.

8          **THE COURT:** Okay, you might want to go check that.

9          **MS. ROTH:** I'll check that.

10          **THE COURT:** I mean I'm not -- I don't know, but it

11  just strikes me as odd or strange.

12          **MS. ROTH:** I understand.  Thank you.

13          **THE COURT:** Okay, all right.

14          Who is going to argue over here?

15          Somebody had mentioned, I think Ms. Curtis mentioned,

16  I haven't seen it.  Do we have the list that Judge Grabill is

17  going to consider at her status conference, when is that,

18  April 1st?

19          **MS. CURTIS:** Yes, Your Honor.  Our office can supply

20  it if you can't pull it up, but it should be the last --

21          **THE COURT:** Is it in the record?

22          **MS. CURTIS:** I'll check.  I'll check.

23          **THE COURT:** Okay.  If you can find that, I'd like to

24  just glance at that.

25          **MR. CLEMENT:** Jonathan Clement for the Savoie family.

OFFICIAL TRANSCRIPT

```
 1          What counsel for Liberty Mutual -- I think it's
 2   important to give the Court a little bit, some of the
 3   background.  What she actually said about the settlement with
 4   Liberty Mutual and Reilly is right.  That's why it doesn't make
 5   sense.  They settled with the insured, gave the insured money
 6   in an attempt to exhaust the policies.  Why would they want to
 7   try to do that?
 8          We've been coming up, and you've heard that you have
 9   products claims where if you just sell the products, those have
10   purported aggregate limits for each policy year.  Then you have
11   contracting claims where Reilly-Benton comes on the premises,
12   removes insulation or applies insulation.  There are no policy
13   limits for those type of claims under the language of the
14   policy.  That's why they're trying to enter into these
15   settlements is to suck those type of claims that have no policy
16   limits into the aggregate products which they can't do it.
17          This is how the whole Reilly-Benton and these motions
18   that are now pending before the bankruptcy judge came about.
19   Reilly-Benton bankruptcy was filed in 2017.  Yes, our firm did
20   come in to try to lift the stay only as to Reilly-Benton right
21   after it was filed because we were in the middle of a trial.
22   The defendants had moved for a mistrial since the bankruptcy
23   happened.
24          And what the judge said at that time was, "Listen,
25   I'm just going to maintain the status quo.  It doesn't prevent
```

OFFICIAL TRANSCRIPT

1 you from going after anybody else, but I'm going to keep the

2 stay as to Reilly-Benton." That has nothing to do with the

3 issue that's before the Court now.

4 So what happened since then, since 2017, Liberty

5 Mutual has tried to take advantage of that settlement agreement

6 that she was telling you about and tried to block a claim in

7 our *Courville* case. And what the judge did, the judge actually

8 granted Liberty's motion for summary judgment saying, "Yeah,

9 well, they entered an agreement with the insured. Your claim

10 is blocked because under that agreement they said no more

11 future claims."

12 It went up to the Fourth Circuit. In May 2020, the

13 Fourth Circuit said, "No, you can't do that. You can't bind

14 third parties who aren't parties to that agreement and block

15 their claims." Three months later, all this stuff with the

16 settlement happened. Now that they realized that under state

17 court --

18 **THE COURT:** All what stuff with what settlement?

19 **MR. CLEMENT:** The Century settlements. In July, they

20 now file for approval, July of 2020. This is two, three months

21 after that Fourth Circuit decision comes down. Now they're

22 coming to the bankruptcy court when nothing has happened in the

23 Reilly-Benton bankruptcy since 2017.

24 You asked if some of those claims were a part of bar,

25 you know, proof of claims. No, there has been no bar date.

OFFICIAL TRANSCRIPT

1  Nothing has been done.  All those claims are, I guess, claims
2  that have been filed over the years against Reilly-Benton
3  dating back to in the 1990s where, you know, Mr. Landry, who is
4  sitting in the back of the courtroom who also represents a lot
5  of plaintiffs in these type of cases, when he was probably
6  younger than me, he represented some of those individuals, and
7  those cases are gone.  People have since died.  We don't think
8  there is 1800 claims.

