UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE REILLY-BENTON COMPANY,
INC.

CIVIL ACTION

NO. 22-3731

SECTION M (5)

## ORDER & REASONS

Before the Court is a motion for leave to file bankruptcy appeal filed by the Roussel & Clement Creditors (the "Creditors").[1] Having considered the Creditors' motion, the record, and the applicable law, the Court denies the motion.

### I. BACKGROUND

This is a motion for leave to file an appeal of an interlocutory order of the bankruptcy court overseeing the chapter 7 bankruptcy case of Reilly-Benton Company, Inc. ("Reilly-Benton"). Reilly-Benton filed a voluntary petition for chapter 7 bankruptcy on October 25, 2017.[2] In July 2020, the chapter 7 trustee for Reilly-Benton filed a motion for an order approving a settlement agreement between the trustee and the Louisiana Insurance Guaranty Association (the "LIGA motion"), which the Creditors opposed.[3] On July 31, 2020, the chapter 7 trustee filed a motion for an order (1) approving a settlement agreement and policy release between the trustee and the

---

[1] R. Doc. 1. The firm of Roussel & Clement represents a number of claimants who have filed asbestos claims against Reilly-Benton Company, Inc. *Id.* at 1.

[2] *Id.* at 2. Prior to ceasing operations, Reilly-Benton was in the business of supplying insulation products to the maritime and aerospace sectors. *In re Reilly-Benton Co.*, No. 17-12870 (Bankr. E.D. La.), R. Doc. 56 at 2. "For many years" before filing for bankruptcy, Reilly-Benton had been faced with claims "for personal injury or wrongful death arising from alleged exposure to asbestos or asbestos-containing products that the [company] sold." *Id.*

[3] R. Doc. 1 at 2.

Century Parties,[4] (2) approving the sale of insurance policies to the Century Parties free and clear of all interests, and (3) entering an injunction to enforce the free-and-clear aspect of the sale of the Century policies (the "Century motion").[5] The Creditors opposed this motion as well.[6] In April 2022, it was determined that an evidentiary hearing would be necessary to resolve both the LIGA and Century motions,[7] and a scheduling order was entered setting the hearing to begin on November 3, 2022, and conclude on November 10, 2022.[8]

To prepare for this evidentiary hearing, the Creditors repeatedly sought to take the corporate deposition of Reilly-Benton,[9] pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, before the September 6, 2022 discovery deadline imposed by the scheduling order.[10] Citing the ill health of its corporate representative, Warren Watters, Reilly-Benton failed to provide dates for the deposition, prompting the Creditors to file a motion to compel.[11] The bankruptcy court granted the motion at a hearing on August 17, 2022, but limited the deposition to 30 minutes and four specific questions, which were articulated by the court.[12] The Creditors suggest that the bankruptcy court "was evidently attempting to safeguard the health of Warren Watters" in

---

[4] The Century Parties, consisting of Century Indemnity Company and Pacific Employers Insurance Company, or their predecessor, "allegedly issued certain policies of insurance ... that provide, or are alleged to provide, liability insurance coverage to [Reilly-Benton]." *In re Reilly-Benton Co.*, No. 17-12870 (Bankr. E.D. La.), R. Doc. 56 at 2-3.
[5] R. Doc. 1 at 2.
[6] *Id.*
[7] *Id.* at 3.
[8] *In re Reilly-Benton Co.*, No. 17-12870 (Bankr. E.D. La.), R. Doc. 121 at 1-2.
[9] R. Doc. 1 at 4-6.
[10] *In re Reilly-Benton Co.*, No. 17-12870 (Bankr. E.D. La.), R. Doc. 121 at 2.
[11] R. Doc. 1 at 4-5.
[12] *Id.* at 5-6. The bankruptcy court's order limited the deposition to the following four questions:
> [1] How many currently pending asbestos claims against Reilly-Benton are you aware of and what is the status of those claims? [2] Are you in possession of or do you know the location of any books and records belonging to Reilly-Benton? [3] What was your motivation for placing Reilly-Benton into chapter 7 bankruptcy? [4] Did you have prepetition agreements or arrangements with Reilly-Benton's insurers regarding the treatment of claims or the filing of Reilly-Benton's bankruptcy case?

