# EXHIBIT "L"

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

### NEW ORLEANS

```
*  *  *  *  *  *  *  *  *  *  *
                            *    CASE NO.
   IN RE:                    *    17-12870
                            *
REILLY-BENTON COMPANY, INC.,  *    CHAPTER 7
                            *
        DEBTOR.              *
                            *
*  *  *  *  *  *  *  *  *  *  *
```

Transcript of the telephonic proceedings taken in the above captioned matter on **Friday, July 15, 2022,** the Honorable Meredith S. Grabill, United States Bankruptcy Judge, presiding.


AUDIO OPERATOR:     Kevin Foe

TRANSCRIPTIONIST:   Sherryl Robinson
                    3704 Chadwood Drive
                    Harvey, Louisiana 70058
                    (504) 348-3704


Proceedings recorded by electronic sound recording, transcript produced by transcription service.

2

**APPEARANCES:**

    Chaffe McCall, LLP
By:  David J. Messina, Esquire
      (BY TELEPHONE)
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163

    David V. Adler, Trustee
By:  David V. Adler, Esquire
      (BY TELEPHONE)
320 Orion Avenue
Metairie, Louisiana 70005

      Representing the Chapter 7 Trustee in the
      LIGA Settlement

The Derbes Law Firm L.L.C.
By:  Patrick S. Garrity, Esquire
      (BY TELEPHONE)
3027 Ridgelake Drive
Metairie, Louisiana 70002

      Representing the Chapter 7 Trustee in the
      Century Settlement

Roussel & Clement
By:  Gerolyn Roussel, Esquire
      (BY TELEPHONE)
By:  Jonathan Clement, Esquire
      (BY TELEPHONE)
By:  Benjamin P. Dinehart, Esquire
      (BY TELEPHONE)
1550 West Causeway Approach
Mandevile, Louisiana 70471

      Representing Roussel & Clement Creditors

Landry & Swarr, LLC
By:  Mickey P. Landry, Esquire
      (BY TELEPHONE)
1100 Poydras Street
Energy Centre - Suite 2000
New Orleans, Louisiana 70163

      Representing Landry & Swarr Creditors

**APPEARANCES (Cont'd.):**

      Sher Garner Cahill Richter Klein
       & Hilbert, LLC
      By:   Martha Y. Curtis, Esquire
            (BY TELEPHONE)
      909 Poydras Street
      Suite 2800
      New Orleans, Louisiana 70112

      Crowell & Moring LLP
      By:  Mark D. Plevin, Esquire
            (BY TELEPHONE)
      Three Embarcadero Center
      26th Floor
      San Francisco, California 94111

            Representing Century Indemnity Company and
            Pacific Employers Insurance Company

      Stewart Robbins Brown & Altazan, LLC
      By:  William S. Robbins, Esquire
            (BY TELEPHONE)
      301 Main Street
      Suite 1600
      Baton Rouge, Louisiana 70801

      Lafleur & Laborde, LLC
      By:  Stephanie B. Laborde, Esquire
            (BY TELEPHONE)
      6160 Perkins Road
      Suite 225
      Baton Rouge, Louisiana 70808

            Representing Louisiana Insurance Guaranty
            Association

4

1    **P R O C E E D I N G S**

2    (Friday, July 15, 2022)

3    (Call to Order of the Court)

4    (BY TELEPHONE)

5    *    *    *    *    *

6    **MOTION HEARING**

7    *    *    *    *    *

8        THE COURT:  Good afternoon.  This is Judge Grabill.

9    We're here in Case Number 17-12870, *In Re:  Reilly-Benton*

10   *Company, Incorporated.*

11       Let's take appearances starting with each of the

12   Trustees.

13       MR. MESSINA:  Good afternoon Your Honor, David

14   Messina appearing on behalf of David Adler, the Trustee.

15       Mr. Derbes because of the passing of his father is

16   not going to be available today, but the argument that he would

17   be making in support of the Motion to Compel are the same

18   arguments that Mr. Plevin is going to be addressing today, and

19   also the same arguments that I will be addressing on behalf of

20   LIGA, as well.

21       THE COURT:  Okay.

22       MR. MESSINA:  So Mr. Adler will be represented.

23   Also, Mr. Adler is also on the line as well.

24       THE COURT:  Okay, very good.

25       All right, can we have counsel for the Insurers, LIGA

1   and Century?

2          MR. PLEVIN:  Yes, Your Honor.  Good afternoon, this

3   is Mark Plevin on behalf of Century Indemnity Company and

4   Pacific Employers Insurance Company.

5          MS. CURTIS:  And good afternoon Your Honor, Martha

6   Curtis is also on for Century/Pacific.

7          THE COURT:  Okay, very good.

8          MR. ROBBINS:  Good afternoon Your Honor, Will Robbins

9   for Louisiana Insurance Guaranty Association.

10         THE COURT:  Okay, thank you.

11         All right, let's start with the counsel for the

12  Plaintiffs' groups.  Who do I have?

13         MR. DINEHART:  Your Honor, Benjamin Dinehart, Gerolyn

14  Roussel and Jonathan Clement on behalf of the Roussel and

15  Clement Creditors.

16         MR. LANDRY:  Mickey Landry, Your Honor, on behalf of

17  the Landry and Swarr Creditors.

18         THE COURT:  Okay.  Anybody else on the line for the

19  Plaintiffs' groups?

20         MR. GARRITY:  Your Honor?

21         THE COURT:  Go ahead.

22         MR. GARRITY:  Your Honor, this is Pat Garrity.  I'm

23  standing in for Mr. Derbes today.

24         THE COURT:  Okay.  All right, is there anyone else on

25  the line that wishes to make an appearance?

6

1       (No response.)

2           THE COURT:  All right.  So just for your information

3   I'm taking this call from the car, so I'm hoping that we won't

4   have any interruptions.  Let's get started.

5           What I've got in front of me is a Motion to Compel

6   that has been filed on behalf of --

7           Mr. Messina, is this both of the Trustees?

8           MR. MESSINA:  Your Honor, yes, it's filed by the

9   Trustee in both settlements, same Trustee, but in both

10  settlements, and also filed by LIGA on behalf of the LIGA

11  settlement and by Century on behalf of the Century settlement.

12  So it's jointly filed by everyone.

13          THE COURT:  Yes, okay.  All right.  So I've read the

14  papers.  Let's start with the issue of the Interrogatory

15  Verification.

16          Mr. Messina, do you want to start us off?

17          MR. MESSINA:  I'd like to go ahead and defer to

18  Mr. Plevin on that if I could.

19          THE COURT:  Okay, that's fine.

20          Mr. Plevin?

21          MR. PLEVIN:  Thank you Your Honor.

22          With respect to the verifications, I think there's no

23  question but that under the Federal Rules a party providing a

24  response to discovery has to provide a signed verification

25  under oath.  That's provided for in Rule 33(b)(3) and Rule

7

1  33(b)(5).

2       The argument as I understand it from the objectors is

3  that they don't have to submit verifications because their

4  clients don't have the information and we can't force counsel

5  to answer the interrogatories, and that's just a

6  misapprehension of how discovery works.

7       Counsel cannot come into court and make factual

8  assertions on behalf of their clients without the clients

9  providing responses to discovery seeking the basis for the

10  factual assertions made on the objector's behalf.

11       We believe the district court in this district in the

12  In Re: Katrina Canal Breaches litigation held that an answering

13  party had an obligation to provide interrogatory answers

14  containing information that his or her agents and

15  representatives had.  If they don't have the information and

16  can't provide it, they should so state, and then the

17  implication of that is that they're not able to put on evidence

18  at the trial when it comes to that, because they will have said

19  under discovery, under oath, that they don't have the

20  information.

21       So I think the issue here is that either the

22  objectors provide the information and verify their answers

23  under oath or they state under oath that they don't have any

24  support for the facts that their lawyers are stating in court.

25       Two other aspects of this that are relevant:  The

1   Roussel opposition argues that their clients are not really

2   required to provide verifications because they are not parties

3   to the bankruptcy.  Instead they argue their clients are merely

4   creditors objecting to proposed settlements.  But it's pretty

5   elementary under Bankruptcy Law that by choosing to file

6   objections to the Trustee's motions, the Roussel clients have

7   made themselves parties to the contested matter initiated by

8   the Trustee's motion and therefore, they have all the discovery

9   obligations of a party.

10          The Landry supplemental response that we received

11  Wednesday and filed into Court on Thursday presents another

12  problem that's unique to this case about the verifications, and

13  that is basically who are the objectors?  We directed our

14  discovery to all of the objectors if they were asserting

15  objections.  And as Your Honor knows, we feel like we've been

16  having this floating group of objectors and we don't even know

17  who they are.

18          Mr. Landry's objections to the settlement approval

19  motion, going way back to Docket Number 72, was filed by four

20  named individuals:  Donald Bridges, Tena Danos, Mary Sanderson

21  and Frank Tranchina, quote, "among others," closed quote.

22          Their supplemental brief filed January 21, 2021 which

23  is Docket Number 97 listed 141 individuals, that's Footnote 3

24  on Pages 6 and 7 of Docket Number 97, as people that the Landry

25  firm was acting on behalf of.  And then states Plaintiff's

1   counsel reserve their right to add or delete claimants to this

2   list.

3           Then in the supplemental responses that we got on

4   Wednesday; it became apparent at least to me for the first

5   time, that three of the four persons who objected, Donald

6   Bridges, Mary Sanderson and Frank Tranchina are deceased.  In

7   addition to Tena Danos, who apparently is still living, the

8   supplemental responses are also filed by those four, quote,

9   "among others," which we're told in Footnote 1 includes unnamed

10  persons who received insufficient notice of the Trustee's

11  settlement approval motions, even though they filed objections,

12  as well as other unnamed Plaintiffs.

13          First of all, it's clear under the Federal Rules that

14  dead people can't litigate in federal court.  That's Rule

15  25(a).  So Donald Bridges, Mary Sanderson and Frank Tranchina

16  can't be objectors.  That means that requiring signed

17  verifications is the only way that we can determine who the

18  objectors are.  If the relatives of the decedents want to step

19  into the shoes of the decedents and object, they should come

20  forward, identify themselves and provide verified interrogatory

21  responses.  They can't be allowed to hide in the shadows,

22  refuse to sign verifications and then reappear at the end of

23  the process at the trial in November.

24          So, and then another complication, Your Honor, just

25  on the verifications, I'm sticking on the verifications, is

10

1  that Ms. Danos, the one living respondent on whose behalf the

2  supplemental responses were served, repeatedly states in those

3  responses that she lacks information regarding the answers that

4  were given.  If that's the case then she must sign a

5  verification saying she has no information and that means that

6  there's no one verifying the other information given in the

7  interrogatory responses, unless we get a whole bunch of new

8  verifications.

9          So I think, Your Honor, what this all shows is that

10 in order for us to know who the actual objectors are, they need

11 to sign verifications.  If they don't have information they

12 should say to and then they will be barred in November of

13 putting evidence into trial.  If they can get the information

14 from counsel, they have an obligation to do it under the

15 Katrina case, and so they should provide the information they

16 get from their counsel and they should verify it.

17         And I think these are just elementary everyday

18 applications of the Federal Rules to cases and we're entitled

19 to have that here.

20         THE COURT:  Okay.  Well, do you want to start with

21 Mr. Landry?

22         MR. LANDRY:  Your Honor, that's fine.  I can start.

23         What Mr. Plevin knows and what I hope he knows,

24 because we had a discussion about this at the 10.1 conferences.

25 You have a definitional section that you wrote -- "you" is me,

11

1  Mickey Landry of the Landry & Swarr firm.  I am not a

2  litigant in this litigation.  I am not a litigant in any

3  litigation.  I can't answer discovery.  You know, you have four

4  ways in normal cases for discovery:  Request for admission,

5  request production of documents, interrogatories and

6  depositions.  I can't be deposed.  I won't be deposed in this

7  case.  So what he asked me is to give answers to questions that

8  are strictly legal questions.  Remember, this is the discovery

9  they said they needed prior to the Motion for Summary Judgment

10  to be heard.

11        So Your Honor, here's what they asked me:  They say

12  "you" is included, and they asked me throughout these things.

13  Tell me about cases that you know about.

14        And I object and say:  Wait a minute.  This is

15  improper.  This lady is a 60 something year old widow,

16  Ms. Danos.  She married Mr. Danos in the 80's, way after he

17  worked there.  She is an heir but knows nothing about the nuts

18  and bolts of this case anymore than anybody else would know if

19  their spouse was, you know, unfortunately in a bad automobile

20  accident or something.  So I understand about answering.

21        So look -- so Your Honor, what I did as a courtesy to

22  these people, not because I had to.  But they said:  Well, you

23  can't really show this.

