UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO: 17-12870 |
| REILLY-BENTON COMPANY, INC., | § § | CHAPTER 7 |
| DEBTOR. | § § § | SECTION A |

**ORDER**

Before the Court is (i) the *Motion To Confirm Application of the Automatic Stay* (the "Motion To Confirm Stay"), [ECF Doc. 170], filed by Liberty Mutual Insurance Company, Employers Insurance Company of Wausau, and Century Indemnity Company and Pacific Employers Insurance Company (collectively, the "Insurers"); (ii) oppositions to the Motion To Confirm Stay filed by certain creditors represented by the law firm of Landry & Swarr[1] and certain creditors represented by the law firm of Roussel & Clement,[2] [ECF Docs. 241 & 250]; and (iii) pleadings filed by David V. Adler, the chapter 7 Trustee, in support of the Motion To Confirm Stay, [ECF Docs. 258 & 286].[3]

---

[1]  The law firm of Landry & Swarr represents claimants who have filed claims against Reilly-Benton, including Paul Sanderson Jr., Kelly P. Sanderson, Dale Michael Sanderson, and Mark Sanderson individually and on behalf of Mary Sanderson.

[2]  The law firm of Roussel & Clement represents claimants who have filed claims against Reilly-Benton Company, Inc., including, among others, Frank James Brazan, Pennie Ann Brazan Kliebert, Shane Anthony Brazan, Jason Joseph Brazan, and Carmel Theresa Brazan Bourg, Mary Patsy Soileau Courville, Mavis Todd Courville, Michael Wade Courville, and Joseph Eric Courville, Joseph Alfred Hedges, Jr. and Renee Hedges Blum, and Bonnie Ann Tregre Loupe, Lee Ann Tregre Cortez, and Sherry Tregre Cortez.

[3]  On September 20, 2022, the Court issued an Order denying as procedurally improper a *Motion for Summary Judgment that the Proceeds of the Insurance Policies Issued by Liberty Mutual Insurance Company and Employer's Mutual Fire Insurance Company to Reilly-Benton Company, Inc. Covering Reilly-Benton Company, Inc.'s Contracting Activities are not Property of the Estate and Motion for Summary Judgment that the Automatic Stay Does not Apply to Liberty Mutual Insurance Company and Employer's Mutual Fire Insurance Company* (the "MSJ"). [ECF Doc. 301]. The Court stated in that Order that "to the extent that the Motion serves as a response to the Motion To Confirm Application of the Automatic Stay, [ECF Doc. 170], the Court will consider it as such." *See id.*

Considering the pleadings and applicable law, the Court **GRANTS** the Motion To Confirm Stay.

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334(b). The matter presently before the Court constitutes a core proceeding that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2). The venue of this case is proper under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

Reilly-Benton Company, Inc. operated prepetition as a supplier of insulation products and materials to customers in the maritime and aerospace industries. [ECF Doc. 48]. But many of Reilly-Benton's products contained asbestos and, over the years, the company was subjected to more than 20,000 personal injury and wrongful death actions by employees and their families associated with contact to asbestos. *Id.* On October 25, 2017, Reilly-Benton filed for bankruptcy relief under chapter 7 of the Bankruptcy Code. [ECF Doc. 1].

Reilly-Benton no longer operates as a going concern. It still owns various insurance policies, however, that may provide coverage for its tort liability; the proceeds of those policies are likely the sole source of recovery to claimants alleging exposure to and damage from asbestos. [ECF Doc. 1]. According to the Insurers, since Reilly-Benton filed bankruptcy, a "deluge of direct-action asbestos lawsuits" have been filed against the Insurers seeking damages and compensation under those policies. Motion To Confirm Stay, at 3. Through the Motion To Confirm Stay, the Insurers ask this Court to determine whether the automatic stay applies to claims against proceeds of the Debtor's insurance policies.

### A. Insurance Proceeds Are Property of the Estate When Tort Claims Threaten the Debtor's Estate Over and Above Policy Limits.

Pursuant to 11 U.S.C. § 541(a)(1), the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Generally, insurance policies are property of a debtor's estate, but the question of whether proceeds of insurance policies constitute property of the estate enjoys a more "complicated history." *See Martinez v. OGA Charters, L.L.C. (In re OGA Charters, L.L.C.)*, 901 F.3d 599, 602 (5th Cir. 2018). Although that history may be complicated, the current state of the law is not. Insurance proceeds are property of the estate if the claims brought against a policy exceed the proceeds available under the policy. *See id.* at 604 ("[W]here a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate.").