9       **THE COURT:** 18,000.

10      **MR. CLEMENT:** 18,000, the number that they came up
11  with.

12      But what I'm trying to get to is we're here asking
13  you to allow this Court to allow this claim to go forward.  And
14  as you've already heard, we do have pending claims in state
15  courts against Liberty Mutual, against Wausau.  In fact, we're
16  under active negotiations right now in some of those state
17  court cases to try to get them settled against Liberty Mutual
18  and Wausau.

19      What's spearheading this is the Century insurers with
20  their settlement with the trustee which we believe is an
21  attempt to try to get around what the state court, Louisiana
22  Fourth Circuit has done in *Courville* and said you can't enter
23  into an agreement to bind third party claims, that that's
24  improper under Louisiana law.  Now they're trying to come do
25  this in the bankruptcy proceeding.

OFFICIAL TRANSCRIPT

1   And the biggest difference, they're trying to fit

2 this under the 11 U.S.C. 362 and argue that it's proceeds of

3 the estate, that the insurance policy proceeds are property of

4 the estate.  And the one -- basically, the Fifth Circuit in

5 *Edgeworth* stated that when you have a liability policy like we

6 have at issue here, the proceeds aren't property of the estate.

7   **THE COURT:** I know that's the general rule.  You know,

8 typically, this comes up in one-off cases.  You got somebody

9 hurt allegedly by some defendant who ends up in bankruptcy, and

10 bankruptcy court would lift the stay and let them proceed

11 against the insurance company, and you know, that's easy.  But

12 this is a lot more complicated.

13   **MR. CLEMENT:** Sure.  And that's what I'm trying to

14 distinguish this from the case that they're heavily relying on

15 which is that *OGA Charters* case that they cite.

16   **THE COURT:** Right, right, the bus accident.

17   **MR. CLEMENT:** Right.  And in that case, it was finite.

18 You had $400 million in potential claims, and you had a

19 5 million policy where there was no dispute by either side that

20 there was a cap on the aggregate limits.  This case is not

21 that.  That was one policy.  Here, we have --

22   **THE COURT:** I understand that.  But their argument is,

23 is that just means it's arguably property of the estate, and

24 that's all going to have to be sorted out eventually one way or

25 the other in bankruptcy court, at least in the first instance.

OFFICIAL TRANSCRIPT

1     **MR. CLEMENT:** I understand.  Our position is not
2  arguably.

3     **THE COURT:** Well, you don't -- you see, it's not
4  clear.  It's certainly not clear how much insurance is left,
5  how many claimants there are.  I mean on the face of it, it
6  seems like this is a case where you have a mass tort with
7  probably thousands of claimants, if not 18,000.  Maybe it's
8  half that.  I don't know.

9     But with some limited amount of insurance probably,
10  at least arguably.  And so you arguably come under that
11  rationale from that case in the Fifth Circuit or a couple of
12  cases, *Sosebee* and all, which talk about where you have mass
13  torts, and it's likely to exhaust the insurance proceeds.

14     The whole point is designed to stop essentially what
15  you're trying to do, you know, so-called race to judgment, you
16  know, race to the courthouse.

17     **MR. CLEMENT:** Your Honor, the way I would distinguish
18  those type of cases from this is here, while you can classify
19  this first as a mass tort if you want because there's --

20     **THE COURT:** It's definitely a mass tort.

21     **MR. CLEMENT:** -- this purported 18,000 claims, the
22  next step is what's crucial.  Not only do you have to have the
23  claims, but you have to have the possibility that the policy
24  can be exhausted.  And that's what is different here.

25     **THE COURT:** What is different is at a minimum, it's

OFFICIAL TRANSCRIPT

1  unclear whether that's the case or not.  And it's certainly,

2  certainly -- I don't want to say likely, but it may be likely.

3  It's certainly plausible that this is a case that's going to

4  exhaust the insurance from everything I've read and heard and

5  seen.  And no one seems to know the exact numbers.