R. Doc. 1-1 at 2.

2

imposing the limitations.[13] On October 6, 2022, following the bankruptcy court's denial of their request to reconsider its order limiting the deposition, the Creditors filed the instant motion for leave to appeal the bankruptcy court's order.[14] In the meanwhile, the bankruptcy court continued the evidentiary hearing on the LIGA and Century motions from November 3, 2022, to February 6, 2023.[15]

## II. PENDING MOTION

The Creditors argue that the standard for allowing interlocutory review of the bankruptcy court's order has been satisfied and so the Court should grant leave to file an appeal.[16] Specifically, the Creditors argue (1) that a controlling issue of law exists because the limitations placed on the deposition preclude their ability to conduct an effective examination of a corporate entity; (2) that substantial ground for difference of opinion on the issue exists, because other courts have managed the functional unavailability of a corporate representative differently; and (3) that a reversal of the bankruptcy court's order imposing the limitations would materially advance the ultimate termination of the bankruptcy case because it "will clarify the scope of discovery regarding the Debtor in this matter, and will avoid the need to depose multiple corporate representatives."[17]

## III. LAW & ANALYSIS

### A. Standard for Granting Leave to Appeal an Interlocutory Order of the Bankruptcy Court

A party may appeal to the district court an interlocutory order of the bankruptcy court only "with leave of court." 28 U.S.C. § 158(a)(3). Section 158(a), however, does not provide express

---

[13] R. Doc. 1 at 8.
[14] *Id.* at 6.
[15] *In re Reilly-Benton Co.*, No. 17-12870 (Bankr. E.D. La.), R. Doc. 233 at 1.
[16] R. Doc. 1 at 7-10. The Creditors do not dispute that the bankruptcy court's order limiting the corporate deposition is an interlocutory order not subject to an immediate appeal as of right. *Id.* at 7.
[17] *Id.* at 8-10.

3

guidance as to the standard courts should use in deciding whether to grant leave to appeal. Nevertheless, the Fifth Circuit has observed that "the vast majority of district courts faced with the problem have adopted the standard under 28 U.S.C. § 1292(b) for interlocutory appeals from district court orders." *In re Ichinose*, 946 F.2d 1169, 1177 (5th Cir. 1991); *see also In re Cella III, LLC*, 619 B.R. 627, 633 (E.D. La. 2020) (applying the § 1292(b) standard); *In re Whistler Energy II, LLC*, 2020 WL 1304090, at *1 (E.D. La. Mar. 19, 2020) (same). Pursuant to § 1292(b), a district court must evaluate the following elements when deciding whether to permit an interlocutory appeal of a bankruptcy order: "(1) whether a controlling issue of law is involved; (2) whether the question is one where there is substantial ground for difference of opinion; and (3) whether an immediate appeal would materially advance the ultimate termination of the litigation."[18] *In re Cella III*, 619 B.R. at 633 (citing *In re Ichinose*, 946 F.2d at 1177). Each element must exist for the district court to exercise its discretion in permitting an interlocutory appeal. *Id.* (citing *Dorsey v. Navient Sols., Inc.*, 2015 WL 6442572, at *2 (E.D. La. Oct. 23, 2015)). Generally, appeals from an interlocutory order of a bankruptcy court are disfavored "because they disrupt the bankruptcy proceedings." *Id.* (citing *In re Cross*, 666 F.2d 873, 878 (5th Cir. 1982)).

1. **Whether a controlling issue of law is involved**

The Creditors argue that the bankruptcy court's order limiting the scope of the corporate deposition of Reilly-Benton involves a controlling issue of law because "such severe limitations regarding a deposition make it impossible to effectively examine a corporate entity pursuant to Federal Rule of Civil Procedure 30(b)(6)."[19] The Creditors seek to inquire into the circumstances

---

[18] Although it has been observed that "some courts will grant interlocutory appeals only in 'exceptional circumstances,'" *In re Cella III*, 619 B.R. at 633 (quoting *In re Cent. La. Grain Co-op, Inc.*, 489 B.R. 403, 408 (W.D. La. 2013)), and that "exceptional circumstances" may involve a separate standard, *see In re Cent. La. Grain Co-op, Inc.*, 489 B.R. at 408-09, the Court need not reach the issue whether exceptional circumstances exist because, as will be explained, the Creditors fail to satisfy any of the elements under 28 U.S.C. § 1292. Moreover, the Creditors do not discuss whether exceptional circumstances exist in this case.

[19] R. Doc. 1 at 8.