24        Now, I don't understand for the life of me why

25  Century, who has been involved in some of these cases

12

1  themselves, and should have this information or at least the

2  Reilly-Benton who filed for bankruptcy has lawyers who have

3  been in these cases for over 20 to 28 years. They couldn't get

4  some of this information about these people that I don't

5  represent. But Your Honor, I went further than that. I went

6  to the first page of the Maples Firm because I know Mr. Maples

7  is deceased, and I was going to say: Let me go look up the

8  first person on each list that is listed as a -- as one of the

9  mass tort people.

10        In short order, Your Honor, I went through thirteen

11  cases where I could look in the courts. I did this. My client

12  couldn't do this, he would have no idea how to do this. And of

13  those thirteen cases, nine of them were either abandoned or

14  appeared to be abandoned, or had indications that they may be

15  abandoned, or they were settled. And so 65 percent of the

16  Maples' cases that I just looked at randomly by the first case

17  on each page, are not viable cases. Is that true for all 65

18  percent of the 28,000? I'm not representing that. But I told

19  Mr. Plevin that many of these cases were settled.

20        I then went to another -- to my cases that Ms. Danos

21  knows nothing about. But to avoid argument and to try to be as

22  forthcoming as possible, I went through every one of the

23  persons they settled for me, that they listed for me. Of the

24  44 Plaintiffs that they listed, twelve of them had settled the

25  cases. And moreover, Your Honor, the cases that Mr. Maples had

1    averaged 22 to 27 years old.  So this run to the courthouse

2    business is foolishness.  This has nothing to do with it.

3          But Your Honor, when we go back to the verification,

4    Mr. Plevin is either mistaken or he misspoke.  I'm going to

5    have Ms. Danos sign a verification, but she can't verify what

6    the Maples firm did, what's going on in these other cases.  She

7    can only verify the things she knows.

8          Now Your Honor, I understand, I've been doing this a

9    long time.  If they ask me for my expert reports, whether

10   Ms. Danos has them, obviously I would give those to them.  But

11   when they define "you" under the definitional section and ask

12   for information from 25 years of litigation of my firm that I

13   don't even know if I have, number one.  And number two that

14   they want me to answer, I don't have to verify it that I'm not

15   going to be deposed.  So I'm definitely going to have Ms. Danos

16   sign the verification for the things she can verify.  There's

17   no doubt about that, which is almost nothing.

18         So I told Mr. Plevin that I'd rather not answer

19   nothing.  I'd rather try to be forthcoming as possible, but

20   Ms. Danos would have no way of knowing this information.  Most

21   of this stuff is legal.  Just about -- and then I won't get too

22   far down, but one of the definitions was abandonment, and it

23   cited a Louisiana statute and:  Does this case abandon -- or

24   arguably abandon under the statute.  How would a lady who --

25   how would someone know that?

14

1       THE COURT:  Well, listen.  Before we get to the

2  merits of that, there is a threshold issue that the Court would

3  like to know too.  Who are the objectors to the 9019 settlement

4  and who has filed the summary judgment that's before the Court,

5  okay?

6       MR. LANDRY:  Well --

7       THE COURT:  So if it's a bunch of attorneys, we need

8  to know that because that makes -- (inaudible; speaking over

9  each other)

10      MR. LANDRY:  No, no, no.  No, Your Honor, what --

11      THE COURT:  Parties-in-interest -- listen, parties-

12  in-interest can file pleadings in a bankruptcy.  Okay, that

13  means creditors, people who have you know, any sort of -- or

14  lodging claims against the estate.

15      If you're telling me that the objections for 9019

16  and/or the Motion for Summary Judgment was filed by three

17  deceased people, we've got a problem.

18      MR. LANDRY:  No, ma'am, I'm not telling you that.

19      THE COURT:  Well, what --

20      MR. LANDRY:  Mr. Plevin told you that.

21      THE COURT:  Okay.  Well --

22      MR. LANDRY:  Those three people would be deceased --

23      THE COURT:  Well, the verification --

24      MR. LANDRY:  Ms. Danos -- Your Honor, Ms. Danos is

25  not deceased.

15

1    THE COURT:  I understand that, okay.  But the

2  definitions that I read, the terms "you" or "your" shall mean

3  the objectors, which I need to know who they are.

4    MR. LANDRY:  Okay.

5    THE COURT:  I can't have (inaudible) listed --

6    MR. LANDRY:  Okay.

7    THE COURT:  And then just say "among others."

8  There's no reservation of rights to add to it later on.  I need

9  to know who they are.  The objectors, both individually and

10  collectively and any attorneys, representatives, consultants,

11  advisors or anyone acting on behalf of any single objector or

12  group of objectors.

13    Now, this question is for Mr. Plevin:  Who exactly --

14  who precisely did you direct discovery to?

15    MR. PLEVIN:  Your Honor, the discovery was directed

16  to the objectors.  We wanted to know what the objectors were

17  contending.

18    So for instance, if you look at -- I'm looking at the

19  interrogatories.  I don't know if you are looking at the

20  interrogatories and documents, Your Honor.

21    THE COURT:  Yes, I have it.

22    MR. PLEVIN:  Okay.  So the interrogatories, so

23  Trustees and Century parties' first set of interrogatories to

24  each of the objectors.  And the first paragraph asks each of

25  the objectors separately and fully to answer in writing and

16

1   under oath the interrogatories.  And it said, "These

2   interrogatories are continuing in character so as to require

3   each of the objectors to serve supplementary responses to the

4   extent the objectors would obtain additional information."

5          So we're trying to get information from the

6   litigants, and the "you" or "your" was simply to sweep in the

7   fact that if they were relying on information provided by their

8   counsel or some other agent or representative, that they

9   couldn't rely on that technicality to avoid giving us the

10  information.  The information is still within their possession,

11  custody or control and if they want it to be -- if they want to

12  rely on it at trial, they have to provide it.

13         We just can't have a trial by ambush where Mr. Landry

14  gets to make comments in court, and we ask for the support for

15  those comments, the factual and evidentiary support.  And then

16  we're told that he knows it, but the client can't provide

17  anything and so we get an empty discovery response.

18         THE COURT:  Just --

19         MR. LANDRY:  Your Honor --

20         THE COURT:  I understand that.  I'm going back to

21  Mr. Landry, all right?

22         MR. PLEVIN:  Yes.

23         THE COURT:  So, he's right.  I mean according to the

24  rules, you know, anybody that's a quote, "objector," which I

25  need to know their name and they have to be a living person,

17

1   they have -- they need to sign off on the interrogatories.

2   All of the interrogatories need to be answered by your

3   clients, because they are the ones that are, A) objecting to

4   the 9019, and B) presumably filed a Motion for Summary

5   Judgment.

6           Well, what I will say is you know, while attorneys

7   typically can't sign on behalf of the individual's response to

8   give an interrogatory -- to the extent that attorney or you

9   know, other representative is replying to the interrogatory, if

10  you're filling those out, you can sign and I'll allow you to

11  sign on behalf of your class.  But I have to know -- it's not

12  an ambiguous class.  It's these three, fifteen people, however

13  many there are; these are the names of the objectors.  They're

14  real live people who can be cross-examined at trial.

15          And I'm going to sign on behalf of those and swear

16  that these interrogatories are true and correct to the best of

17  their knowledge.  Like it's, you know, you can do that if you

18  want to involve yourself in the process that way, I'll allow

19  it.  But otherwise, you're going to have to have every single

20  one of your clients answer the interrogatories and sign them.

21          MR. LANDRY:  Yes Your Honor, I'll do that.

22          Can I just -- for example, they say the first one:

23  Identify each scheduled action that you contend was dismissed

24  against Reilly-Benton before the petition date?

25          Ms. Danos would answer:  I don't know any, zero,

18

1   none.

2          THE COURT:  Well --

3          MR. LANDRY:  I know some because they listed cases

4   that have been settled 20 years ago or 15 years ago.  So

5   that's Ms. Danos.  I've got to go back and go review all of my

6   files.  And this took me a lot of time to respond to out of an

7   effort.

8          The second question, Your Honor, says:  Identify each

9   scheduled action -- that's out of 18,500, Your Honor -- that

10  you contend Reilly-Benton settled before the petition date.

11         Well, Ms. Roussel showed some, I showed 25 percent of

12  mine were settled from Landry and Swarr.  Ms. Roussel showed

13  how many percent of hers, and it looks like a random, no

14  scientific, just 65 percent of the Maples cases were either

15  settled or abandoned, or appear to be abandoned.  Ms. Danos

16  would have no information to do that.

17         I did some legal work to look at that, but I

18  shouldn't -- these are legal questions.  And I shouldn't have

19  to answer a legal question --

20         THE COURT:  Well, those are special.  Whether or not

21  a case has been settled is not a legal question, that's

22  (inaudible; speaking over each other) --

23         MR. LANDRY:  How would I know, Your Honor?  How would

24  Ms. Danos know?

25         THE COURT:  Well, they're your clients.  They're your

19

1   clients.

2           MR. LANDRY:  No, of my clients, I know.  If it's

3   limited to just my clients then I understand that.  That's not

4   what the discovery asked me.

5           THE COURT:  Okay.

6           MR. LANDRY:  It didn't say to your clients.

7           MS. ROUSSEL:  Judge --

8           THE COURT:  If you are filing an objection to the

9   9019, presumably you are filing on behalf of individuals that

10  you represent.  Am I incorrect in that assumption?

11          MR. LANDRY:  You are correct, Your Honor.

12          THE COURT:  Okay.  Then you can answer, you have to

13  -- all right.  You can't do it -- if you don't represent the

14  objectors then you are under no obligation to answer the

15  interrogatories.  But you have to answer them and help your

16  clients answer them and have your clients sign the

17  interrogatories.

18          MR. LANDRY:  I will do that, Your Honor.  But you

19  understand what I'm saying is that they won't know the answer

20  to any of those.  I will submit mine, but they won't know as to

21  Ms. Roussel's or Mr. (inaudible) --

22          THE COURT:  Well, of course not.  That's why we've

23  got Ms. Roussel here.

24          MR. LANDRY:  But --

25          THE COURT:  If she has -- the same goes for her.  If

20

1  she --

2      MS. ROUSSEL:  Your Honor -- (inaudible; speaking over

3  each other)

4      MR. LANDRY:  Your Honor, they're not limited to

5  objectors.  They're limited to 18,500 people.  They are

6  inartfully drafted.  That's our complaint.  They say "all

7  actions."

8      And if I know because I represented the people at a

9  firm I was in 25 years ago, and they have a peculiar name and I

10  remember the case and it was tried to verdict, and it was 120

11  cases that took six months for trial, and they list those

12  cases; I know those cases involved.  So when Mr. Plevin says I

13  said that in court, I did, because I know it.  And so does his

14  client, or he should know it.

15      And Your Honor, the other thing I wanted to say is

16  what I objected to -- when I said "and others," there are

17  people in here who have not gotten timely notice.  The courts

18  recognize this problem with the notice on a number of occasions

19  and most recently at the April 1, 2022 conference.  And all I

20  said was:  I'm objecting for whatever -- I'll reserve for --

21  I'm just letting you know for others.  That is people who

22  didn't receive notice, because we haven't had a hearing yet on

23  the notice provision, which we believe was insufficient.  And

24  so I just -- that was my objection.

25      THE COURT:  Well, that's a completely different --

21

1   yes, that's a completely different story.  That is separate.

2          MR. LANDRY:  Well, I know Your Honor, that's why I

3   just put it there.

4          THE COURT:  Right.

5          MR. LANDRY:  All right.

6          THE COURT:  Right.

7          MR. LANDRY:  I think Ms. Roussel wanted to say

8   something as well.

9          THE COURT:  Okay.  Ms. Roussel, you're up.

10         MS. ROUSSEL:  Yes, Judge.  First of all you asked on

11  who -- or guessed who would keep propounding the discovery, I

12  thought that was a very important question, because he does

13  propound it to the objectors.

14         And if you look at Page 3 and I'm now looking at

15  Century and Pacific and Trustee's discovery, they named who the

16  objectors are.  So he hasn't made it against everyone, he's

17  only made it against certain ones.

18         And so, with regard to mine, you know, certainly one

19  of the Court's looked at this.  This is actually in connection

20  with the civil action and the Court said that:  All the client

21  needed to do at that unhappy actual information was simply

22  state that they had read the discovery responses just to make

23  sure that, number one, they were in fact the claimant.  And

24  number two, that they had read the discovery responses.

25         So we certainly don't have a problem doing a

1   verification that these responses are on behalf of these

2   objectors, and these objectors have read and will be bound by

3   the discovery responses.

4          THE COURT:  All right.  Let me just be clear.  Like

5   they cannot -- Mr. Plevin and Mr. Messina can't issue discovery

6   to people that they don't know.  The only people they can issue

7   discovery to is anyone who is part of a contested matter before

8   this Court, which means anyone who has objected to the 9019

9   settlement and/or who filed a Motion for Summary Judgment,

10  which has been opposed.

11         So they have to have real names of real people,

12  okay?  So they need to know exactly who you are moving on

13  behalf of.  And those are the folks presumably that got issue

14  for counted against them.