> The public policy behind those holdings is straightforward:
>
> When there are multiple claimants to the policy proceeds, the court should be able to oversee the allocation of the proceeds among claimants. Although policy proceeds are not available to all creditors, and in that sense are different from other property of the estate, they may be available to a class of creditors whose claims are covered by insurance, and may be insufficient to satisfy that class fully. In such a case, oversight by the court is necessary to assure an equitable distribution of the available assets.

*In re OGA Charters, L.L.C.*, 901 F.3d at 604 (citation omitted); *see also In re Edgeworth*, 993 F.2d 51, 56 n.21 (5th Cir. 1993) ("In the mass tort context, the decisions by several courts to include the proceeds as property of the estate appear to be motivated by a concern that the court would not otherwise be able to prevent a free-for-all against the insurer outside the bankruptcy proceeding."). Indeed, "[a] holding to the contrary would 'prevent [the] bankruptcy court from marshalling the insurance proceeds, and . . . arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate.'" *In re OGA Charters, L.L.C.*, 901 F.3d at 604–05 (quoting *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 560 (1st Cir. 1986)).

3

### B. The Automatic Stay Protects "Arguable" Property of the Estate.

"The automatic stay is designed to protect creditors as well as debtors." *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005). "Without the stay, creditors might scramble to obtain as much property of the debtor's limited estate as possible." *Id*. Thus, the automatic stay "prevents such a scramble by providing 'breathing room' for a debtor and the bankruptcy court to institute an organized repayment plan," and also "allows for the equitable disbursement of estate property among creditors." *Id*. Against that backdrop, the Fifth Circuit has held that the automatic stay applies to protect against unilateral seizure of "arguable" property, that is, property which is not clearly part of a debtor's bankruptcy estate, "but neither . . . clearly *not* part of [the] estate." *Id*. at 303.

At this time, the Court cannot determine whether tort claims threaten the Debtor's estate over and above the policy limits of the Debtor's insurance policies, thereby classifying the proceeds as property of the estate. The evidentiary record before the Court is deficient. First, the insurance policies that have been presented to the Court are largely illegible and some have not been provided at all. [ECF Doc. 163]; Hr'g Tr. 15:3–15:34 (Sept. 14, 2022). Thus, the Court cannot determine the policy limits available to provide coverage for the Debtor's tort liability. Second, even if the Court were able to review all of the Debtor's complete, legible policies and find that the language of the policies to be unambiguous regarding policy limits, the Court is still unable at this time to determine whether tort claims exceed the policy limits. The Debtor's Schedule E/F lists 18,644 "disputed" asbestos tort claimants as unsecured creditors of the estate. [ECF Doc. 1]. But a dispute exists among the parties as to whether some number of those claimants possess "contracting" claims rather than "products" claims and whether policy limits are affected

4

by that distinction.[4] In sum, no competent evidence has been provided that would allow the Court to determine whether the tort claims exceed the policy limits here.

As observed by the Fifth Circuit, "the automatic stay has broad application." *In re Chesnut*, 422 F.3d at 303. "This breadth suggests Congressional intent that, in the face of uncertainty or ambiguity, courts should presume protection of arguable property." *Id*. Because the issue of whether tort claims here dwarf available insurance proceeds is subject to a non-frivolous dispute and the evidentiary record is not yet ripe, the Court finds that the automatic stay protects proceeds of the Debtor's insurance policies as "arguable" property of the estate. To find otherwise would allow those who have filed direct-action lawsuits against the Debtor's insurers in state courts across Louisiana to seriously harm the Debtor's estate, as well as hinder the ability of other creditors to obtain equitable distributions of the estate's resources. *See id*. at 306.

## CONCLUSION

Thus,

**IT IS ORDERED** that the Motion To Confirm Stay is **GRANTED**.

**IT IS FURTHER ORDERED** that the automatic stay imposed by 11 U.S.C. § 362(a) protects proceeds of the Debtor's insurance policies covering its tort liability.

---

[4] Products claims are those where claimants are alleged to have been exposed to asbestos-containing products that were manufactured, sold, or distributed by Reilly-Benton. Contracting claims are those where claimants are alleged to have been exposed to asbestos through their contracting activities, such as installing or removing products with asbestos. [ECF Doc. 259].

**IT IS FURTHER ORDERED** that the Insurers shall serve this Order via first-class U.S. Mail on all parties who will not receive electronic notice via this Court's CM/ECF system pursuant to the Federal Rules of Bankruptcy Procedure, this Court's Local Rules, and any Orders of this Court limiting notice in this case and file a certificate of service within three (3) days.

New Orleans, Louisiana, this 28th day of November 2022.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPCY JUDGE