6          And then they got arguments about whether this type

7  of coverage or that type of coverage and what insurance

8  policies cover what particular years.  All of which makes this

9  much more complicated.  You're right in the sense it's

10  certainly not as clean or cut -- not clean cut.  As clear-cut

11  as the bus case, you know, but the cases seem to be if there's,

12  you know, I guess you'd say a good faith argument that this

13  could be the situation that you got mass claimants, a mass tort

14  situation which this clearly is.  All these asbestos cases are,

15  and there's a possibility of exhausting the insurance.

16          Until that is decided, and I think that's the kind of

17  thing that Judge Grabill is going to consider from what I

18  understand.

19          You-all, I'm assuming, are objecting to the Century

20  and LIGA settlements; right?

21          **MR. CLEMENT:** We are, yes.

22          **THE COURT:** And let's see.

23          **MS. CURTIS:** Your Honor, I found the docket for Judge

24  Grabill.

25          **THE COURT:** I think I have it here.


OFFICIAL TRANSCRIPT

1    **MS. CURTIS:** It's Document 109.

2    **THE COURT:** That's exactly what I have in my hands.

3 Thank you, Ms. Curtis.

4        Go ahead.

5    **MR. CLEMENT:** The last couple things I'd address, and

6 I think that's where I agree that they are alleging that

7 there's numerous claimants. Asbestos cases, there's a bunch of

8 them. I think where it differs, though, from the other ones is

9 the argument that there's a possibility that it can be

10 exhausted. That's our whole position. It can't be exhausted

11 because of the language of the policy.

12    **THE COURT:** Well, but if you convince Judge Grabill of

13 that, then presumably, she would lift the stay and let you

14 proceed against these insurers; right?

15    **MR. CLEMENT:** Well, that's another issue. We're not

16 moving to lift any stay because our position is we're not

17 trying to go after Reilly-Benton. We're going after the

18 insurers. There is no stay as to the insurers. She would have

19 to enter an injunction.

20    **THE COURT:** But if she finds ultimately that the

21 proceeds of these insurance policies belong to the estate under

22 that line of cases from the Fifth Circuit, in this situation,

23 then you'd have to ask her to lift the stay; right?

24    **MR. CLEMENT:** Yeah, I think what they're asking her to

25 do is find that they're proceeds of the estate and then issue

OFFICIAL TRANSCRIPT

1  an injunction preventing us.

2          **THE COURT:** Or she may find that it's not proceeds of

3  the estate.  In which case, you're free and clear again.

4          **MR. CLEMENT:** Right.

5          **THE COURT:** So why is this here in front of me?  It

6  should be in front of Judge Grabill it strikes me.

7          **MR. CLEMENT:** Our position, since you're here on a

8  motion to dismiss, a 12(b)(6) motion to dismiss, under the law,

9  we have a direct action claim against the insurers.

10          **THE COURT:** Direct action statute, everything we're

11  talking about, has to yield -- nobody is arguing you don't have

12  direct action.  That's not the issue here.

13          It just strikes me that I ought to let Judge Grabill

14  grapple with this stuff, and you know, presumably, if somebody

15  is not happy with what she does, I'll hear from you-all again.

16          **MR. CLEMENT:** I would say, I guess, I don't know what

17  happens at that point.  If you were inclined to -- would you

18  take it under advisement and just wait for her to issue some

19  type of ruling?

20          **THE COURT:** I can either dismiss this without

21  prejudice or stay it temporarily.  I don't know if it makes any

22  difference practically.

23          **MR. CLEMENT:** That's what I'm thinking.  I don't know

24  the proper relief on it because there's really no stay in place

25  against the insurers.

OFFICIAL TRANSCRIPT

1    **THE COURT:** Well, you claim.  That's your argument.
2    They say there is, in fact, a stay and that you violated it.
3    And since it's her stay, I think it makes sense to let her
4    decide whether the stay encompasses the proceeds of these
5    policies or not.  It's a complex situation for a lot of
6    reasons.

7    **MR. CLEMENT:** I agree, it's confusing.

8    **THE COURT:** The fact that this is an asbestos case
9    with all the complexities of that and the policies, all of
10   these different policies over 50 years makes it that much more
11   complicated.