4

facing Reilly-Benton at the time it filed its chapter 7 bankruptcy petition, so as to test the company's assertion that it faced 18,645 claims at the time of filing, and to substantiate their argument "that the Reilly-Benton bankruptcy is being advanced by its insurance carriers for the purpose of facilitating agreements to cap liability when no such cap exists."[20] Notably, the Creditors concede that they have deposed Reilly-Benton's designated corporate representative, Warren Watters, in the past.[21]

"On interlocutory review, 'the question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'" *Ridgeway v. Stryker Corp.*, 2017 WL 5503747, at *3 (E.D. La. Nov. 16, 2017) (quoting *In re Royce Homes LP*, 466 B.R. 81, 94 (S.D. Tex. 2012)) (emphasis and alteration omitted). "An issue of law is controlling when it has the potential to impact the course of the litigation." *Dorsey*, 2015 WL 6442572, at *2; *see also In re Cella III*, 619 B.R. at 634. A controlling issue of law has the potential to affect the course of the litigation when "reversal of the bankruptcy court's decision would result in dismissal of the action." *Dorsey*, 2015 WL 6442572, at *2. Moreover, "'an issue is not seen as controlling if its resolution on appeal would have little or no effect on subsequent proceedings.'" *In re Cent. La. Grain Co-op., Inc.*, 489 B.R. at 411 (quoting *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006)) (internal quotation marks omitted). Another section of this court, in addressing an interlocutory appeal of a bankruptcy court's discovery order, quoted the "well-accepted" proposition that:

> Questions that arise during the course of a bankruptcy proceeding concerning the appropriate scope of discovery and that do not involve controlling questions of law are left to the sound discretion of the court that is fully familiar with the entire proceeding – the bankruptcy judge.

---

[20] *Id.* at 3.
[21] *In re Reilly-Benton Co.*, No. 17-12870 (Bankr. E.D. La.), R. Docs. 161-1 at 3-4; 161-9 at 1. Nevertheless, in doing so, the Creditors insist that they have not deposed Watters on the topics in their most current notice. But they do not explain why they have not done so.

*Ridgeway*, 2017 WL 5503747, at *3 (quoting *In re Towers Fin. Corp.*, 164 B.R. 719, 721 (S.D.N.Y. 1994)). In *Ridgeway*, the district court held that the bankruptcy court's order striking portions of the debtor's objections to the putative appellees' proofs of claim for attorney's fees and costs did not involve a controlling issue of law. *Id.* at *1-3. The debtor argued that the putative appellees were not entitled to certain attorney's fees pursuant to Michigan law and the "common core" doctrine, but the bankruptcy court struck the "common core" portion of the objections, limiting what the debtor could present at the pretrial evidentiary hearing on the issue of attorney's fees and costs. *Id* at *1-2. The district court reasoned that "[t]he issue before us is one of discretion pertaining to what the Debtor will be allowed to present during the pre-trial, evidentiary hearing," and did "not involve, as required, 'pure' or 'abstract' issues of law 'suitable for determination by an appellate court without a trial record.'" *Id.* at *3 (quoting *In re Gray*, 447 B.R. 524, 534 (E.D. Mich. 2011)).

Here, the Creditors fail to provide any legal support for their contention that the bankruptcy court's order limiting the scope of the corporate deposition presents an issue of law, let alone a controlling issue of law. The Creditors argue that the limitations will severely restrict the effectiveness of their deposition of the Reilly-Benton representative, which, in turn, affects the information they will be able to present at the evidentiary hearing on the LIGA and Century motions. But, as in *Ridgeway*, the bankruptcy court's decision to limit the scope of the corporate deposition here is a discovery order on an issue "of discretion pertaining to what the [Creditors] will be allowed to present during the pre-trial, evidentiary hearing." *Id.* Appellate review of the Creditors' request "would require this Court to delve into the factual Bankruptcy record," meaning that such review "does not involve, as required, 'pure' or 'abstract' issues of law 'suitable for determination by an appellate court without a trial record.'" *Id.* Instead, the bankruptcy court's

6

decision to impose limits on the corporate deposition necessarily entailed a balancing of various factual considerations concerning the witness's purported knowledge, his capacity to testify, the issues involved in the LIGA and Century motions, and the bankruptcy as a whole – factual matters far more likely to be within the ken of the bankruptcy court than any court of review. Moreover, the Creditors fail to address how *another* deposition of Watters – a corporate representative with apparent memory limitations[22] – will have any effect on subsequent proceedings in the bankruptcy. *See In re Cent. La. Grain Co-op., Inc.*, 489 B.R. at 411. Accordingly, the Court finds that the bankruptcy court's order imposing limitations on the corporate deposition of Reilly-Benton does not involve a controlling issue of law justifying interlocutory review.

### 2. Whether the question is one involving substantial ground for difference of opinion

The Creditors argue that substantial ground for difference of opinion exists as to the bankruptcy court's decision to limit the corporate deposition because other courts have held that permitting a party to select a corporate representative who cannot be effectively deposed "does not fulfill a party's obligations under Federal Rule of Civil Procedure 30(b)(6)."[23] A substantial ground for difference of opinion exists:

> (1) when a lower court rules in a way that appears to conflict with the rulings of all appellate courts that have decided the issue, (2) when the circuits are in dispute and the Court of Appeals of the relevant circuit has not decided the issue, (3) when complicated issues of foreign law arise, or (4) when the case presents difficult questions of first impression.