15         MR. LANDRY:  Okay Your Honor.  We'll limit it to

16  those people.  We have no problem with that.  I thought it was

17  much more expansive than that, but I understand what the Court

18  is saying.

19         THE COURT:  Yes, I don't understand how it could be.

20         Mr. Plevin?  Like what is your position?

21         MR. PLEVIN:  Yes.  Your Honor, this is Mark Plevin.

22         THE COURT:  Uh-huh.

23         MR. PLEVIN:  We served the discovery on the objectors

24  who had been identified in the objections, as you've pointed

25  out.  We did not serve each of the 141 people that Mr. Landry

1  identified in -- I'm just checking to see which pleading that

2  was -- in the pleading he filed on January 21, 2021 at Docket

3  Number 97, because none of those people filed objections.  And

4  then later, none of them went ahead and filed -- they were not

5  parties to the summary judgment motion.  They just were parties

6  to a supplemental brief that was filed in January of '21.

7         In the summary judgment motion and the motion to

8  dismiss, both of which Your Honor has decided, the only

9  identified Landry clients were the four people I mentioned,

10 three of whom are deceased, we now know.  So Your Honor's

11 correct that -- and I should say I did not go through the

12 Roussel documents to see if there had been new people

13 identified beyond the ones that we listed in or discovery.  I

14 think it's -- I certainly haven't seen 141 extra names from the

15 Roussel firm.

16        There may have been a few who were identified in

17 later pleadings that were not captured in the definition of

18 objectors, but we did the best we could in terms of responding

19 to their own objections and saying:  These are the people we

20 want to hear from and you know, we were assuming those are the

21 people we're facing off against at trial.

22        MR. LANDRY:  Your Honor, I understand what he's

23 saying now.  That looked so much more -- I'm going to answer

24 for -- I have already done that.  I actually listed that.  So I

25 think all the discovery has been answered now.  I thought --

1  their complaint was for other cases and stuff that -- for

2  people we don't represent, and I understand what he's saying.

3      I gave them a list of all the mistakes I saw of the

4  people that they listed.  They listed 44 people and twelve of

5  those have been settled.  So, I actually made them a chart and

6  answered it in that regard.  So that's -- I think we've

7  answered -- now that we've got some clarity on where we're

8  going with it, I think that we've answered them as to the

9  people -- even if it's the people that are deceased, I just

10 said that for the verification.  But I'll get the substituted

11 parties, Your Honor, and we'll sign that verification.

12      As long as it's limited to them, I understand that.

13 I just don't want to get into the legal argument stuff where

14 these are lay people that can't answer that kind of stuff.  But

15 as to those people, Your Honor, yes, you're absolutely right.

16 All right, I will answer for them and I think I've already done

17 it.  I don't think there's anything left to answer for them.

18      I didn't -- if I didn't answer, I don't have anything

19 on them.  I just put Ms. Danos because I attached a

20 verification.  She lives in Bush, Louisiana and she was having

21 trouble with the new thing where you can actually get the --

22 whatever, you know, the notary can do it by Zoom if they take

23 the class, but she couldn't get it done with her daughter.  So

24 we're going to get her to sign the verification and submit it.

25 And we indicated that in our supplemental responses that we

1    provided yesterday.  And I would have provided them earlier,

2    I was waiting for her to sign them and I didn't get notice of

3    this hearing.

4            But Ms. Roussel's objections were fine for us.  I

5    thought they were the same thing.

6            THE COURT:  Okay.

7            MR. LANDRY:  And there was no use to put it off.

8            THE COURT:  All right.  And while we're on that,

9    Mr. Landry, have you registered for CMAC up notice for

10   electronic notices of court?

11           MR. LANDRY:  Yes, ma'am.  That was all done.

12           THE COURT:  Okay.

13           MR. LANDRY:  I don't know why we had trouble with it

14   yesterday, but your staff was kind enough to assist us and it

15   has all been worked out.

16           THE COURT:  Okay, perfect.  All right, I just want to

17   be clear that everybody knows.  I mean we've got a couple of

18   contested motions, contested matters before this Court and when

19   we get to trial on those issues, you know, it's not going to be

20   a free-for-all, the gates don't just open.  If you're a party-

21   in-interest, if you're a party to the contested matter, then

22   you can be heard.  But like I said, I don't understand how

23   someone would ever issue discovery to people who aren't parties

24   in the contested matter, so.

25           MR. LANDRY:  Your Honor, I don't -- that's what I

1    thought they were asking me.  We sat through an hour 10.1 and

2    they wanted to know a list of everybody of the 18,000 that I,

3    not my client, were dismissed.  And I gave them the ones I knew

4    off the reviewing -- just the material that I had, but I don't

5    know everybody, I don't know all the Bickfords, I don't know

6    all the Baron and Budds, I know nothing about that.

7              And if we're limited to not having to do that, that's

8    -- and I understand -- I thought the Court would say that, then

9    we're fine.

10             And Your Honor, one last thing.  I think a lot of

11   this is a little bit before the cart before the horse, because

12   I know Ms. Roussel and she has asked for dates for Reilly-

13   Benton's deposition.  I think much of this information in the

14   request for production of documents and the deposition; all of

15   this is going to be answered for Mr. Plevin.

16             And just like he asked about some of the depositions

17   about operations and different stuff.  We gave him --

18   Ms. Roussel gave him what she had.  Those pretty much run the

19   gamut about what they were.  I mean if you've got six

20   depositions that talk about operations, you don't need six

21   more.  And so, you know, those are laid out there, but I think

22   we're going to have all of that information after we take

23   Reilly-Benton's deposition.  And I think they've given a date.

24             Mr. Plevin, haven't you given a date for them?

25             MS. ROUSSEL:  This is Gerolyn Roussel --

1    MR. PLEVIN:  I think Your Honor --

2    MS. ROUSSEL:  This is Gerolyn Roussel.  We actually

3    -- they never cooperated in giving us a date, so what we ended

4    up doing was issuing a subpoena of a record notice as well as a

5    testimony notice.  And that actually, that subpoena was

6    returned though on July 11th.  They said they would have

7    complete responses to us on the written discovery by July 11th,

8    and would give us a date for the corporate deposition shortly

9    thereafter.

10    We got some responses.  They certainly aren't

11    complete responses but we asked for exactly that type of

12    information with regard to the claims that are part of the

13    bankruptcy.  And we were hopeful that when they turned over the

14    discovery they would turn over the pleadings and the dismissals

15    because we know from our own cases that most of those cases or

16    may of those cases have dismissals in them, and our cases they

17    were some (inaudible) or rulings on summary judgments where

18    they were dismissed.

19    However, we haven't gotten that yet.

20    THE COURT:  All right.  We'll that's --

21    MS. ROUSSEL:  And that's covered but not --

22    THE COURT:  That's not between here and there for me

23    today.

24    MS. ROUSSEL:  I understand that, Your Honor.

25    THE COURT:  Because I don't a Motion to Compel on

28

1  your side.

2         MS. ROUSSEL:  I understand.

3         THE COURT:  So let's just return to the Motion to

4  Compel at hand.

5         Mr. Plevin, do you have anything else on the

6  interrogatories?

7         MR. PLEVIN:  Yes, I have different issues --

8         THE COURT:  All right, the verification, yes.

9         MR. PLEVIN:  -- which I guess --

10        THE COURT:  Just the verification issue.

11        MR. PLEVIN:  Yes.  I wanted to clarify something

12  because I think Mr. Landry may be confused and I will admit I

13  want to make sure we leave this hearing without any confusion

14  or lack of clarity.

15        The first four interrogatories, the ones he was just

16  referring to which asked about what the claimants know, what

17  the objectors know about claims that have been released,

18  abandoned, settled, resolved.  The reason those questions were

19  asked was that Mr. Landry, and I believe possibly Ms. Roussel,

20  in earlier hearings, made the comment that the 18,500 claims

21  scheduled by the Debtor when the Debtor filed the case, was way

22  too high because many claims had been resolved, and therefore,

23  this should not be treated as a mass tort cases for purposes of

24  OGA Charters.

25        And so those four interrogatories are essentially

1  contention interrogatories asking the objectors:  Okay, you

2  say that 18,500 is not the right number.  What do you think the

3  right number is?  Identify the claims that you think should be

4  subtracted from the 18,500?

5       Now, Mr. Landry and Ms. Roussel, between them and

6  their answers as I read them, identify the 100 claims, give or

7  take.  And you know, so let's say we're down to 18,400.  Well,

8  if that's the universal claims they're going to identify, then

9  I think the arguments that can be made based on that reduction

10  from 18,500 to 18,400 is clear, and we can make our legal

11  arguments at the appropriate time.

12       But you know, what I don't want to have happen is for

13  Mr. Landry to say he only looked at his own piles.  But then

14  come to trial and you know, in the interim, he has talked about

15  in Budd or some of these other law firms and how he's got a

16  list of 15,000 claims instead of 100 claims that we didn't know

17  about because they weren't in the interrogatory answers.

18       And so, you know, that goes back to the verification

19  issue.  What are the clients going to verify and once they

20  verify it, that is their sworn testimony under oath and they

21  can't deviate from it at trial.  And that's what we're trying

22  to do is to lock things down.

23       THE COURT:  Okay.

24       MR. LANDRY:  Well Your Honor, there in fact lies the

25  problem is he wants me to contact Baron & Budd and if I came

1  back and said 15,000 cases were improper, he doesn't have any

2  information to dispute that, is what I heard, or that I'm

3  confused.  I'm not confused at all.  I just knew for a fact

4  that many of the Maples cases were either abandoned or settled,

5  and I just randomly went through the first fifteen on each --

6  the first on each of the first fifteen pages and 65 percent of

7  them were.

8         And Ms. Roussel showed hers and I showed 25 percent

9  of mine.  I was showing Mr. Plevin:  Please talk to Reilly-

10  Benton.  They have made some mistakes here.  I wasn't saying

11  OGA -- I wasn't say all of that.  I was just saying we have an

12  obligation to Your Honor and to this Court to provide factually

13  correct information, and not to guess about important things

14  such as how many people are involved here.

15         And then make a representation that somebody told you

16  something, but you didn't verify it, and then you want me to

17  verify it is an attempt to shift the burden from Reilly-Benton

18  and the Trustee and LIGA and the other insurers of Reilly-

19  Benton to these poor creditors.  The creditors are Landry and

20  Swarr, not proponents of, and I don't have the burden of

21  proving these elements.

22         I only made a comment to him and I'll make it to Your

23  Honor again:  There were not 18,500 and that's incorrect.  I

24  didn't say it was -- I just showed him by example and if he got

25  somebody to go through it, which I thought he would have an

1    obligation to do, or that the Trustee would do, when we gave

2    them information that:  Hey, these numbers are off, guys, way

3    off.  Now, if you don't care if it's 3,000 or 4,000 and the

4    Court is not concerned, then that's fine.  But I don't think

5    the Court should be given a representation of 18,000 people

6    when it may be substantially less by all parties will admit

7    that.

8         And none of the cases I gave him that are settled or

9    that were dismissed, none of that has been disputed.  I sort of

10   did that to show him:  Hey, go get Reilly-Benton to take a look

11   at this.  Find out who gave you all this bad material and see

12   if they can give you some better material that's more up to

13   date, or more factually accurate.

14        But my client's not going to know that and I'm not

15   going to be estopped from arguing that what they put up is

16   improper and all they know is what somebody handed them and

17   it's not correct.  And that's all I'm saying, Your Honor.  And

18   so I made that objection to him.  I said:  Look, I'm going to

19   show you some anyway, guys.  Twenty-two of the ones you gave

20   me, no.  Twelve of the 44, no good.  So that's all that is,

21   Your Honor.  I'm not confused about it.  I just don't think

22   it's my obligation to go through.

23        I think if somebody did the work that should be done,

24   it's going to be thousands of them that aren't in there.  But I

25   don't know that for a fact.  I'm representing as an officer of

1  the court what I believe just upon on the hours that I worked

2  on it to show Your Honor and to show Mr. Plevin and all the

3  parties.  Hey, these cases have been settled.  Some of them

4  have been settled since '95.

5           THE COURT:  Okay.  So what I'll tell you is this.

6  What I'll tell you is this:  It's what I've got in front of me

7  is a Motion to Compel Discovery.  And so when somebody asks me

8  what are the requirements for verifying interrogatories?

9  That's what we've been talking about.  I can't give you advice

10  on how to make your case.  Whether it's the 9019 settlement,

11  you know, the Trustee has the burden on the 9019.  If it's the

12  summary judgment, the movants have the burden there.  It

13  depends on what you want to prove to the Court.

14           And you need to go out and get some evidence on that.

15  I can't tell you how to do that.  All I can do is give you

16  answers to this Motion to Compel today, okay?

17           MR. LANDRY:  Okay.

18           MS. ROUSSEL:  Judge, before -- this is Gerolyn

19  Roussel for the Roussel and Clement creditors.

20           Let me just indicate that we actually responded with

21  the information we had at the time the responses were done, and

22  we also said we've asked for this information from Reilly-

23  Benton and we intend to supplement once we get that

24  information.