12   **MR. CLEMENT:** And I can get the feel where you're
13   going with it.  And maybe what I would suggest, rather than, I
14   guess, dismiss it and have us come back and refile the case
15   against the insurers --

16   **THE COURT:** You'd rather me just stay it?

17   **MR. CLEMENT:** I guess maybe just defer ruling on the
18   motions and see what she does.

19   **THE COURT:** No, I'm not going to do that.  I'm either
20   going to dismiss it or stay it.  Because then it's just hanging
21   on my docket and I don't need that.

22   **MR. CLEMENT:** I see what you're saying.

23   **THE COURT:** So do you have a preference?

24   **MR. CLEMENT:** Can I talk to --

25   **THE COURT:** Go ahead.

OFFICIAL TRANSCRIPT

1      **MS. ROUSSEL:** Judge, might I make some comments?

2      **THE COURT:** Sure, Ms. Roussel, of course.

3      **MS. ROUSSEL:** Gerolyn Roussel for the *Savoie*

4   plaintiffs.

5      And, Judge, a critical distinction here -- and this

6   actually goes to the whole whether or not there is a stay as to

7   the insurers -- is the insurers have never filed a motion to

8   stay.  Unlike there was an identical -- Eagle, as you're

9   familiar with because Eagle was also involved in the *Savoie*

10  case.  Eagle had tried this originally.

11     The difference is Eagle filed a Chapter 11

12  bankruptcy, and the insurers in that case actually came in

13  because they would have had the right to set up a 524(g) trust,

14  but they couldn't because Eagle was not reorganizing.  It was a

15  defunct company.  Similar to what we have here with

16  Reilly-Benton, it's a defunct company.

17     So this bankruptcy is actually being propelled by the

18  insurance companies to try and put a cap on insurance proceeds

19  that don't have a cap.  They're organizing this to do that.  In

20  Eagle's bankruptcy, they actually went before the bankruptcy

21  judge, and they asked for it to be declared to have the stay

22  apply to them.

23     And what Judge Brown said is, "No, you're an

24  insurance company.  Motion to stay denied."

25     **THE COURT:** Wait, wait, what Judge Brown said?

OFFICIAL TRANSCRIPT

1        **MS. ROUSSEL:** Yes, that was Judge Brown.

2        **THE COURT:** Which case?

3        **MS. ROUSSEL:** In the Eagle bankruptcy.

4        **THE COURT:** I don't have a copy of that.

5        **MS. ROUSSEL:** Yes, we attached it.  It's one of the

6   exhibits to our opposition.

7        He actually said no, and that was a Chapter 11

8   bankruptcy where they could have tried to set up a 524(g)

9   trust.  Here, they have a defunct Reilly-Benton, not trying to

10  set up a trust.  They file a bankruptcy claiming 18,000 cases.

11  We know that there are not 18,000.

12       Mr. Landry says, "I tried half of these cases or many

13  of these cases in the 1990s.  Those are not viable claims."

14  But they did that to make it appear that there was some kind

15  of --

16       **THE COURT:** What's your number?

17       **MS. ROUSSEL:** My number is probably five or six.

18       **THE COURT:** Five or six what?

19       **MS. ROUSSEL:** Five or six cases.

20       **THE COURT:** Five or six cases?

21       **MS. ROUSSEL:** Yes, five or six cases.

22       **THE COURT:** If you can show that, all of those are

23  maybe good arguments, the two you just made.  Why can't you

24  just make that in front of Judge Grabill?

25       **MS. ROUSSEL:** Well, because there's no stay as to us,

OFFICIAL TRANSCRIPT

1  and that's why, you know, this --

2       **THE COURT:** If you're right on what you just said,

3  there may well be no stay.  But if you're wrong and they're

4  more correct on all these numbers that you-all are throwing

5  around, then there likely would be a stay.

6       **MS. ROUSSEL:** Reilly-Benton is in a Chapter 7

7  bankruptcy.

8       **THE COURT:** I know that.  I know that.