*Dorsey*, 2015 WL 6442572, at *2. The Creditors have not provided briefing relevant to any of these factors.[24] Nevertheless, the Court notes that it is undisputed that courts have "broad

---

[22] R. Doc. 1 at 5.

[23] *Id.* at 8 (citing *Cabrera v. Am. Diversified Servs. Corp.*, 2012 WL 5188067, at *3 (M.D. Fla. Oct. 15, 2012)).

[24] Instead of addressing any of these factors, the Creditors appear to argue that it is unfair that Warren Watters is the only available corporate representative for the deposition because his compromised mental and physical health renders him practically unavailable as a witness. R. Doc. 1 at 8-9. Despite Watters's apparent limited utility, however, the Creditors have persisted in their attempts to depose him – a request granted by the bankruptcy court with the

7

discretion when deciding discovery matters," including the limitation of discovery. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011); *see also Robin v. Chartis Prop. Cas. Co.*, 2014 WL 12719193, at *2 (E.D. La. May 14, 2014) ("This Court has discretion to limit the scope of discovery."). As such, the Creditors have not demonstrated that there exists substantial ground for difference of opinion as to the bankruptcy court's order limiting the scope of the Reilly-Benton corporate deposition.

### 3. Whether an immediate appeal materially advances the ultimate termination of the litigation

Finally, the Creditors argue that an immediate appeal would advance the ultimate termination of the litigation because an expanded deposition of Reilly-Benton's corporate representative "will clarify the scope of discovery regarding the Debtor in this matter, and will avoid the need to depose multiple corporate representatives."[25] They also argue that interlocutory review will not disrupt the bankruptcy case because the corporate deposition has not been scheduled.[26] Another section of this court has previously held that interlocutory review of a bankruptcy court order pertaining to discovery would delay, rather than facilitate, the ultimate termination of the litigation. *See Ridgeway*, 2017 WL 5503747, at *4 ("[H]earing this discovery issue on interlocutory appeal would do nothing to further the ultimate termination of this litigation. In fact, appeal would materially delay the approaching determinative evidentiary hearing."). The

---

complained-of limitations that take into account his mental and physical capabilities. *Id.* at 5-6. The bankruptcy court did so after considering Reilly-Benton's contention that Watters is the only remaining representative of the inactive company. R. Doc. 1-1 at 1-2. The Creditors' attempt to expand the scope of Watters's deposition, while simultaneously arguing that he is an insufficient representative, is inconsistent and has no bearing on whether the bankruptcy court's decision presents a question involving substantial ground for difference of opinion. The decision simply involves a garden-variety issue not in conflict with appellate or foreign law. Regardless, the designation of Watters as Reilly-Benton's corporate representative is not even one of the issues raised in the Creditors' proposed appeal. R. Doc. 1 at 6 (framing the question to be presented by appeal as "[w]hether the Bankruptcy Court erred in limiting the 30(b)(6) deposition of the Debtor, Reilly-Benton Company, Inc., to 30 minutes and only four questions?").

[25] *Id.* at 10.
[26] *Id.*

8

same conclusion applies here. Although the Creditors represent that the corporate deposition has not been scheduled and so the appeal would not disrupt the bankruptcy case, they fail to explain how the recently reset and rapidly approaching discovery deadline of December 15, 2022, can be reconciled with the deadlines for appellate briefing under Rule 8018(a) of the Federal Rules of Bankruptcy Procedure that would apply if the appeal were allowed.[27] The Court, therefore, finds that interlocutory review of the bankruptcy court's discovery order at this juncture will not materially advance the termination of the litigation; instead, such review will simply delay its ultimate resolution.

*   *   *   *

For the Court to grant leave to file an interlocutory appeal of a bankruptcy court's order, all three elements contained in § 1292(b) must be established. Because the Creditors have not shown that any of the elements exist, they have failed to demonstrate that leave to appeal should be granted.

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion of the Roussel & Clement Creditors for leave to file appeal (R. Doc. 1) is DENIED.

New Orleans, Louisiana, this 3rd day of November, 2022.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

CLERK'S OFFICE
A TRUE COPY
Nov 04 2022
Deputy Clerk, U.S. District Court
Eastern District Of Louisiana
New Orleans, LA

---

[27] *In re Reilly-Benton Co.*, No. 17-12870 (Bankr. E.D. La.), R. Doc. 233 at 2.