25           So, it's our position that we have responded to the

1    discovery. Normally, you're obligated to respond with what

2    you have at that time. We are continuing to do discovery as

3    we've indicated since April, we've been trying to get

4    information from Reilly-Benton. And the bottom line is we've

5    answered it, but we do have the right to supplement, and we

6    intend to supplement it.

7          THE COURT: Well, I think you have the obligation to

8    supplement discovery answers --

9          MS. ROUSSEL: Correct.

10         THE COURT: -- if you learn some new information.

11         MS. ROUSSEL: Correct. And so Mr. Plevin's comments

12    that you know, we'll be barred but what we answered in these

13    responses. I mean that's incorrect, because we're in discovery

14    right now and he knows very well that we've been attempting to

15    get this information from Reilly-Benton.

16         For example, even the caption name so we can know

17    what particular jurisdictions to go find the abandonment of the

18    case, the dismissals of the case in the event that Reilly-

19    Benton doesn't have them.

20         THE COURT: All right. Well, let's move on to the

21    actual substantive request now that we're -- I think we've

22    covered the verifications on the interrogatories.

23         As far as Interrogatories 1 through 4, Mr. Plevin, do

24    we still have issues with those, or do you want to go through

25    them one by one?

34

1        MR. PLEVIN: Let me see if I can do it at a high

2 level, Your Honor.

3        THE COURT: Okay.

4        MR. PLEVIN: Again, what we're trying to do here is

5 get the -- find out what support exists for the argument that

6 we perceive the objectors to be making, which is that because

7 they believe the Debtors schedules are incorrect, that this is

8 not a mass tort case.

9        You know, we're not so much concerned with whether

10 the proper number is 18,500 or 18,200. If the objectors were

11 willing to stipulate that this is a mass tort case for purposes

12 of OGA Charters, then this is a factual issue that need not be

13 pursued any further.

14        But, you know, the answers you know, one of them, I

15 think this -- I frankly don't remember which set of objectors

16 this was. We were given some information, as I said, about 100

17 claims were identified. No one has verified that, that answer,

18 but we're also told, quote, "on information and belief," closed

19 quote, that there are, quote, "many more cases that are no

20 longer active," closed quote. And one problem is information

21 and belief may work for pleadings, but not for discovery

22 responses that have to be sworn to under oath.

23        And then the only other point I would make, Your

24 Honor, is that we're not asking the objectors to prepare our

25 cases. This is not an element of our case. This is an element

1  of their objection, and I think we're entitled to ask them to

2  provide the evidentiary support for their objections.  If one

3  of their objections is that this is not a mass tort case and

4  therefore these policy proceeds are now property of the estate

5  and cannot be resolved by the Trustee in a settlement, we're

6  entitled to know the basis for that assertion that they're

7  making.

8          If they're not making that assertion then, you know,

9  and they want to stipulate, I'll be happy to withdraw these

10  four interrogatories, the Numbers 1 through 4.

11          Your Honor, I could go on to the others but maybe I

12  should stop there.

13          MR. LANDRY:  Yes.

14          MS. ROUSSEL:  Well, Your Honor --

15          MR. LANDRY:  Well Your Honor --

16          THE COURT:  Hold on.  You first.

17          MR. LANDRY:  Okay.  Your Honor, I just wanted to tell

18  you, then we're good.  I've given all of the information that I

19  have.  I raised one issue, Judge, just to show you I'm not

20  being a stickler, but the first case that they listed is

21  Douglas Abadie, and that was a case in the Twenty-Fourth JDC,

22  but that case had 100 plaintiffs in it.

23          So I'm not sure if Douglas Abadie is Mr. Douglas

24  Abadie who I knew Mr. Abadie, or if that's the other 100

25  plaintiffs that were listed and traveled under his caption.

1  And Mr. Plevin doesn't know the answer either.

2      And so I raised that, I said -- and I put a little

3  asterisk:  Hey, there were 100 cases contained here.  So as to

4  the 1 through 4, Your Honor, I've given them all the

5  information I have.  Ms. Danos didn't have, and she'll sign a

6  verification as to what she would know in this regard.  And we

7  said we reserve our rights so that when we get that information

8  from Reilly-Benton, we'll supplement, Your Honor.  So that's

9  all I have.  I don't have any more.  I have no more

10  information.

11      THE COURT:  Okay.  And Ms. Roussel?

12      MS. ROUSSEL:  Yes, Judge.

13      Then so we've responded with the information we had

14  as well, and in fact, when we got Mr. Landry's responses it

15  showed that there were in fact many other cases.  And the

16  reason that it's suspect to begin with is because of the cases

17  that they listed that they were our cases, most of those had

18  already been settled and/or dismissed.

19      And so it makes sense that of the other cases that

20  were listed, most of those likely had been done as well.  And

21  that's why we put in there:  This is the information we have at

22  this time.  However we do have this discovery propounded

23  against Reilly-Benton and also we're doing our own independent

24  discovery too, and we will supply you with that when we get

25  it.  But we did give them the information we had at the time.

37

1    THE COURT:  All right.  Mr. Plevin, I don't know if
2  that --
3    MR. PLEVIN:  Well Your Honor --
4    THE COURT:  That's going to work, yes.
5    MR. PLEVIN:  -- if they say they've given me all the
6  information they have and I do understand Ms. Roussel's point
7  about supplementation.  And what I earlier said that they would
8  be stuck with their interrogatory answers, I meant to include,
9  you know, timely supplemented answers within that --
10    THE COURT:  Right.
11    MR. PLEVIN:  -- (inaudible; speaking over each other)
12    THE COURT:  And the key to that is timely, because
13  you can't just lay in wait and then on the eve of trial
14  supplement your discovery responses in order to get out from
15  under, you know, the answers that you gave.
16    MR. PLEVIN:  Exactly.
17    THE COURT:  So you know, and that's --
18    MR. PLEVIN:  And so you --
19    THE COURT:  -- an objection for trial when the trial
20  comes and the Court will rule on it then.
21    But again, I've got to point you guys back to whose
22  burden it is and while you say it may not, you know, whether or
23  not this is a mass tort may not make a difference in your case,
24  I would question that because the Trustee is trying to sell a
25  9019 settlement, and in order for the Court to even have

38

1    jurisdiction to even look at it, it means that the proceeds

2    of these insurance policies are property of the estate.

3          So I just wanted to let you -- it cuts both ways.

4    If, whether you're the movant who filed the summary judgment

5    are trying to tell me that, one, their claims are outside the

6    policies or two, the proceeds themselves don't belong to the

7    estate.  You know, whatever argument they're making, somebody

8    is going to have to show the Court one, the policy language

9    would be helpful to see.  But also, you know, that the

10   proceeds -- that we are dealing with a mass tort, frankly.  All

11   right?

12         So let's move on to Interrogatories 5 through 8.

13         MR. PLEVIN:  Yes.  Again Mark Plevin, Your Honor.

14         These interrogatories are a little different.  These

15   are essentially contention interrogatories.  As you know the

16   objectors have made the argument that they are asserting

17   contracting claims which are a type of claim that is not in

18   their argument subject to the aggregate limits of the policies

19   and therefore ought to be treated differently.

20         And so Interrogatory Number 5 simply says:  State

21   whether you are asserting a non-products or operations asbestos

22   bodily injury claim against Reilly-Benton.  And there were some

23   -- as part of our meet and confer, I provided a supplemental

24   definition for those terms, so we all understand what we're

25   seeking.

39

1    So Number 5 basically says:  State whether you are

2  asserting that type of claim.

3    And Number 6 says:  If your answer is anything other

4  than an unqualified "no," then for each objector asserting that

5  kind of claim provide six separate categories of information

6  about the claim.

7    And then, because of the penchant of the objector's

8  counsel to suggest that they are representing others besides

9  the objectors, we asked the same questions in Numbers 7 and 8,

10  but we linked those to identify any other person whether or not

11  such person is an objector, who you know or believe asserts a

12  non-products or operations bodily injury claim.

13    So mostly what we're seeking in Number 5 and 6 is

14  information about the claimant's own claims and the basis for

15  their claims.  And in Numbers 7 and 8 we're asking about what

16  they know about other people who are asserting such claims.

17  We're not asking them to go review all the case files and

18  identify every person who has ever asserted a claim against

19  Reilly-Benton that may be asserting a contracting claim.

20    We're saying if you know of anybody who's asserting a

21  contracting claim, tell us the reason why you think that's a

22  proper characterization of their claim.

23    So you know, it's not that the Roussel objection says

24  it's unduly burdensome because -- when we're asking them to

25  examine the 18,645 claims, that's not the case.  We want to

40

1   know about their own claims and anything that they happen to

2   know about.

3          The Landry supplemental responses served Wednesday

4   say that we should get the information from Reilly-Benton.  But

5   again, what we're asking the claimants to provide is

6   information about their own claims.  And I think that's

7   something that they can reasonably be asked to do in

8   discovery.

9          Your Honor, there are some --

10          MR. LANDRY:  Your Honor --

11          MR. PLEVIN:  -- (inaudible) document requests that I

12   can talk about now or I can defer those as you wish.

13          THE COURT:  Okay.  Let's talk about -- let's just

14   stick with 5, 6, 7 and 8 right now.

15          MR. LANDRY:  Your Honor, this --

16          THE COURT:  So Mr. Landry, we'll start with you,

17   yes.

18          MR. LANDRY:  This is news to me.  This is completely

19   different than when we had our 10.1 conference.  They said

20   that I represented that there were many, many contracting

21   claims or some contracting claims, and that I had an obligation

22   to tell them about all of the contracting claims of the 18,000

23   people.

24          His argument today is different.  He's now saying I'm

25   just limited to my cases.  And so if it's just limited to my

41

1  cases, just the objectors, I'll answer that and I'll

2  supplement that.

3       I'm leaving to go out of the country for two weeks

4  Monday, but I'll answer that. I mean that will be answered.

5  Of the objectors he's talking about, that's fine Your Honor,

6  and I'll be more than happy to do that.

7       I understood him and we had a long conversation and

8  Mr. Plevin was a little bit more general than, or more

9  expansive and said he wanted me to answer for other people,

10  because I mentioned it. And what I did do, Your Honor, was I

11  listed a bunch of places that I knew from past cases, a list of

12  where they had done contracting claims, and so that if he had

13  somebody looking at cases other than ours, that it would show,

14  okay, well if you're talking about working at Dow Chemical, we

15  did contracting claims there, Reilly-Benton did, and Reilly-

16  Benton did them in other places.

17       So I did that out of a spirit of cooperation, but I

18  will go back and answer for the four, no problem. And I will

19  -- and that's all I'm going to answer for.

20       As to other people, other claims that I may know

21  about, well my clients wouldn't know anything about them, so I

22  won't answer for them because I don't know. I mean, there's

23  the Herner (phonetic) decision that Ms. Roussel tried the

24  verdict that talks about people working for one company and

25  being exposed to Reilly-Benton while they were doing

42

1   contracting.  So I don't know if that would be somebody they

2   would want her to include, I don't know.  But I will definitely

3   do that, Your Honor.  That was not my understanding of our one

4   hour plus meeting that we had.  Call it my fault but that's not

5   what Mr. Plevin told me and not what I heard, not what we were

6   arguing about, as I appreciated it then.

7           But I understand what the Court's done and maybe the

8   arguments have changed slightly, and that sounds more

9   reasonable and we'll definitely do that for the four objectors.

10          THE COURT:  All right.  Well again, in your --

11          MR. PLEVIN:  Your Honor, this is Mark Plevin.  I

12  think --

13          THE COURT:  Yes, go ahead.  Go ahead.

14          MR. PLEVIN:  I was going to say I think Mr. Landry

15  may have misheard me or misunderstood me again now.  I did say

16  that for Numbers 7 and 8 that went beyond his actual clients

17  and included any other claims that he knew about.  Because as

18  he just indicated, he has said in his interrogatory responses,

19  there are many more.

20          And if he intends to make an argument in November at

21  trial that there are, in addition to his clients, many more

22  people who made contracting claims, I'm entitled to have him

23  provide me with the information about those many more claims.

24          MR. LANDRY:  Your Honor, I don't have the --

25          MR. PLEVIN:  I'm entitled --

43

1     MR. LANDRY:  I don't have the specific --

2     Oh I'm sorry, I thought you were finished,

3 Mr. Plevin.

4     THE COURT:  No.

5     MR. LANDRY:  Continue.

6     MR. PLEVIN:  I'm sorry.

7     I'm not asking Mr. Landry to undertake a research

8 project for me and to go identify claims that he doesn't know

9 about so that he can then present me with that information.

10 But if he's going to make arguments in court that there are

11 many more contracting claimants besides the ones that he

12 represents, I think he has to tell me who those many more

13 claimants are and what he knows about them.