9       **MS. ROUSSEL:** So that's totally different from if they

10  were trying to reorganize under Chapter 11.  So that argument

11  is, I think, a nonexisting argument.

12       **THE COURT:** Okay.

13       **MS. ROUSSEL:** So that is where the difference is here.

14  And that's why they're not -- and Judge Brown, like I said, in

15  the Chapter 11 Eagle said no.  And if you might recall, Eagle

16  actually came out of the bankruptcy and was actually involved

17  in *Savoie* when we came up for trial.  They settled at the same

18  time Avondale settled.

19       **THE COURT:** Right.

20       **MS. ROUSSEL:** So in the cases that we have proceeding

21  to trial right now, Century is not involved in those because

22  they're earlier years.  These other cases are not in their

23  years.

24       But Liberty is and Wausau is.  And in those cases,

25  they are negotiating individual settlements on those cases

OFFICIAL TRANSCRIPT

1  because they know that stay does not apply to them.

2          So that's where we are right here.  We have a defunct

3  company who is not around with insurers coming in trying to put

4  limits on policies that the Fourth Circuit in Louisiana said

5  you don't have those limits, and no, you can't make these

6  underlying agreements to try -- what they were doing is making

7  these underlying agreements, and if Your Honor is familiar

8  with, I believe Resolute is behind most of it.

9          Making these underlying agreements with the insured.

10 Putting a limited pot.  Dumping everything into the aggregate

11 limits.  Costs of the court, which doesn't go to aggregate

12 limits, duty to defend costs, paying their lawyers.  Then

13 they're running out this small pot of money that they put

14 together and said, "Oh, our aggregate limits are up.  You can't

15 proceed against us anymore," and then trying to block the

16 plaintiffs.

17         The Fourth Circuit has told them you cannot do that.

18 So what they do next is they come to the bankruptcy court, and

19 they say, "Well, we now have this agreement with the trustee,

20 and we want you to enjoin the plaintiffs from doing that."

21 It's against Louisiana public policy.

22         **THE COURT:** Enjoin the plaintiffs from doing what?

23         **MS. ROUSSEL:** From filing suit or proceeding in suits.

24 Just like they're doing here today, trying to dismiss our case

25 or stay our case.

OFFICIAL TRANSCRIPT

1        And keep in mind, Liberty Mutual tried to do this not

2    only in the *Courville* case, but while *Courville* was pending,

3    with two of our other cases in state court.  They actually

4    filed a case for declaratory action before Judge Vitter and

5    tried to enjoin us there and stay us there, and Judge Vitter

6    said, "No, I'm not doing it."

7        So they've lost before Judge Vitter.  They've lost in

8    state court.  Now they're trying to go into the bankruptcy

9    court and do something that's prohibited by --

10    **THE COURT:** Well, what's the problem with doing what I

11    said, let Judge Grabill grapple with all of these arguments and

12    issues.  And whoever is not happy, there's always a right to

13    appeal from her ruling; right?

14    **MS. ROUSSEL:** Well, this is what the issue is with

15    that, and you know, this has been pending.  This was originally

16    filed, I think their motion was filed originally in June 2020.

17    **THE COURT:** This motion hasn't.

18    **MS. ROUSSEL:** No, no, the Century motion to approve

19    the settlement.

20    **THE COURT:** You just recently amended your -- I let

21    you amend.

22    **MS. ROUSSEL:** Correct.

23    **THE COURT:** I think it was your third or fourth

24    amended complaint after you had settled with most everybody

25    else -- with everybody else.

OFFICIAL TRANSCRIPT

1      **MS. ROUSSEL:** That is correct, Judge.

2      **THE COURT:** We let you amend again to bring in these

3  insurers.  So this hasn't been pending long here.

4      **MS. ROUSSEL:** No, no, I understand.

5      **THE COURT:** I'm just trying to say I don't see any

6  great harm in letting this proceed in an orderly fashion by

7  letting Judge Grabill deal with all these issues.  You made

8  some arguments.  You may convince her.  Whoever is not happy,

9  if they wish to appeal, you all know how to do that.