14     MS. ROUSSEL:  Judge, this Gerolyn Roussel.

15     If they are finished, I'd like to also add something.

16     THE COURT:  Okay, go ahead.

17     MS. ROUSSEL:  Okay.  First of all, Mr. Plevin

18 misunderstands what our argument is.  Our argument is not that

19 non-product claims or product claims are included.  Our

20 argument is that none of those claims of -- the insurance

21 companies are not protected against all of those claims;

22 products claims or operations claims.  So they're

23 misinterpreting our argument is to begin with.

24     However, with regard to his specific question:  State

25 whether you, and I assume he's talking about the objector,

44

1    whether you are asserting a non-products or operations claim

2    against Reilly-Benton and/or against the insurers of Reilly-

3    Benton.

4            And with regard to those claimants we specifically

5    stated, "Yes."  They are asserting operations claims against

6    them.

7            But it matters not whether they're asserting an

8    operations or a products claim, because none -- the insurance

9    companies are not protected against any others.  And so we've

10   answered as far as our clients, however, we also lodged an

11   objection saying it's totally irrelevant because that's not

12   what our argument is.  Our argument is none, you're not, "you"

13   -- Mr. Insurance Company is not protected against any of those

14   types of claims.

15           THE COURT:  All right.  So I understand that, again,

16   just like when we talked about the interrogatory verifications,

17   "you" and "your" under the definitions means the objectors,

18   which again, the Court is going to need a very specific list of

19   just the names that are actually objecting to the 9019 and who

20   have filed the summary judgment.

21           So the objectors, and then it goes on to say both

22   individually and collectively and any attorneys,

23   representatives, consultants, advisors or anyone acting on

24   behalf of anything, no objector or group of objectors, all

25   right.

45

1    So Numbers 5 and 6 are talking about, you know, the
2    claims that these objectors are actually filing, which I think
3    is pretty straightforward.  And then you have to just ask
4    whether "you" meaning objectors plus agents know about anybody
5    else in the nature of the claims that they are asserting.

6    And all he's asking for is:  What's the basis for
7    your statement in the summary judgment?  And you, you know, the
8    objectors, perhaps through Mr. Congeni stood up and said:  Look
9    Judge, you know, part of the problem is that, you know, this
10   isn't for you, these aren't -- the proceeds aren't property of
11   the estate because some of the claims that we have are outside
12   -- outside, property of the estate.  For whatever reasons
13   they're either not covered or the insurance companies aren't
14   protected, it's not -- they're not going to be covered through
15   this settlement, they are just outside of the realm that we're
16   talking about.  And he just wants to know the basis for that
17   statement.

18   So I think all of -- both of you, I guess -- I don't
19   know how many Plaintiff groups we're talking, but the Roussel
20   and Landry can answer definitely Numbers 5 and 7 (sic) to the
21   extent that they're your clients and you know what kinds of
22   claims that they're asserting.

23   As far as Numbers 7 and 8, you know, if you have
24   information, you don't -- like I said, you don't need to do a
25   research project, but what's the basis for your statements to

46

1   the Court?

2           MR. LANDRY:  Yes, ma'am.

3           THE COURT:  All right.

4           MR. PLEVIN:  Your Honor, I think you inadvertently

5   said Numbers 5 to 7 when you meant 5 and 6.

6           THE COURT:  All right.  I mean 5 and 6, right.

7           MR. PLEVIN:  Yes, Your Honor.

8           THE COURT:  You're right.

9           MS. ROUSSEL:  And that was part of our problem too

10  with Interrogatory Number 7.  That is overly broad.  I mean

11  he's got 18,000 claims, I mean.

12          THE COURT:  Well, again --

13          MR. LANDRY:  That's what they say --

14          THE COURT:  -- it's just what you know.  Either your

15  client, you as the agent, what do you know about the people you

16  represent?

17          MS. ROUSSEL:  Okay.  He says who you know or believe.

18          MR. PLEVIN:  Right, this is what I'm --

19          THE COURT:  If you don't know about 18,000, then you

20  don't answer it.

21          MS. ROUSSEL:  Okay.

22          THE COURT:  Whatever it is you know.  What's your

23  basis for the statements that you made to the Court in writing

24  and in oral argument for the fact that there are these other

25  claims that aren't any of the Court's business today?  They're

47

1    outside.  That was the argument that I understood you were

2    making.

3            MS. ROUSSEL:  And just to be clear, do we have a

4    court reporter, by the way?  Judge?

5            THE COURT:  They will be -- right now?

6            MS. ROUSSEL:  Yes.

7            THE COURT:  We're being recorded right now.  We're on

8    the record.

9            MS. ROUSSEL:  Okay.  Because I wanted to make clear

10   that I am not asserting that there are -- that any product

11   claims are property of the estate.  It's our position that the

12   insureds, whether it's a product coverage claim or an

13   operations claim, that none of those claims are properly before

14   the bankruptcy court, and none of those claims are property of

15   the estates.  And that, you know, the insurance companies of

16   course are not debtors, and so only (inaudible; not speaking

17   clearly) are actually a debtor.

18           So I did want to make that clear and protect the

19   record.

20           THE COURT:  That's fine.  That's fine.

21                    *    *    *    *    *

22                          **RULING**

23                    *    *    *    *    *

24           THE COURT:  All right.  So I'm going to grant the

25   Motion to Compel for Numbers 5 through 8.  Tell us what you

48

1    know.

2            MS. ROUSSEL:  And simply as to actually what is

3    known.  I mean we're not obligated to do independent research.

4            THE COURT:  Well, no.  It's your statements, whatever

5    your statements were that you are asserting, you know, non-

6    products or operational -- operations claims.  They're your

7    statements; what is the basis of that statement.

8            MS. ROUSSEL:  For my claimants?

9            THE COURT:  Or any of the --

10           MS. ROUSSEL:  And just these -- (inaudible; speaking

11   over each other)

12           THE COURT:  Yes, the first, the 5-6 was for your

13   claimants, for your objectors.

14           MS. ROUSSEL:  Correct.

15           THE COURT:  The second half, the 7 and 8, or are you

16   aware of anybody?  Do your objectors have any friends that

17   asserted claims?  Just whatever you know.  You're not required

18   -- you obviously had a basis for that statement, and we just

19   want to know what it is.

20           MR. LANDRY:  Judge, can I just give a little point

21   of reference here?  Avondale -- I mean Reilly-Benton employed

22   from the '60s through the '70s, hundreds, plural, of insulators

23   (sic).  And when they did work that work was considered what

24   they're referencing here "operations."  That's not -- it could

25   be products and operations but it's certainly operations.

49

1    I don't have the name for all those insulators.

2    Reilly-Benton should have those names.  So I will put -- and I

3    don't have the research.  I can't go find out.  But I'm going

4    to find out what I can and I'm going to respond to that, but

5    that's where some of that comes from, and that comes from some

6    of those depositions that we gave to Mr. Plevin -- I mean I

7    guess his client or he had them, Century, but that it saved

8    them, but I don't have their names.  I don't have the exact

9    dates they worked.

10         THE COURT:  Okay.

11         MR. LANDRY:  And I don't have a way to get their

12   independent private information, but Reilly-Benton probably

13   already has that information.

14         So what I may do is this, to tell the Court is that

15   I'm going to come forward with some of the information, but

16   Ms. Danos would have difficulty verifying that, because she has

17   absolutely no information whatsoever regarding any of that, and

18   that's where I run into a little bit of a problem.  So I'm

19   going to get her to verify and I'm going to put:  Hey, you

20   don't know that this is not true and I've said this, and et

21   cetera.

22         But that's where, Your Honor, I run into a little bit

23   of a problem and I want to make sure we comply with what the

24   Court wants us to do.  I don't want there to be a problem.

25         THE COURT:  Well, I appreciate that.  Again, these

1  are your statements that you've made either in objections or

2  your own motion and --

3  　　　　　MR. LANDRY:  Absolutely.

4  　　　　　THE COURT:  -- they are all -- there's got to be some

5  basis for it.

6  　　　　　MR. LANDRY:  There is Your Honor.

7  　　　　　THE COURT:  Okay.

8  　　　　　MR. LANDRY:  That's what I was saying.  I know that

9  information and what I'm going to do is like I think

10  Ms. Roussel is asking some of that information we may have to

11  wait until we do the discovery -- until Reilly-Benton responds,

12  because that would be information that they would have for

13  their employees.  I don't know the names, I just know that --

14  where they worked, generally in some of them, but I appreciate

15  that.

16  　　　　　Your Honor, I just wanted you to know I don't want to

17  get in trouble with the Court, but I want to be able to respond

18  truthfully, but also without having to go try to research all

19  of the other cases in the 18,000.

20  　　　　　Thank you.  Thank you Your Honor.

21  　　　　　THE COURT:  Okay, all right.

22  　　　　　MR. PLEVIN:  Your Honor, I just --

23  　　　　　THE COURT:  Go on, yes.

24  　　　　　MR. PLEVIN:  -- want to touch base with the document

25  requests.

51

1       THE COURT:  That's right.  So let's look at

2  Document Request Number 2 first.

3       MR. PLEVIN:  Sure.  So that request asks for

4  documents that support their contention that before the Debtor

5  ceased operations it had been in the business of performing

6  contracting work.

7       MS. ROUSSEL:  May I please respond to that?

8       MR. PLEVIN:  And again, this goes to a contention

9  they made --

10       Excuse me?

11       THE COURT:  Go ahead.

12       MS. ROUSSEL:  We responded to that with the

13  information that we had.

14       MR. PLEVIN:  Right.  So this asks for documents to

15  support their contention.  And I believe that, and I think we

16  said this in our responses that the Roussel firm did provide a

17  number of transcripts, and I think that was -- it was all they

18  provided.

19       Mr. Landry provided some -- basically, the first

20  documents he provided, he provided Wednesday evening.  I

21  happened to be on a plane and I have not had a chance to look

22  at what he has produced.  I don't know if that's responsive to

23  Number 2 or some other document.  But that's what we were

24  seeking there, was documents that support their contentions.

25       THE COURT:  Okay.

52

1        MS. ROUSSEL:  Judge --

2        THE COURT:  All right, so it sounds like -- yes, and

3   what I had read in the papers is that, you know, it appears

4   that Roussel complied with this document production.  The

5   Landry firm's production was still up in the air.

6        So you're saying that you have received something but

7   we haven't had a chance to look at it, correct?

8        MR. LANDRY:  Your Honor, I responded and adopted what

9   the Roussel responded.  I don't have anything else.

10       THE COURT:  Okay.

11       MR. LANDRY:  She had more information -- like they

12  asked me for Mr. Courville -- at one point, Mr. Courville's

13  deposition, and which is fine, but I don't represent

14  Mr. Courville, but Ms. Roussel does, and she gave them to him.

15  So I took that as, you know, I don't have -- I mean I didn't

16  think I had to go get it from Roussel and give them to them as

17  well, when she gave them to him.

18       So I'm adopting what --

19       MR. PLEVIN:  And Your Honor?

20       THE COURT:  Yes.  Mr. Plevin?

21       MR. PLEVIN:  I was going to say, Your Honor,

22  Mr. Landry in his supplemental response served Wednesday

23  identifies three depositions that he was producing as

24  responsive to the request, and then saying that Ms. Danos is

25  not in possession of any documents.

53

1        So perhaps Number 2 is now answered by both sets of

2   objectors, subject to our reviewing the documents and having

3   questions.

4        THE COURT:  Okay.  That's perfect.

5        All right, Number 3.

6        MR. PLEVIN:  All right.  Number 3 is transcripts of

7   depositions or trial testimony given by you in any lawsuit

8   seeking to recover damages based on alleged exposure.

9        And again, Ms. Roussel did produce the certain

10  transcripts of Nelcome Courville.  I understand that

11  Mr. Courville is deceased and that members of his family are

12  claiming through him.  They have been identified by Ms. Roussel

13  in her pleadings from the get-go, so we understand that they

14  are relying on Mr. Courville's testimony.

15        There are other claimants though identified by

16  Ms. Roussel as well as all of the claimants identified by

17  Mr. Landry, who haven't provided -- well, I guess Mr. Landry

18  did provide some deposition transcripts on, you know, on

19  Wednesday night.  But I don't know that there are any other

20  transcripts from Ms. Roussel for her other clients besides the

21  Courville family.

22        THE COURT:  Okay, let me ask you this, Mr. Plevin.

23  For Numbers 3 and 4, what was the purpose behind these

24  requests?

25        MR. PLEVIN:  The purpose, Your Honor, was for us to,

54

1  you know, if these folks are asserting in this Court, in this

2  contested matter, that they are asserting contracting claims

3  and we can go look at their pleadings and their testimony and

4  see that they are not asserting contract claims or contracting

5  claims or that they are asserting both contracting and products

6  claims, you know, we would be able to make certain arguments

7  based on that fact.

8       You know, right now all we have is the

9  unsubstantiated assertion that they are asserting these types

10 of claims.  You may remember as well on Mr. Congeni when we had

11 the hearing in person a few weeks ago; he referenced bad faith

12 claims and I said I haven't been aware of any bad faith claims.