10      **MS. ROUSSEL:** She is taking it up on the 1st.  It

11  has been pending for a long time.  We fully suspect that she

12  may rule on the 1st.

13      **THE COURT:** Okay.

14      **MS. ROUSSEL:** What I would ask is that you maybe --

15      **THE COURT:** Well, good, if she rules on the 1st, I

16  mean, you won't have to wait long.

17      **MS. ROUSSEL:** Would Your Honor be inclined to at least

18  take it under advisement until the 1st so that we don't have

19  to come back?

20      **THE COURT:** What difference does it make if I stay it?

21  If I stay it, I can stay it until Judge Grabill rules on it.  I

22  don't know if she's going to rule on the 1st or not?  I don't

23  ask her when she's going to rule on things, you know.  It's up

24  to her.

25      I just don't know, as a practical matter -- if I stay

OFFICIAL TRANSCRIPT

1  a case, I can unstay it the next day.

2      **MS. ROUSSEL:** But then we need to procedurally come

3  before the Court, file motions, wait for those deadlines.

4      **THE COURT:** All you got to do is send us an email or a

5  letter and say she's ruled. Here's the ruling. Unstay it,

6  whatever. Depending on how she rules, of course, you know.

7      **MS. ROUSSEL:** I don't know that that will even take

8  care of the issue only because all they're moving for at this

9  point is a motion to approve a settlement. So I mean they

10  haven't moved to have that -- and actually, part of her issue

11  was how can I approve a settlement where you're trying to bind

12  third parties that are not part of the settlement.

13      **THE COURT:** Well, here's the thing, I'm going to deny

14  their motion to dismiss. I'm going to grant their motion to

15  stay temporarily.

16      I'm going to allow the parties, whatever you need to

17  file, whatever they need to file, to bring the issues that are

18  in front of me in terms of whether these insurance proceeds

19  should be considered part of the debtor's estate, and

20  therefore, subject to the bankruptcy court's stay order, I'm

21  going to instruct you-all to bring that by whatever you have to

22  file in front of Judge Grabill, bring that to her in the first

23  instance and let her rule on it. And then we'll see where we

24  are, okay.

25      **MS. ROUSSEL:** Thank you, Your Honor.

OFFICIAL TRANSCRIPT

1       **THE COURT:** Okay. Anybody need to say anything else?

2       **MR. PUGH:** May it please the Court, Larry Pugh on

3   behalf of Arrowood.

4       **THE COURT:** Who is Arrowood?

5       **MR. PUGH:** Arrowood is a successor to companies that

6   are no longer in existence, Globe Insurance and Royal

7   Insurance. They've alleged that those insurers previously

8   insured Reilly-Benton.

9       I've been in contact with plaintiffs' counsel since

10  we've been brought in a few weeks ago that we don't have any

11  evidence of that coverage and there isn't any evidence of the

12  coverage. So I'm in a unique situation. I'm frankly a

13  stranger to some of these proceedings and somewhat unaware of

14  the bankruptcy.

15      But I wanted the Court to understand that my client

16  is in the case. We've yet to make an appearance, but I'm in

17  negotiation with plaintiffs' counsel with regard to this issue

18  with regard to whether Royal and/or Global ever issued any

19  coverage to Reilly-Benton. And we'll address that in due

20  course.

21      **THE COURT:** Okay, all right.

22      **MR. PUGH:** Thank you, Your Honor.

23      **THE COURT:** Everyone have a good day.

24          (Whereupon this concludes the proceedings.)

25

OFFICIAL TRANSCRIPT

1                                       **<u>CERTIFICATE</u>**

2

3

4       I, Alexis A. Vice, RPR, CRR, Official Court Reporter for

5  the United States District Court, Eastern District of

6  Louisiana, do hereby certify that the foregoing is a true and

7  correct transcript, to the best of my ability and

8  understanding, from the record of the proceedings in the

9  above-entitled and numbered matter.

10

11

12                              */s/Alexis A. Vice, RPR, CRR*

13                              Alexis A. Vice, RPR, CRR

14                              Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

OFFICIAL TRANSCRIPT