13      Well, their pleadings filed in Court in these

14 underlying cases will tell us if they've asserted any bad faith

15 claims.  I don't think they have or they did, and that would

16 contradict the arguments made by Mr. Congeni.

17      So this is really just a way of keeping them honest,

18 seeing what they've actually alleged, what they've actually

19 admitted to in testimony, so that we can respond to their

20 arguments that they are asserting contracting claims.

21      MS. ROUSSEL:  And let's look at the request --

22      Oh I'm sorry, I didn't mean to cut off anybody.

23      MR. LANDRY:  Go ahead.  Go ahead Ms. Roussel.  I'm

24 sorry.

25      MS. ROUSSEL:  Yes.  Well, let's look at Request for

1   Production Numbers 3 and 4: Any transcripts of deposition or

2   trial testimony by you, "you" being objector, based on alleged

3   exposures to asbestos or asbestos containing products.

4           Now, all of our objectors are survivors, wives and

5   children of deceased victims. Their depositions will have

6   nothing to do with regard to alleged exposures to asbestos or

7   asbestos containing products. And so therefore, we've

8   indicated you know, relevancy, et cetera, et cetera, because we

9   only have -- we have the Brasan (phonetic) family, the

10  Courville family and the Cortez family.

11          We also have the Dugruise family, but in responding

12  to this discovery and attempting to go back into files and look

13  for like dismissals and that type of thing, we also discovered

14  that the Dugruise case was settled and dismissed as to the

15  Dugruise family. So we know in each case the Dugruise family,

16  put it in with the other upper answers and say: Those cases --

17  that case is already dismissed as well.

18          But the question asked testimony given by "you." And

19  so these survivors were not the ones who were exposed to

20  asbestos, their transcript, their old transcript from the old

21  cases would have nothing to do with that. And so that's what

22  we basically objected to and responded to, saying that it was

23  irrelevant, overly broad, harassing and will add nothing and,

24  you know, doesn't go to alleged exposure to asbestos or

25  asbestos containing products.

56

1      THE COURT:  Okay.

2      MR. PLEVIN:  Your Honor, this is Mark Plevin.

3      I'm not sure that's true.  If the widow or child of

4 somebody who -- if the widow or child is objecting, and

5 objecting on the basis that their family member was injured by

6 exposure to asbestos, and they gave a deposition; they could

7 have been asked in their deposition questions about not their

8 own exposure, but the exposure of their family member.  And

9 they may have given answers.

10      You know, a wife for instance might know where their

11 husband worked, what he did, what kind of work he did.  I don't

12 think that's beyond the pale.  I think that's reasonable

13 testimony by someone who is an objector, because the family

14 members who are living are the ones who should be the

15 objectors, not their decedent.  And if they gave testimony, in

16 addition to the testimony given by their decedent, I think

17 that's what they're relying on for their objection and they

18 should be able -- they should be required to present that.

19      MS. ROUSSEL:  But the question doesn't ask the

20 testimony from the decedent.  It asks for testimony by you,

21 wherein that is what prompted the objection.

22      THE COURT:  Okay.  Well, I presume that the universe

23 of actual objectors is pretty limited.  I mean I know that

24 Mr. Landry says he's got four.

25      And then how many objectors are named in the

1   pleadings that actually are objecting in this Court for the

2   9019 settlement or who have filed a summary judgment?

3          MS. ROUSSEL:  We have the Brasan children and we have

4   the Courville children and wife, and we have the daughters of

5   the Trey (phonetic) family.  And we have --

6          THE COURT:  About how many people is that?

7          MS. ROUSSEL:  I'm sorry Judge.

8          THE COURT:  About how many, ballpark?

9          MS. ROUSSEL:  Okay, let me -- I can toss them up very

10  quickly.

11         THE COURT:  Okay.

12         MR. LANDRY:  About a dozen, give or take, Your Honor.

13      (Pause.)

14         MS. ROUSSEL:  Twelve, approximately twelve, yes.

15         THE COURT:  Okay.

16         MS. ROUSSEL:  And two we will be withdrawing the

17  Dugruise objectors because that case has been dismissed as to

18  Reilly-Benton --

19         THE COURT:  Okay.

20         MS. ROUSSEL:  Many, many years ago.

21         THE COURT:  All right.  Given the limited number, I

22  mean and I have to assume that not everybody has been deposed

23  or participated in trial, I don't know.  But given the limited

24  number here of actual objectors, I'm going to go ahead and

25  allow Numbers 3 and 4 and grant the Motion to Compel as to

58

1   those.

2           MR. LANDRY:  Judge, this is Mr. Landry.

3           I'd like to raise one thing that Mr. Plevin said,

4   because we are on the record and I don't want it to be unclear.

5           THE COURT:  Okay.

6           MR. LANDRY:  He's not familiar with the bad faith or

7   the fraud claims.  He should be, because his client just

8   removed a case that I was litigating in St. Charles Parish

9   where I made the allegations of fraud and bad faith, because in

10  1995 their own documents indicate that they were in fact sort

11  of cooking the books by putting products claims as to all

12  claims, whether it was operations or not.

13          And so Your Honor, they would complain to us that

14  they had limited resources in these policies, but it wasn't

15  until just very recently that they started saying that they

16  were actually exhausted.  And it didn't matter to us if you had

17  four insurance policies spanning ten years or eight years who

18  was exhausted, because there was one check being written.  That

19  was all internal.

20          So the fact of the matter is that, yes, we have found

21  out through discovery, through their own documents that in fact

22  these insurance companies were committing what we -- insurance

23  we believe were fraudulent methods of calculating claims based

24  upon the fact that they took all claims and put them only under

25  the policies that were exhaustible and didn't put them under

59

1    any of the policy provisions that were inexhaustible.

2           And that we believe, Your Honor, is not only fraud,

3    that's also bad faith.  So we have alleged that.  And that case

4    was removed today, part of that to federal court.

5           But Your Honor, you've got to -- so for years when

6    these cases originally came up, nobody alleged that, and they

7    made this agreement allegedly in '95.  So we recently became --

8    because until '17, we didn't know anything about this.  And

9    then everything was kind of stayed and they moved for stayed

10   and that allowed us to get discovery against them and such and

11   such.

12          So when Mr. Plevin says our claims, he knows full

13   well what those claims are, and so does everybody who

14   represents these insurance companies, because those are the

15   very claims that have been made.  But not only in that case but

16   in other cases pending in state court right now.

17          And so, Your Honor, but those --

18          THE COURT:  Well again, though --

19          MR. LANDRY:  -- those --

20          THE COURT:  All of those other things, if they're

21   not objectors in my Court, then I can't do anything about them

22   and these discovery requests don't -- aren't addressed to

23   those people, okay?  So we're just talking about the 16 give or

24   take --

25          MR. LANDRY:  Correct.

60

1          THE COURT:  -- who just --

2          MR. LANDRY:  Correct, Your Honor.  I just wanted --

3          THE COURT:  Yes.

4          MR. LANDRY:  I just -- yes, Your Honor.  You're

5    correct.  I'm just saying:  Well Mr. Plevin isn't aware of the

6    -- or confused or not quite sure what the fraud and bad faith

7    claims are, it's against all of the insurers because if they

8    got together to do these -- (inaudible; hard to understand) --

9    I think he's probably seen the documents, because I know the

10   lawyer for the Trustee has.

11         So in any event I just wanted to make sure that that

12   was not something that they were not clearly aware of, that

13   they weren't aware of as we're going forward.

14         THE COURT:  All right.  So Numbers 3 and 4 --

15         MS. ROUSSEL:  And Judge, just -- (inaudible; speaking

16   over each other) -- request for production --

17         I'm sorry.  Go ahead.

18         THE COURT:  Yes, just Numbers 3 and 4 right now.

19         MS. ROUSSEL:  Oh well, Number 4, okay.  So, yes right

20   here --

21         THE COURT:  So Numbers 3 and 4 --

22         MS. ROUSSEL:  So I do have to come up with 4.

23         THE COURT:  Regarding any lawsuits as given by you.

24   And so I'm looking at Number 4 now.

25         MS. ROUSSEL:  Okay.  So this one requests all

1    discovery responses served by you and any lawsuits seeking to

2    recover damages based on alleged exposure to asbestos or

3    asbestos containing products. All discovery responses. So I

4    mean that has nothing to do -- if it was just limited to

5    Reilly-Benton that would be one thing. But all discovery

6    responses?

7         I mean for example, in the Courville case, we had

8    over 30 defendants.

9         THE COURT: Right. Mr. Plevin, I assume that this

10   only refers to Reilly-Benton, claims against Reilly-Benton,

11   correct?

12        MR. PLEVIN: Your Honor, I haven't actually thought

13   about the fact that there might have been 30 defendants.

14        THE COURT: Yes.

15        MR. PLEVIN: Thirty defendants who -- so different

16   discovery, but as I sit here right now, I think that limiting

17   that to claims against Reilly-Benton makes sense.

18        THE COURT: Yes.

19        MR. PLEVIN: And I'm going to accept that limitation.

20        THE COURT: Okay, perfect.

21        So Number 4 is just limited to Reilly-Benton.

22        All right. Numbers 5 and 6, Mr. Plevin.

23        MR. PLEVIN: Number 5 -- Number 5, I know that the

24   Roussel firm did produce a number of transcripts of Warren

25   Watters, who was, I understand, the former president of Reilly-

62

1   Benton; and gave at least eight depositions that they've

2   produced transcripts for, maybe nine.

3           And so I would say that if the Roussel firm says

4   that's the entire universe of what they have, they've complied

5   with Number 5.

6           THE COURT:  Okay.

7           MR. PLEVIN:  As to Numbers -- well let me, I'm just

8   looking at --

9           MS. ROUSSEL:  Well, let me go back to Number 5

10  though.  So this is what the issue is with that.  You look at

11  the request, it says:  By any current or former officer,

12  director or employee of Reilly-Benton.  That is so overly

13  broad.

14          What we did do is we objected to it on the basis that

15  it was overly broad, and then we came in and we gave him nine

16  depositions on Warren Watters that we knew to be the president,

17  three -- I believe three or so depositions on John Taylor, who

18  we also knew to be one of its officers.  And the deposition of

19  Milton Bauer who we also knew to be one of its officers.

20          But Reilly-Benton has been in business since the

21  1950's and we would not know all the former officers or

22  directors or employees, nor would we know about how to be

23  getting call backs and so --

24          THE COURT:  Well, it's just anything in your

25  possession.  We're not asking you to go and do legal research

1  or comb the, you know, state court records.  It's just

2  whatever you have in your control or possession.  That's the

3  only thing you have to turn over.

4         MS. ROUSSEL:  That is wherein the problem lies,

5  because we've been doing this for a long, long time and I don't

6  go through and say:  Oh, this person was an employee of Reilly-

7  Benton.  Or this person did this for Reilly-Benton, because

8  many times it's not even really relevant because of the

9  activities.

10        And so that's a concern here that it is so overly

11  broad and for such a long time period that I gave them the ones

12  that I knew were officers, but I would assume that there might

13  be many, many other employees.  I don't know that though

14  without doing years and years and years of research to --

15        THE COURT:  Right.

16        MS. ROUSSEL:  Right.

17        THE COURT:  All right.  Mr. Plevin --

18        MS. ROUSSEL:  What we have in my own files exclude

19  that.  I mean that would be a monumental task to do that.  And

20  why do they need that?  What is even the relevance of that for

21  this particular case?

22        THE COURT:  All right.  Mr. Plevin, are you looking

23  for statements?  What are you looking for exactly?

24        MR. PLEVIN:  I'm looking for -- Your Honor, I

25  understood that the business of Reilly-Benton was selling

64

1   products, and some of those products contained asbestos.

2   I've been told that there has -- that there's a dispute as to

3   the extent to which Reilly-Benton did anything other than sell

4   products.  So that there may not be a basis for a contracting

5   claim, and I was told that the answer to that would be at least

6   to some extent in depositions of Mr. Watters, having been given

7   in the past.

8         I don't know who else from Reilly-Benton may have

9   been deposed over the years, who would have answered a

10   question.  For instance:  Did Reilly-Benton ever sell anything

11   other than a product?  Did they ever provide -- did they ever

12   install asbestos?  Did they ever rip out asbestos?

13         And the person might have said:  No, we never did

14   that.

15         If that was in a deposition, that would be important

16   information for us.  I don't know whether that's in a

17   deposition or not.

18         MS. ROUSSEL:  Well, the depositions of Warren Watters

19   that we gave him, and John Taylor and Milton Bauer all confirm

20   that Reilly-Benton did contracting activities.  So I don't know

21   why he would try to put a burden on us to search years and

22   years and years and years of depositions when the depositions

23   that we gave him of the officers of which we are aware, confirm

24   that they had contracting activities.

25         If that's what he's trying to get at, these

65

1    depositions confirm that. Why do we need to go above and

2    beyond that to find out all this information?

3              THE COURT: Well, if -- yes. Well, here's what my

4    concern is: If you're looking for statements by the company,

5    you know, by a company rep as to what business they did; and I

6    understand what you're looking for. But my concern is adding

7    employees into that means that you're going to capture

8    claimants against Reilly-Benton itself, because these

9    presumably are claimants itself who have asserted tort claims

10   against the company.

11             So why don't we just limit Number 5 to current or

12   former officers or directors -- (inaudible; audio is garbled

13   and skipping) -- and wouldn't be as burdensome to a plaintiff's

14   firm.

15             MR. PLEVIN: That's fine, Your Honor.

16             What I would ask though is we've started reviewing

17   the transcripts and if following our review, if we have reason

18   to seek supplemental discovery on that point, you know, we'll

19   do so. But for now I think the limitation you've imposed or

20   suggested is appropriate.

21             THE COURT: Okay. So let's just limit to current or

22   former officers and directors, and it sounds like you've

23   complied with that.

24             And you can raise it again, Mr. Plevin, if you get to

25   the end of those transcripts and have questions, okay?

1          MR. PLEVIN:  Right.

2          Now Mr. Landry, I don't think has produced any of

3     those, any such transcripts.  The only ones he has produced are

4     either his clients or his clients' decedents.  So and unless

5     Mr. Landry is going to say he has nothing other than what --

6          MR. LANDRY:  Mr. Plevin, take a little --

7          MR. PLEVIN:  -- (inaudible; speaking over each other)

8     produced --

9          MR. LANDRY:  I think you made a mistake.  Why don't

10    you take a little time and look at it, because I produced the

11    deposition of Milton Bauer in response to that request, which

12    was dated on the 18th of December 1990.

13         Additionally, I would say if you really want to make

14    sure you have all the depos, check with Reilly-Benton because

15    they would have been involved in all of them.  I'm going to

16    check with Gerolyn's list about Warren Watters, because I don't

17    think that I have any that she doesn't have, but there is one I

18    do want to check, because a lot of these were, you know, so

19    Reilly-Benton would have all of them.

20         If I did it, Baron & Budd did it, Bickford did it,

21    anybody did it.  And that's, you know, your insured and I'm

22    sure the Trustee can talk to the people who gave him those --

23    the 18,000 -- the lawyers who represented them, because they

24    have those in their witness and exhibit list to something over

25    the years.  Not necessarily on these cases, but in all the

67

1    cases.

2           But I will check if there's any more of Warren

3    Watters than those nine.  And as a corporate rep, like

4    Ms. Roussel was saying, he talks about the -- somewhat about

5    the operations claims, but defers to Mr. -- not Bauer but the

6    other gentleman.

7           MS. ROUSSEL:  John Taylor.

8           MR. LANDRY:  I also gave you the deposition, sir, of

9    Mr. John Taylor dated February 1992, and Mr. John Taylor dated

10   May 28th, 1985.

11          So go ahead and take a look at that and make sure

12   that -- those may be the same ones that Gerolyn gave you, but I

13   wanted to make sure that I gave you the ones that I have.  I

14   don't think they're identical.  They may be additional.

15          THE COURT:  Okay.

16          MR. PLEVIN:  I will do that, Mr. Landry.

17          MR. LANDRY:  That's a good idea.

18          MR. PLEVIN:  And I was working off your supplemental

19   responses to Number 5.

20          MR. LANDRY:  I know, I wish I would have gotten

21   notice of this hearing I might have -- could have gotten those

22   to you earlier, but --

23          MR. PLEVIN:  Yes.

24          THE COURT:  All right.

25          MR. PLEVIN:  Well yes, your supplemental responses

68

1    don't say you produced the transcripts but I know you did

2    produce some transcripts and I will look at those.

3            MR. LANDRY:  Yeah, they actually do say it.  Take a

4    look at it.  Response Number 2 says it.  And it's referenced

5    again later.  I just want to make sure the record is clear.

6            THE COURT:  All right.  Well Mr. Plevin, again, we're

7    going to limit it to take out employees.  Just check and see

8    what you've got, and if you have any questions after you've

9    read all of the deposition transcripts we can raise that again

10   if we need to.

11           MR. PLEVIN:  Very well.

12           THE COURT:  All right, Number 6.

13           MR. PLEVIN:  Number 6 seeks documents produced by the

14   objectors regarding their exposures.  Again, this is focused on

15   the issue of what kind of claim they have, contracting or

16   otherwise.  And that's what we're seeking in Number 6.

17           THE COURT:  Okay.

18           MR. PLEVIN:  I'm looking at my -- it seems like the

19   Roussel firm simply objected to Number 6, as did the Landry

20   firm.

21           THE COURT:  Okay.  You know, my first thought of this

22   one is it says -- well, it's starting to be a little

23   repetitive.  It's duplicative of some of the other requests,

24   because again, we're getting you know:  What is the nature of

25   your claims?  We've had several requests in interrogatories,

69

1    they addressed the nature of the claim.

2         So I'm going to deny this one for now.  I'm also,

3    you know, I just want to make clear that the Court isn't

4    litigating the underlying merits of any of these claims.  I

5    understand why you want clarification or information on the

6    nature of the claims, because that's -- they raise this issue

7    in the summary judgment for sure.

8         But for now, I'm going to deny this one for now.  I'm

9    finding it to be a little duplicative.

10        Let's go to Number 7.

11        MR. PLEVIN:  Number 7, I believe Ms. Roussel has

12   said she has produced all of the Courville transcripts she has.

13   And Mr. Landry has said he doesn't have any.

14        THE COURT:  Okay.  All right, then we'll accept that

15   for now.

16        Number 8.

17        MR. PLEVIN:  Number 8 is similar to Numbers 9 and 10,

18   seeks documents that support statements made in their joint

19   brief.  And the joint brief that is defined as the -- let me

20   get the definition here.  The joint brief is the brief they

21   filed that's at Docket Number 105, that was a brief filed, if

22   I recall, early -- I think in January of 2021, maybe February

23   of 2021.  They made some statements there and we have

24   excerpted those statements and asked them to produce the

25   documents that support the three statements identified in

70

1  Numbers 8, 9 and 10.

2      MS. ROUSSEL:  And our problem with that is it says:

3  All documents that support your contention.  We've given them

4  depositions, we've given them information that supports our

5  contention.  But his -- and that was part of our objection is

6  all documents.  And again, that would be a monumental task to

7  locate all documents that support our contention.

8      You didn't say --

9      MR. PLEVIN:  Well, Your Honor --

10     MS. ROUSSEL:  You didn't say the documents upon which

11 you would rely to support your contention.

12     THE COURT:  Yes.

13     MS. ROUSSEL:  He just said all documents that support

14 your contention.

15     THE COURT:  Okay.

16     MR. PLEVIN:  Your Honor, the issue, as I'm sure you

17 appreciate, is we want to make sure that we see documents that

18 they're going to rely on at trial before the trial.

19     THE COURT:  Right.

20     MR. PLEVIN:  And you know, if they somehow want to

21 self-limit what they are going to put into trial and you know,

22 that would be fine.  Of course, to the extent there's documents

23 in their possession that contradict the things that they want

24 to say at trial, you know, we're entitled to see the

25 contradicting documents.

71

1            So I'm not sure how to -- you know, I want to try

2  to reach a practical outcome here, but I'm not sure how I could

3  simply allow them to put in the documents they want to rely on,

4  but not provide the documents that I think, you know --

5            THE COURT:  Well, but --

6            MR. PLEVIN:   -- contradict what they're going to say.

7            THE COURT:  Well, let me just say this:  One, as

8  written, it only -- it doesn't say give me everything that

9  refutes your position.  It just says give me everything that

10 supports your position.

11           Of course, everyone on this call knows that if it's

12 not exchanged during discovery, we're not using it at trial.

13 So that's -- I mean that's pretty clear.

14           So I would say if you wanted documents that they have

15 that I guess aren't -- that do not support their position,

16 then you would have to ask for that.  I don't know exactly how

17 to craft that for you, but as written it didn't say give me

18 all the documents that you relied upon to support your

19 contention.  It just says give me everything that supports your

20 contention.

21           Again, if they don't want to give it to you, they

22 can't use it at trial.  If it's not exchanged in discovery, it

23 doesn't come up at trial.

24           MS. ROUSSEL:  And Judge, too, we do have an exhibit

25 exchange deadline of October 27th.  And certainly, as we've

72

1　indicated the documents -- you know, the depositions and

2　information, much of which has been produced in response to

3　this, and after we take Reilly-Benton; of course we're going to

4　supplement. The bottom line is we have a date by which to

5　exchange exhibit lists. And certainly by that date anything

6　then can be used at trial, we will have in our exhibit list and

7　we'll have either already produced it to them, or at the

8　exhibit exchange we'll produce it to them.

9　　　　　THE COURT: Well, waiting to put a document on your

10　witness and exhibit list is waiting too long. They need to be

11　able to see it and you know, use it in a deposition if they

12　want to. They have to have prior notice of it.

13　　　　　The witness and exhibit list, you know, is a -- yes,

14　it's a deadline, but that's not -- if they ask you for

15　something and you didn't give it to them, that's going to be a

16　problem for you.

17　　　　　MS. ROUSSEL: No, I understand. The point I was

18　simply trying to make is the reason we have this is overly

19　broad is, you know, all documents that support your contention.

20　And so --

21　　　　　THE COURT: Right. Well, I understand that that

22　seems overly broad and it is as written. It's pretty broad.

23　But again, I think what a better -- you're asking what they

24　relied upon?

25　　　　　MR. PLEVIN: Your Honor, I'd want to know -- I want

1   to know what I'm going to face at trial, so if --

2         THE COURT: Right.

3         MR. PLEVIN: If they don't want to rely on it at

4   trial, if they don't want to introduce it at trial or use it in

5   a deposition with any witnesses, then they don't have to

6   produce it.

7         THE COURT: Right.

8         MR. PLEVIN: And so to the extent you want me to --

9   or you're suggesting I amend Numbers 8, 9 and 10 in some way to

10   limit the scope of those requests to documents that they intend

11   to use at trial to support these contentions, I would be

12   willing to do that.

13         MS. ROUSSEL: Judge, I think arguing on requests that

14   have already been pronounced (inaudible; audio is skipping) --

15   as written, these discovery requests are simply over broad.

16   We have already produced information and as I indicated, as

17   soon as we take Reilly-Benton we're definitely going to be

18   producing an abundance of information but --

19         THE COURT: All right. Well, let's -- you know,

20   let's put a pin in this one, Mr. Plevin, because what I hear

21   her saying is that there's going to be a supplement. So let's

22   see what we get after the supplement is produced.

23         MR. PLEVIN: Very well.

24         THE COURT: All right. So at the end of this, you

25   know, we've made some adjustments and I've denied a couple and

74

1   granted a couple.  At the very end, what I'm going to do is

2   push this Motion to Compel out until the time after the

3   supplemental production is made so that we can revisit the

4   things we haven't taken care of today.

5          All right.  So let's go to Number 11.

6          MR. PLEVIN:  Number 11 is, I would say, more of the

7   same, Your Honor.

8          THE COURT:  Yes.

9          MR. PLEVIN:  And I'm going to treat that the same

10  way.

11         THE COURT:  Okay.  Well, let me read it real quick:

12  All documents that you contend show that Reilly-Benton

13  performed contracting activities.

14         Okay, again, all right.  Okay.  Let's lump Number 11

15  in with Numbers 8, 9 and 10 and see what we've got after the

16  supplemental.

17         And then Number 12.

18         MR. PLEVIN:  Your Honor, Number 12 -- Mr. Messina or

19  -- I was going to say either Mr. Messina or Mr. Robbins will

20  argue.

21         THE COURT:  Okay.

22         MR. MESSINA:  Yes, can you all hear?  You all can

23  hear me?

24         THE COURT:  Yes.

25         MR. MESSINA:  Can you all hear me?

1       THE COURT:  Yes.

2       MR. MESSINA:  Okay, all right.

3       Your Honor, David Messina appearing on behalf of the

4  Trustee.

5       I think this is pretty quick one, Your Honor.  We

6  sent a request for production asking the objectors to identify

7  what document, whatever it is that they based their assertion

8  that the turnover settlement that the Trustee has with LIGA is

9  prejudicing their rights against LIGA.

10       The reason why we request this is because LIGA has

11  identified 11,000 -- or more than 11,000 claimants that have

12  timely filed claims against LIGA and these objectors are not

13  any of them.  And so, we want to know if there is some

14  document that they're relying on as to why they think they have

15  a claim against LIGA, then tell us what document it is and

16  produce it.

17       The objections we got, I think Ms. Roussel objected

18  and said it was burdensome, et cetera, et cetera, and then

19  pointed us to two other responses to request for production

20  that had nothing to with the question we asked.

21       Mr. Landry -- I think he filed a supplemental

22  response and it's more of a legal argument.  He also says it's

23  overly broad.  He does say at the very end, Tena Danos is not

24  in possession of documents responsive to this request.  So I

25  guess with respect to Tena Danos, although the name Tena, I

76

1    assume that's just a typo, it's a different spelling than the

2    Tina that's listed earlier.

3           But I assume he's indicating that she's got no

4    documents that assert a timely claim against LIGA.  We would

5    just ask that, for his other three claimants, that we get the

6    same response from them.

7           And then Ms. Roussel, she either answers and says:

8    We don't have a document that we rely on to say we have a claim

9    against LIGA.  Or they have to drop the objection that they're

10   being prejudiced by the Trustee entering into this settlement

11   with LIGA.  I mean that's a big part of one of their big

12   objections.  They're being prejudiced -- they can't be

13   prejudiced if they don't have a claim against LIGA.

14           MS. ROUSSEL:  And let me just indicate that I'm

15   reading the question and maybe this was part of it, but that's

16   not what he asked.  All proof of claim, notices of claim, or

17   other document prepared or filed on your behalf, representing a

18   claim for damages or other sums due arising out of or related

19   to asbestos exposure or other injuries against Reilly-Benton

20   and the insurer of Reilly-Benton and Receiver/Trustee or

21   Liquidating Agent of Reilly-Benton, or any of the insurer's

22   companies including without limitation, Reliance, United

23   Pacific Insurance Company or any affiliates thereof, or any

24   insurance guaranty or similar association, including without

25   limitation, LIGA.

77

1          That is so overly broad, it encompasses all kinds

2  of things.  Prepared or filed on your behalf against Reilly-

3  Benton; Reilly-Benton's insurers, blah-blah-blah-blah.  And so

4  that -- we objected to the question as it was propounded, and

5  which I think is a valid objection.

6          THE COURT:  Okay.  I would agree.

7          You know, Mr. Messina, what you're seeking is

8  relevance, so it is discoverable.  But this particular request

9  needs to be narrowed down or tailored.

10          MR. MESSINA:  Okay.

11          THE COURT:  If you just want to say:  Look, what's

12  your basis for your claim against LIGA?  Like what have you got

13  against LIGA, and is that something that Ms. Roussel and

14  Mr. Landry, you can answer?

15          MR. ROBBINS:  Your Honor, this is Will Robbins.

16          I mean the reason it's phrased like that is because,

17  you know, you can -- it's not just a proof of claim against

18  LIGA.  There are multiple ways to have a timely (inaudible)

19  claim against LIGA.  So we can pare it down, but I think we've

20  talked about it some.  I think we understand what they're

21  looking for.  We'll pare it down and --

22          THE COURT:  Yes.

23          MR. ROBBINS:  -- and get what we're looking for.  But

24  the reason it's drafted that way is because that's the law.

25          MR. PLEVIN:  Yes, I think we over-lorded it a little

78

1    bit, Your Honor.  But if Ms. Roussel and Mr. Landry

2    understand that what we're asking is:  If you believe that you

3    have a claim against LIGA, identify how it is you believe you

4    have a claim, and maybe we just make it a --

5              THE COURT:  Yes, that's fine.

6              MS. ROUSSEL:  Or we can do --

7              MR. PLEVIN:  -- or simply just look at it that way.

8              MS. ROUSSEL:  Well, let me just indicate that, you

9    know, we're here on a Motion to Compel.  We had specific

10   questions asked of us.  We've responded.  We objected to this

11   question, it is overly broad.  I mean you have the right to --

12             THE COURT:  Yes, and I agree with you and I'm telling

13   you to tailor it, because what I'm telling you is the

14   information they seek is relevant and it's discoverable.  So

15   figure out, you can network -- you can figure it out among

16   yourselves or I can draft it for you; but the question needs to

17   be answered.

18             However you get to LIGA, you know, connect the dots

19   and give them what you have.

20             MR. MESSINA:  Your Honor, we'll simplify the question

21   and make it more direct.

22             THE COURT:  Okay.  I appreciate that.

23             MR. LANDRY:  Your Honor?

24             THE COURT:  Yes?

25             MR. LANDRY:  This is Mickey Landry and thank you for

79

1  your time.

2          Is there a way for me to note that would be compliant

3  with the Court that like the Court said, I'm giving you notice

4  that there's a notice problem for somebody that I may represent

5  who didn't file an objection because perhaps they didn't get

6  notice or there's an argument about the notice that it's -- I'm

7  just concerned as we go forward.  I want to at least reserve

8  that because if later on the notice is deemed improper, there

9  may be other, you know, other folks that were -- that would

10  have wanted to make -- be involved that didn't get adequate

11  notice, potentially.

12          THE COURT:  All right.

13          MR. LANDRY:  So I just want to be able to note that

14  in my responses without -- that that really affects everything

15  I'm doing, but I just thought that that would be the proper

16  approach.  But I'm -- if I just note that, is that sufficient

17  for Your Honor?  Is that -- without causing an objection, that

18  the Court doesn't want me to do that?

19          THE COURT:  No.

20          Okay.  Mr. Messina, what -- have you thought about

21  this?

22          MR. MESSINA:  Yes, Your Honor.

23          THE COURT:  I mean we have talked about notice and I

24  don't know if the Trustee has made any progress with providing

25  notice, but I did, you know, flag for the Trustee that this is

80

1  out there.

2          MR. MESSINA:  Your Honor, we did look at that.  I

3  think the issue you raised is that the order that Judge Brown

4  entered, he named specific parties that needed to be served by

5  name.  When we noticed out -- whatever the next pleading was

6  that we noticed -- but the order didn't attach to that list.

7          When we put together that list -- when we noticed the

8  very next thing out, that list was created and we can show that

9  what Judge Brown ordered the people to serve are on that list.

10  As they were, if you look at both settlements, and both

11  settlements have the named people that correspond with what

12  Judge Brown ordered.

13          Now, certainly it would have been easier if Judge

14  Brown had had that same list that was at the time that he

15  entered that order.  But it's more of a technical notice issue

16  where we have to show you that what Judge Brown ordered is the

17  people that we sent notice to.  So it's not a real notice

18  problem, it's just a -- it's a fact that we've got to show to

19  you that the people we sent it to complies with Judge Brown's

20  order is kind of the way I view it.

21          And we could certainly do that if -- well, certainly

22  we're going to do that in connection with the hearing, but if

23  you'd like us to address that issue sooner, we can certainly do

24  that.

25          THE COURT:  Well, I would speak with Mr. Landry and

81

1   see if his clients are on that list.  I mean I -- or whoever

2   you're talking about.  I'm afraid I'm not in a position to talk

3   about it today.  If you would like to have a status conference

4   to talk about it, that's fine.  If you, you know, it's the

5   Trustee; if you want to roll the dice and get to the very end,

6   and then you know, take on you know, notice objections then,

7   that's your business too.  It's your, you know --

8           MR. MESSINA:  And Your Honor, that's what's strange

9   about --

10          MR. LANDRY:  And Your Honor, I just wanted to raise

11  it.  I wasn't prepared to discuss this today as much as just to

12  have to --

13          MR. MESSINA:  That's what's strange about --

14  (inaudible; all speaking at the same time)

15          MR. LANDRY:  I wasn't prepared, Your Honor, for --

16          MR. MESSINA:  Your Honor, we never --

17          THE COURT:  Yes.

18          MR. MESSINA:  We're not asserting that his objection

19  was untimely or anything.  So he's talking about people that --

20          THE COURT:  I'm assuming, yes.  I'm assuming, right.

21  Well, I don't who we're talking about, but I just -- I would

22  forecast --

23          MR. MESSINA:  I understand, Your Honor.

24          THE COURT:  But you know, you may get objections on

25  down the road that:  Hey, you know, I didn't get notice about

82

1   this so I shouldn't be bound kind of thing, sort of like a

2   proof of claim.

3           MR. MESSINA:  Sure.

4           THE COURT:  And a claims bar date issue.

5           MR. MESSINA:  Sure.

6           THE COURT:  And we can cross that bridge when we get

7   there.

8           But I would (inaudible) to the Trustee, it's your

9   motion, okay?

10          MR. MESSINA:  Sure.

11          MR. LANDRY:  Thank you Your Honor.

12          THE COURT:  All right.

13          MR. LANDRY:  I'll just note it on my responses and I

14  appreciate it, and I wasn't prepared to talk.  I just wanted to

15  raise that because the Court has -- for all the reasons that

16  the -- it's more than just what Mr. Messina says, but I

17  understand what his view is.  Mine is a little different but I

18  don't want to take any more of your time.

19          THE COURT:  All right.

20          MR. LANDRY:  On a Friday afternoon, thank you so

21  much.

22          THE COURT:  Yes.

23          MS. LABORDE:  And Your Honor, if I may?

24          THE COURT:  Yes.

25          MS. LABORDE:  Your Honor, if I may, this is Stephanie

83

1    Laborde.

2           Earlier when roll was taken my phone was on mute and

3    so the Court didn't hear me.  I'm also present on behalf of

4    LIGA.

5           THE COURT:  Oh okay, perfect.  Let me write that

6    down.

7           MS. LABORDE:  Thank you.

8           THE COURT:  Okay.  And Mr. Plevin, do we have any

9    issues with privilege logs yet?  I don't understand anybody has

10   made a privilege argument.  Yes, okay?

11          MR. PLEVIN:  We don't have any privilege logs.  I

12   believe that there were some privilege objections made and of

13   course they hold -- that the document was withheld on the basis

14   of privilege, it has to be logged.

15          THE COURT:  Right.

16          MR. PLEVIN:  So I haven't received any logs yet.

17          THE COURT:  Okay.

18          MS. ROUSSEL:  We just stated at the very beginning

19   because of the broadness of the questions that there might be

20   some privileges.  But when we responded to each of the areas,

21   we gave them what we had.

22          THE COURT:  Okay.  So you haven't actually lodged --

23   you haven't withheld anything based on privilege yet, is what

24   you're telling me?

25          MS. ROUSSEL:  Yes, Your Honor.  No.

84

1        THE COURT:  Okay.

2        MR. LANDRY:  Your Honor?

3        THE COURT:  All right.

4        MR. LANDRY:  Likewise, with the Landry objections

5   when he wanted me to review all of the files in my office from

6   the last 25 years, I didn't have approval from my clients to

7   give them anything out of their file or anything.  So I raised

8   that out of an abundance of caution.

9        But given what the Court said today of what it's

10  limited to, that's not going to be an issue.

11       THE COURT:  Okay, all right.

12       Okay.  So Mr. Plevin, if and when anyone holds

13  something back based on privilege, we'll address that then.

14       MR. PLEVIN:  Very well, Your Honor.

15       THE COURT:  All right.

16       MR. PLEVIN:  I just want to join with the others in

17  thanking you for your patience this afternoon.

18       THE COURT:  No, it's not a problem, not a problem.

19       What I will do though, like I said Mr. Plevin, I'm

20  going to hold -- like I said, the Motion to Compel is granted

21  in part, denied in part, but continued in part as well because

22  there are a few things that we're going to discuss later on

23  after the supplemental productions come in.

24       Unfortunately, I am in the car and I don't have

25  access to my calendar now, but what I'll have my law clerk do

85

1   when I get to my computer is send out to the parties some

2   proposed dates into the future that we'll reconvene and talk

3   about anything that's lingering, regarding discovery issues,

4   okay?

5            MS. LABORDE:  And Judge too, this may actually get it

6   on your calendar, that we will be filing against Reilly-Benton

7   a Motion to Compel so that we can get information to supplement

8   these responses with.

9            THE COURT:  Okay.  All right, well I'll watch the

10  docket and we'll cross that bridge when we get there.

11           MS. LABORDE:  Thank you Your Honor.

12           THE COURT:  All right.  I thank you everybody and

13  thank you so much for your time on a Friday afternoon.

14           MS. ROUSSEL:  Thank you Your Honor.

15           MR. LANDRY:  Thank you Your Honor.

16           THE COURT:  All right.  We're adjourned.

17                        *    *    *    *    *

18                    (Hearing is Concluded)

19

20

21

22

23

24

25

86

# C E R T I F I C A T E

      I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

**S/Sherryl P. Robinson**                 **8/15/2022**
**Sherryl P. Robinson**                    **Date**

**FEDERAL ID NUMBER 437902950**

SHERRYL P. ROBINSON
3704 Chadwood Drive
Harvey, LA 70058
(504) 348-3704

SSN:  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

August 15, 2022

TRANSCRIPT FOR:     ROUSSEL & CLEMENT
Attn:  Benjamin P. Dinehart, ESQ.
1550 W. Causeway Approach
Mandeville, Louisiana 70471
(985) 778-2733
e-mail:  rcfirm@rousselandclement.com

USBC-EDLA
Case No. 17-12870
**In Re:  Reilly-Benton Company, Inc.**
Judge Grabill

Proceedings of 7/15/22

85 @ .90/copy. . . . . . . . . . . . . . . . $76.50

                              Balance Due $76.50

THANK YOU

SR/REILLY-BENTON 7-15-22 (COPY)