## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | : | **CASE NO. 17-12870** |
| | : | |
| **REILLY-BENTON COMPANY, INC.** | : | **SECTION "B"** |
| | : | |
| **DEBTOR** | : | **CHAPTER 7** |

---

### OMNIBUS REPLY TO OPPOSITIONS TO JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, come David V. Adler, solely in his capacity as the Chapter 7 Trustee (the "Trustee") and the Louisiana Insurance Guaranty Association ("LIGA", and together with the Trustee, "Movants") who file this omnibus reply (the "Reply") to the oppositions filed by the Roussel & Clement Objectors (the "Roussel Opposition")[1] and the Landry & Swarr Objectors (the "Landry Opposition"[2] and together with the Roussel Opposition, the "Oppositions") to Movants' motion for partial summary judgment (the "MSJ").[3]

### PRELIMINARY STATEMENT

As summary judgments go, the instant matter is simple from a factual standpoint. The Roussel & Clement Objectors and the Landry & Swarr Objectors (together, the "Objectors") failed to file a timely claim against LIGA, and they have presented no facts in dispute. Instead, five (5) years into this case, the Objectors bafflingly argue that they need additional information before they can determine whether they themselves filed a timely claim. As discussed below, this is insufficient to delay or overcome the requested summary judgment.

---

[1] Roussel Opposition, *In re: Reilly-Benton Company, Inc.*, No. 17-12870 (Bankr. E.D. La. Nov. 30, 2022), ECF No. 369.

[2] Landry Opposition, *In re: Reilly-Benton Company, Inc.*, No. 17-12870 (Bankr. E.D. La. Nov. 30, 2022), ECF No. 374.

[3] MSJ, *In re: Reilly-Benton Company, Inc.*, No. 17-12870 (Bankr. E.D. La. Nov. 16, 2022), ECF No. 331.

EXHIBIT A

Despite the lengthy opposition from the Objectors, the legal arguments are similarly straightforward. Since the Objectors failed to file timely claims against LIGA, they have no right against LIGA or the LIGA settlement funds as they relate to the Debtor. Without claim to the LIGA settlement funds, the Objectors have no right, or standing, to object to what LIGA and the Trustee propose to do with those funds.

In opposition, Objectors present merely a few ruminations concerning why they should have standing to object. Instead, the main focus of Objectors is to re-tread arguments about the LIGA bar date and the constitutionality of bar dates themselves -- Arguments soundly rejected by the courts.[4]

The Court should grant summary judgment in this matter, and save the Estate and other creditors from the expense and inefficiency of additional discovery and litigation from persons who have absolutely no interest in the settlement funds at issue.

Movants will address various arguments and issues raised in the Oppositions specifically below.

## REPLY

### I.    LIGA's Affidavit

Objectors assert that LIGA, through Mr. Twiner,[5] did not testify as to personal knowledge. Objectors posit that because Mr. Twiner has only been claims examiner since 2015, he cannot testify as to any events or happenings prior to that time.

---

[4] *See* Order & Reasons, *Rivet v. Huntington Ingalls Inc., et al.*, No. 22-2584 (E.D. La. Oct. 28, 2022), ECF No. 59 (granting LIGA's motion for summary judgment that plaintiff, who was exposed to asbestos before the bar date and diagnosed after, didn't hold a covered claim due to his failure to file a claim by the bar date and rejecting arguments that La. Rev. Stat. § 22:2058(A)(1)(c)(i) unconstitutionally divested his vested rights); Order & Reasons, *Matherne, et al. v. Huntington Ingalls Inc., et al.*, No. 22-2656 (E.D. La. Oct. 28, 2022), ECF No. 57 (same, except diagnosis and wrongful death claims arose after the bar date).

[5] MSJ, In re: Reilly-Benton Company, Inc., No. 17-12870 (Bankr. E.D. La. Nov. 16, 2022), ECF No. 331-4.

First, Mr. Twiner is a corporate representative - he does not need personal knowledge (discussed below). But even if he is not a corporate representative, he actually testified from his personal knowledge. Mr. Twiner clearly states that he has personal knowledge of LIGA's files, and that those files do not contain any claims from the objectors. He doesn't need personal knowledge of what LIGA received or knew in 2003. He needs knowledge of LIGA's files, which he has. Under the Objectors' position, who could testify as to LIGA's files? Only someone who was there from 1970 to present?

Mr. Twiner is a corporate representative of LIGA. He is designated as LIGA's corporate representative in LIGA's response to the Objectors' deposition and records. Indeed, under the seminal Fifth Circuit case, cited in the Objectors' own brief, *Brazos River Auth. v. GE Ionics, Inc.*, the Court admonished a party for failing to prepare its corporate witness <u>so that he could testify as to matters outside of his personal knowledge</u>:

> *We agree with BRA that Cajun violated rule 30(b)(6) by failing to prepare Grisby with respect to issues that although not within his personal knowledge, were within the corporate knowledge of the organization,. . . . Also, because, under the rule 30(b)(6) framework, Grisby acts as the agent for the corporation, he should be able to present Cajun's subjective beliefs . . . , as long as those beliefs are based on the collective knowledge of Cajun personnel. Cajun argues that Grisby had no personal knowledge of this matter under rule 602 and that rule 701 prohibits lay witnesses from testifying as to issues that are not within their personal perception. But Grisby does not testify as to his personal knowledge or perceptions; as explained in Resolution Trust, he testifies "vicariously," for the corporation, as to its knowledge and perceptions.*[6]

The objectors cite *Union Pump*, but it simply has no application.[7] The case reinforces the general rule that a corporate representative testifies not as to personal knowledge, but as to the

---

[6] *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433-34 (5th Cir. 2006) (alterations to original) (emphasis added).

[7] *Union Pump Co. v. Centrifugal Tech., Inc.*, 404 Fed. Appx. 899 (5th Cir. Dec. 16, 2010).

knowledge of the corporation itself.  However, *Union Pump* provides a narrow limitation on this principle by holding that a corporate representative cannot testify as to matters outside of his personal knowledge if it doesn't fall into an exception,[8] or as the Fifth Circuit in *Deutsche* characterized it: "<u>*rank hearsay.*</u>"[9]  In that case, the corporate representative testified based on rumors heard from various employees.  Unlike the *Union Pump* affiant, Mr. Twiner engages in no such rumor mongering.  Mr. Twiner simply attested that he is familiar with LIGA's files, and that the files do not contain any claims of the objectors.  Hearsay is not implicated at all by Mr. Twiner's personal inspection of LIGA's files, and certainly no "rank hearsay."

## II.     Objectors Have Not Refuted the Fact That They Failed to File Timely Claims, and They Are Not Entitled to Seek Additional Information

The only material fact at issue is whether the Objectors filed timely claims against LIGA.  LIGA has already shown that they have not, and Objectors have presented no material fact to dispute that fact.  Instead, they contend that they need more information through discovery.  They first contend that LIGA (through Mr. Twiner) could provide additional information in the 30(b)(6) deposition that could show that they filed timely claims.  LIGA disagrees.  Mr. Twiner has already stated that he has examined the records of LIGA and that the Objectors' claims are not included in the more than 11,000 timely claims.  What more could LIGA say at a deposition?  Further, the ¾ of a terabyte of information from the file of the former asbestos defense counsel of Reilly Benton is irrelevant.  The record is clear that Objectors are not among the 11,000 timely filed claims against LIGA, and further, that they filed their claims (state court lawsuits) at least 10 years late.

---

[8] *Union Pump Co. v. Centrifugal Tech., Inc.*, 404 Fed. Appx. 899, 907-08 (5th Cir. 2010) ("However, a corporate representative may not testify to matters outside his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.'" (quoting *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 435 (5th Cir. 2006)).

[9] *Deutsche Shell Tanker Gesellschaft mbH v. Placid Refining Co.*, 993 F.2d 466, 473 n.29 (5th Cir. 1993) (corporate representative is not permitted to repeat "rank hearsay").

Summary judgment is appropriate in this matter regardless of whether the Objectors have conducted LIGA's 30(b)(6) deposition of Mr. Twiner, or have received any additional documents.

As a side note, the Objectors contend that undersigned counsel has thwarted their attempts to seek information about their own claims for months. For starters, this is a nonissue because LIGA has no additional information about their timely claims. Further, it ignores the fact that LIGA has already produced numerous documents to the Objectors. Further, Objectors have not once expressly asked for information about the existence or timing of their own claims.[10] Nor have they even expressly asked about other timely claims against LIGA. Of course, Objectors will argue that they have requests about LIGA agreements and general asbestos related claims. However, it is disingenuous at this point for them to assert that they have been seeking information about their own claims This is especially true since LIGA twice requested information through discovery from the Objectors on this issue. Applicable law does not permit a nonmoving party who has failed to seek necessary information regarding a material fact to delay summary judgment to allow for discovery.[11]

---

[10] Opposition to *Ex Parte* Motion (and Incorporated Memorandum) to Continue Hearing on Joint Motion for Summary Judgment at Exhibit "A", In re: Reilly-Benton Company, Inc., No. 17-12870 (Bankr. E.D. La. Nov. 22, 2022), ECF No. 345-1. The Objectors stated in their response that "[d]iscovery is outstanding" on the issue of whether Reilly-Benton gave LIGA notice of the R&C Claimant's claims prior to December 31, 2003. Roussel Opposition at 9, *In re: Reilly-Benton Company, Inc*., No. 17-12870 (Bankr. E.D. La. Nov. 30, 2022), ECF No. 369. However, the Objectors requested no information regarding any such notice or regarding the timeliness of their own claims. For example, in their response, the Objectors explain that "The topics on which LIGA has agreed to offer testimony include agreements regarding Reilly-Benton's asbestos claims[,]" specifically referring to Deposition Topics 7 and 10. *Id*. at, 4, note 17. However, Deposition Topic Numbers 7 and 10 request information regarding agreements between 1) LIGA and Reilly-Benton Company, Inc., and 2) LIGA and Resolute Management, Inc., regarding asbestos claims involving Reilly-Benton Company, Inc. These Deposition Topics request no information regarding the timeliness of any asbestos claims or any notice to LIGA of the Objectors' claims. *Ex Parte* Motion (and Incorporated Memorandum) to Continue Hearing on Joint Motion for Summary Judgment, *In re: Reilly-Benton Company, Inc*., No. 17-12870 (Bankr. E.D. La. Nov. 21, 2022), ECF No. 336-3.

[11] *Paul Kadair, Inc. v. Sony Corp. of America*, 88 F.R.D 280 (M.D. La. 1980) (court refused to grant a continuance for a party to conduct discovery which it could then use to respond to a summary judgment because the party had previously failed to seek the necessary discovery).

Finally, as discussed in the MSJ, and also in the *Opposition to the Ex Parte Motion to Continue Hearing on Joint Motion for Summary Judgment*, any information showing that the Objectors filed timely claims against LIGA would be based on documents open and known to the Objectors themselves.[12]   The making of a claim requires that a claimant make an affirmative act.[13] LIGA has no record of such claims, and apparently, neither do the Objectors.   If they made a timely claim against LIGA, the Objectors have failed to produce evidence of it or to explain why they have no record of it.

Instead, Objectors fall back to the Helm's Deep refuge of the unprepared – speculation. Objectors' counsel makes a muddy assertion that perhaps Reilly Benton made a claim on behalf of the Objectors.   Even hypothetically, the assertion makes zero sense.   There is no evidence that the Objectors ever provided notice to Reilly Benton prior to the 2003 deadline.   Their lawsuits were filed at least ten years afterwards.   How could Reilly Benton make a claim on behalf of any named Objectors without first having received notice of such claim from the Objector?  How else would Reilly Benton know that a named Objector had asbestos related injuries?  Further, not one Objector has provided any evidence or support for the idea that he or she may have provided notice or filed a claim against anyone.   As such, the objectors are not entitled to delay summary judgment under FED. R. CIV. P. 56(d), as they have not complied with their obligations to present an affidavit with the "specified reasons" as to why they do not have required material information to defeat it.

---

[12] Opposition to *Ex Parte* Motion (and Incorporated Memorandum) to Continue Hearing on Joint Motion for Summary Judgment, In re: Reilly-Benton Company, Inc., No. 17-12870 (Bankr. E.D. La. Nov. 22, 2022), ECF No. 345. The Objectors present no affidavit with the "specified reasons" as to why they do not have such information, as required under FED. R. CIV. P. 56(d). Instead, the Objectors present an affidavit from counsel pointing to a pending deposition. As set forth above, the deposition is unnecessary.  Further, the affidavit does not state why they do not have information which should be in their own control. Declaration of Benjamin P. Dinehart in Support of the Roussel & Clement Creditors' Motion to Continue Hearing on Joint Motion for Summary Judgment, In re: Reilly-Benton Company, Inc., No. 17-12870 (Bankr. E.D. La. Nov. 21, 2022), ECF No. 336-1.

[13] This Court is certainly aware of the importance of filing claims in the bankruptcy process.  The same policies apply here.

Rather than come forward with evidence of a timely claim, the Objectors fill the factual

void by "suspect[ing]" that Reilly Benton Company provided Reliance or the liquidator notice of

their claims.[14] Not only is this incompetent summary judgment evidence,[15] but Rule 56(d) "cannot

be relied upon to defeat a summary judgment motion 'where the result of a continuance to obtain

further information *would be wholly speculative*[.]'"[16] As the Fifth Circuit aptly put: "Guesswork

and speculation simply cannot serve as a basis for sending a case to a jury."[17]

### III.    The Attempted Warping of a LIGA Covered Claim

The Objectors assert their claims need only *exist* (not be filed) to be enforceable under the

LIGA Act.   Under the Objectors' arguments, claims against LIGA would be perpetually

enforceable even if they were never filed.   Utter nonsense reached only by misconstruing and

misinterpreting the statues.[18] The pertinent provisions of LA. REV. STAT. 22:2058 state that LIGA

shall:

> (1)(a) Be obliged to pay **covered claims** pursuant to an order as provided in
> R.S. 22:2008(C), existing prior to the determination of the insurer's insolvency.
> [Emphasis added]
>
> * * *
>
> (c)(i) … Notwithstanding any other provision of this Part, a "covered claim"
> shall not include a claim filed with the association after the earlier of five years

---

[14] Roussel Opposition at 5, *In re: Reilly-Benton Company, Inc.*, No. 17-12870 (Bankr. E.D. La. Nov. 30, 2022), ECF No. 369 ("Creditors suspect that Reilly-Benton may have sent notice of these asbestos claims to either Reliance or the liquidator… Creditors expect that the discovery sought by the Roussel & Clement Creditors will reveal that Reliance and/or the liquidator and/or LIGA was aware of these asbestos claims prior to this date.").

[15] *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) ("mere conclusory allegations are not competent summary judgment evidence" (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992))).

[16] *Robbins v. Amoco Prod. Co.*, 952 F.2d 901, 907 (5th Cir. 1992) (citing *Paul Kadair, Inc. v. Sony Corp. of America*, 694 F.2d 1017, 1029 (5th Cir. 1983) (quoting *Contemporary Mission v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981))).

[17] *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (citing *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 814 (5th Cir. 1991); *Laurence v. Chevron, U.S.A., Inc.*, 885 F.2d 280, 285 (5th Cir. 1989)).

[18] *Mazoue v. Traina* (*In re Mazoue*), 240 B.R. 878, 882 (E.D. La. 1999) ("It is well-established that 'a statute is to be considered in all its parts when construing any one of them.'" (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998))).

after the date of the order of liquidation of the insolvent insurer or the final date set by the domiciliary court for the filing of claims against the liquidator or receiver of an insolvent insurer.

A plain reading of the statute makes it clear that LIGA is not responsible for Objectors' claims. The provision cited by Objectors states that LIGA is obliged to pay covered claims that existed prior to the insolvency of the insurer. The statute further states that a claim that is filed with LIGA after the final date set by the liquidator is not a covered claim. Therefore, despite the fact that Objectors may have had existing claims against the insurer and/or Reilly-Benton that vested at the time of the exposures to asbestos, LIGA is not responsible for those claims, because they are not "covered claims" as defined by the statute due to the fact that the claims were filed with LIGA after the final date set by the liquidator.

The Objectors go on to argue that the long latency nature of exposure demands a different result. Yet, the Fourth Circuit granted a writ to consider this precise issue in *Brazan*.[19] There, the plaintiff alleged that he was exposed to asbestos from 1968 to 1974, which according to Objectors would have provided him with a vested right at the time of his exposure. The *Brazan* suit was filed against LIGA after the final date provided by the liquidator. The Louisiana Fourth Circuit Court of Appeal expressly held that the claim was not a covered claim for which LIGA had responsibility, because it was filed after the final date set forth by the liquidator. In doing so, the court applied the claim filing deadline statute, holding that the statute was clear and unambiguous and should be enforced as written.[20]

---

[19] MSJ at Exhibit "C", In re: Reilly-Benton Company, Inc., No. 17-12870 (Bankr. E.D. La. Nov. 16, 2022), ECF No. 331-3.

[20] *Id.*

In response, the Objectors try to nudge this Court towards *Defiore*, a writ denial with no reasoning. This ignores, however, a writ denial holds *zero* precedential value.[21] Moreover, *Defiore* was decided before *Brazan*. On the other hand, *Brazan* is a writ grant ruling from the same court rendered **after** the *Defiore* ruling which was a final judgment reversing the district court's denial of the Exception of Prescription. Clearly, the ruling of the Fourth Circuit on the merits of the issue is the ruling upon which this Court should rely.

Objectors' citation to *Hall v. Zen-Noh Grain Corp.*,[22] is likewise misplaced. *Hall* did not decide whether a claim against LIGA was barred as untimely filed, which is the issue in this Motion. Rather, *Hall* decided how the law pertaining to exhaustion of policies was to be applied to a timely claim. The Supreme Court's decision in *Prejean*[23] is directly on point and is the ruling that should be applied by this court.

Judge Carl Barbier of the U. S. District Court in and for the Eastern District of Louisiana recently granted Motions for Summary Judgment filed by LIGA in two cases after considering the same arguments raised by Objectors in this case.[24] In *Matherne*, Judge Barbier held:

> [E]ven though Plaintiffs' survival action against Lamorak vested at the time of Mrs. Matherne's exposure to asbestos, their claims against LIGA did not vest until Lamorak was declared insolvent, and upon Lamorak's insolvency, all provisions of the LIGA law became applicable to Plaintiffs' claims against it, including the claim bar date. Plaintiffs' wrongful death claims did not arise until Mrs. Matherne died on March 10, 2022. Therefore, these claims

---

[21] *Lake Air Capital II, LLC v. Perera*, 2015-0037 (La. App. 4 Cir 05/13/15), 172 So. 3d 84, 88 ("The law respecting the effect of a denial of a writ application, however, is well-settled; the denial of a writ has no precedential value." (citing *State v. Davis*, 09-0438, p. 19 (La. App. 4 Cir. 1/13/10), 30 So.3d 201, 211; *Arceneaux v. Amstar Corp.*, 06-1592, p. 20 (La. App. 4 Cir. 10/31/07), 969 So.2d 755, 771; *State v. Williams*, 00-1725, p. 4 n. 3 (La. 11/28/01), 800 So.2d 790, 795; *St. Tammany Manor, Inc. v. Spartan Building Corp.*, 509 So.2d 424, 428 (La. 1987))).

[22] *Hall v. Zen-Noh Grain Corp.*, 2001-324 (La. 4/27/01); 787 So. 2d 280.

[23] *Prejean v. Dixie Lloyds Ins. Co.*, 94-2979 (La. 9/15/95); 660 So.2d 836.

[24] *See* Order & Reasons, *Rivet v. Huntington Ingalls Inc., et al.*, No. 22-2584 (E.D. La. Oct. 28, 2022), ECF No. 59; Order & Reasons, *Matherne, et al. v. Huntington Ingalls Inc., et al.*, No. 22-2656 (E.D. La. Oct. 28, 2022), ECF No. 57.

arising after the claim bar date also cannot constitute covered claims.[25]

## IV.    LA. REV. STAT. § 22:2058(A)(1)(c) is Constitutional

The Louisiana Supreme Court has already rejected Plaintiff's argument that the LIGA Law is unconstitutional and has expressly held that the LIGA Law in effect at the time of the insolvency is the law that applies to a case.[26] The Louisiana Supreme Court has expressly ruled that a person's claim against LIGA vests at the time of the insolvency of the insurer, not the date that the accident occurred.[27] In *Prejean*, the plaintiff was injured in an automobile accident that occurred on September 4, 1989.[28] In 1990, the LIGA Law was amended and the insurer was declared insolvent on May 17, 1993.[29] The Supreme Court held that the law to be applied to the claim against LIGA was the law in effect on the date of the insolvency of the insurer, not the law in effect on the date of the accident.[30]

The Supreme Court cited the *Cole*[31] case relied upon by Objectors, acknowledging that a cause of action accrues when a party has the right to sue.[32] Applying the principles set forth in *Cole*, the Supreme Court held that the plaintiff acquired the right to sue **the insurer** as of the date of the accident, but the cause of action **against LIGA** did not exist until the insurer was declared

---

[25] Order & Reasons at 7-8, *Matherne, et al. v. Huntington Ingalls Inc., et al.*, No. 22-2656 (E.D. La. Oct. 28, 2022), ECF No. 57.

[26] *Prejean,* 660 So. 2d at 837-38.

[27] *Id*. at 837.

[28] *Id*.

[29] *Id*.

[30] *Id*.

[31] *Cole v. Celotex Corp.*, 599 So. 2d 1058 (La. 1992).

[32] *Prejean,* 660 So. 2d at 837.

insolvent.[33] Specifically, the Supreme Court stated:

> Applying [the principles set forth in *Cole*], Deshotel acquired the
> right to sue Liberty Lloyds, but not LIGA, on the date of the
> accident, September 4, 1989. Deshotel's cause of action against
> LIGA did not exist until Liberty Lloyds was declared insolvent on
> May 17, 1993.[34]

The Supreme Court went on to reaffirm several prior rulings stating, "LIGA's liabilities are

governed by the law in effect on the date of the insolvency of the insurer."[35]

Thus, the Supreme Court has expressly rejected the Objectors' vested rights argument.

While their argument may establish that their rights against the tortfeasor and the insurer were

vested at the time of the exposure to asbestos, the Supreme Court held that a plaintiff's cause of

action against LIGA does not arise until after the insurer is declared insolvent.[36]

The Louisiana Constitution does not guarantee any rights to Objectors to recover from

LIGA. Rather, LIGA was created by the Legislature and the Legislature was free to define the

covered claims for which LIGA is responsible. The Louisiana Fourth Circuit has held that the final

date provision of the LIGA Law is clear and unambiguous and should be applied as written.[37]

Other states have also upheld the enforcement of final claim dates.[38]

---

[33] *Id.*

[34] *Id.*

[35] *Id.* (citing *Cooper v. Huddy*, 581 So. 2d 723 (La. App. 1st Cir. 1991), *writ denied*, 585 So. 2d 552 (La. 1991); *Louisiana Insurance Guaranty Association v. Guglielmo*, 276 So. 2d 720 (La. App. 1st Cir. 1973), *writ denied*, 279 So. 2d 690 (1973).

[36] *Prejean,* 660 So. 2d at 837.

[37] MSJ at Exhibit "C", In re: Reilly-Benton Company, Inc., No. 17-12870 (Bankr. E.D. La. Nov. 16, 2022), ECF No. 331-3 (*Brazan v. Lamorak Ins. Co.,* 2018-C-609 (La. App. 4 Cir. 7/23/18)).

[38] *See, e.g., RB&F Coal, Inc. v. Mullins*, 842 F.3d 279 (4th Cir. 2016) (a state guaranty association's bar date for filing claims against a former employer's insurer was not void on the grounds that the bar date created a condition impossible); *Satellite Bowl, Inc. v. Mich. Prop. & Cas. Guar. Asso.*, 419 N.W.2d 460 (Mich. Ct. App. 1988) (the requirement to have claims filed by a certain date indicated a legislative intent to provide a cut-off date and have a reasonable limit to liability and finality to the proceedings); *Ohio Ins. Guar. Ass'n v. Berea Roll & Bowl, Inc.*, 482

LA. REV. STAT. § 22:2058(A)(1)(c) cannot be read out of the LIGA Act, attempts to paint it as unconstitutional notwithstanding (as was unsuccessfully attempted in front of Judge Barbier). Specifically, the Objectors contend this statute deprives them of a vested right, a right they obtained at the time of exposure.[39] Time and time again, Objectors conflate a right to payment against one party (tortfeasor, insurer) with a right to payment against another party (LIGA), and the differences in how each such right arises. At the time of exposure (or when their cause of action may have accrued), the Objectors did not have a claim against LIGA.[40] Rather, their cause of action against LIGA cannot *exist* until the insurer is insolvent.[41] Moreover, any vested right would be in the claim, *not the prescriptive period*.[42]

What's more, legislation is only capable of impairing a vested right (and thus subject to constitutional attack), if it comes *after* a right is vested.[43] As this legislation was in place *before* Reliance's insolvency, it is impossible for the Objectors to have a vested right against LIGA it could alter.[44] Essentially, the Objectors must bend not only the LIGA laws but also the laws of

---

N.E.2d 995 (Ct. Com. Pl. 1984) (late claim barred despite the insured's timely knowledge of the claim, with the court recognizing the right of the legislature to set a cut-off date).

[39] Roussel Opposition at 10, *In re: Reilly-Benton Company, Inc.*, No. 17-12870 (Bankr. E.D. La. Nov. 30, 2022), ECF No. 369

[40] *Prejean*, 660 So. 2d at 837 ("Deshotel acquired the right to sue Liberty Lloyds, *but not LIGA*, on the date of the accident, September 4, 1989.") (emphasis added).

[41] *Prejean*, 660 So. 2d at 837 ("Deshotel's cause of action against LIGA *did not exist* until Liberty Lloyds was declared insolvent, on May 17, 1993.") (emphasis added).

[42] *Domino v. Spartan Adventure Park LLC*, No. 3:20-CV-01365, 2021 U.S. Dist. LEXIS 68998, at *9 (W.D. La. Mar. 31, 2021) ("the time for filing, i.e., the prescriptive period, is not a vested right." (citing *Bougeois v. A.P. Green Indus., Inc.*, 783 So. 2d 1251, 1257-58 (La. 2001); *Soloco, Inc. v. Dupree*, 97-1256 (La. 01/21/98), 707 So. 2d 12, 14)).

[43] *Soloco*, 707 So. 2d at 16 ("However, where the injury has not yet occurred and the cause of action has not yet vested, the guarantee of due process does not forbid the creation of new causes of action or the abolition of old ones to attain permissible legislative objectives." (citing *Silver v. Silver*, 280 U.S. 117, 122 (1929)).

[44] *Soloco*, 707 So. 2d at 16 ("Our jurisprudence has recognized the validity of legislative regulation of causes of action, including replacement and even abolition, that one person may have against another for personal injuries." (citing

time to prevail.

## V.    The Objectors Will Not Be Divested of Rights

Objectors argue that the application of the claim filing deadline constitutes a "divestiture" of their claims.   These arguments are likewise without merit.   The Objectors' claims are not divested because they retain their claims against other available insurance proceeds, along with any other persons or entities who may be liable for their alleged exposures. But the law is clear and the jurisprudence is unbroken that they do not have a covered claim against LIGA.

LIGA is not obligated to pay all claims that could have been brought against an insolvent insurer, but rather is only authorized by law to pay "covered claims" as defined by the statute.[45] The Louisiana Fourth Circuit has recognized that the Legislature has limited recovery "to preserve the limited resources of the fund."[46] The LIGA Law is not intended to make a claimant whole, but rather is a safety net to provide some recovery and is designed to provide some relief to multiple claimants and insureds. Therefore, ruling that Objectors' claims against LIGA are barred is consistent with the intent of the LIGA Law that LIGA is only responsible for "covered claims."

## VI.    Party in Interest

The Objectors acknowledge their problems from the lack of a Chapter 7 counterpart to § 1109.   And they direct this Court to the First Circuit decision of *Leblanc* for the proposition the right to be heard applies in Chapter 7. In doing so however, the Roussel Objectors neglect to include the creditor in *Leblanc* had a pecuniary interest in the outcome of their suit against the trustee because it would dictate whether the trustee could be surcharged on account of their failure

---

*Ancor v. Belden Concrete Products, Inc.*, 256 So. 2d 122 (La. 1971); *Colorado v. Johnson Iron Works*, 83 So. 381 (La. 1919); *Heirs of Fruge v. Blood Services*, 506 F.2d 841 (5th Cir. 1975))).

[45] LA. REV. STAT. § 22:2058(A)(1)(a).

[46] *Hopkins v. Howard*, 05-0732 (La. App. 4 Cir. 4/5/06); 930 So.2d 999, 1006.

to revoke what the creditor viewed to be an undervalued settlement.[47] Simply stated, unlike the Objectors, the creditor stood to gain in the recovery it pursued.

Objectors' omissions continue with the Third Circuit case of *Amatex*, which they argue supports a broad interpretation of the term party in interest under the Bankruptcy Code.[48] The Third Circuit in *Amatex* was considering this term in the context of a chapter 11 case and, relying upon Collier, which stated "section 1109(b) must be construed broadly to permit parties *affected by a chapter 11 proceeding* to appear and be heard."[49] This is not applicable to a Chapter 7, as previously cited by Movants.

The Objectors' remaining jurisprudence does not fare much better, which evaluates the term party in interest in reorganizations (not liquidations).[50] The Objectors finally point to *Feur*, a decision that is nearly a century old and was construing party in interest under section 14b of the Bankruptcy Act (Comp. St. § 9598) as it relates to objecting to discharge.[51]

---

[47] *LeBlanc v. Salem* (*In re Mailman Steam Carpet Cleaning Corp.*), 196 F.3d 1, 4 (1st Cir. 1999) ("LeBlanc filed an adversary proceeding against Salem, alleging negligence and breach of fiduciary duty stemming from Salem's failure to seek revocation of the settlement.").

[48] Roussel Opposition at 20, *In re: Reilly-Benton Company, Inc.*, No. 17-12870 (Bankr. E.D. La. Nov. 30, 2022), ECF No. 369 ("Courts have generally concluded that the term should be interpreted broadly under the Code and may extend to those without a pecuniary interest.").

[49] *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985) (quoting 5 Collier on Bankruptcy para. 1109(b), at 1109-22.1 to 1109-23 (L. King 15th ed. 1984)).

[50] *In re Wolf Creek Valley Metro. Dist. No. IV*, 138 B.R. 610, 616-17 (D. Colo. 1992) ("The function and purpose of the plan of *reorganization* was to facilitate both the interests of creditors and other debtors to the District. Thus Ault was a party in interest entitled to object to the confirmation of the plan.") (emphasis added); *In re River Bend-Oxford Assocs.*, 114 B.R. 111, 113 (Bankr. D. Md. 1990) ("Party in interest is an expandable concept depending on the particular factual context in which it is applied. The purpose is to permit the involvement of those persons and interests which will be affected by the *reorganization* process." (citing *Amatex*, 755 F.2d at 1041-44) (emphasis added).

[51] *In re Feuer*, 4 F.2d 892, 893 (2d Cir. 1925) ("Therein the objecting creditor described itself as a creditor, and not as a 'party in interest,' as prescribed in section 14b of the Bankruptcy Act (Comp. St. § 9598), and official form No. 58. The argument is that a creditor whose debt is not dischargeable may not oppose the discharge, because he cannot have any interest in its denial.").

Movants ignore a fundamental element of statutory construction – the lack of an § 1109(b) counterpart in chapter 7 evidences that Congress did not bestow upon chapter 7 creditors a right to "appear and be heard on any issue".[52] The Supreme Court has rejected this broad interpretation the Objectors urge.[53] Even then, bearing the title of party in interest is not tantamount to standing.[54] As COLLIER recognizes, a party must have a pecuniary interest in the outcome of a settlement to object.[55]

The Objectors are unable to point to any jurisprudence in a Chapter 7 context which would show that they have standing to be heard in this matter. The Chapter 7 / Chapter 11 distinction is important in bankruptcy. Chapter 11 procedures are designed for collaborative solutions to a Debtor in Possession's reorganization issues. Chapter 7 is designed to allow the Chapter 7 Trustee to exercise his business judgment in the liquidation and distribution of assets.

Movants again assert that the Objectors have no pecuniary or other interest in the LIGA settlement funds, and have presented no caselaw or even reasons as to why they should be allowed to interfere with the LIGA Settlement.

---

[52] 11 U.S.C. § 1109(b); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) ("It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another" (quoting *Chi. v. EDF*, 511 U.S. 328, 338 (1994)); Christian Pereyda, *Why Derivative Standing Might Be Inappropriate in Chapter 7 Cases*, AM. BANKR. J., Nov. 2020, at 23.

[53] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 8 (2000) (noting that § 1109 "which provides that a 'party in interest' 'may raise and may appear and be heard on any issue in a case under [Chapter 11],' is by its terms inapplicable here, since petitioner's attempt to use § 506(c) came after the bankruptcy proceeding was converted from Chapter 11 to Chapter 7. In any event, we do not read § 1109(b)'s general provision of a right to be heard as broadly allowing a creditor to pursue substantive remedies that other Code provisions make available only to other specific parties.").

[54] *Seraphin v. Morris Publ'g Grp. LLC (In re Morris Publ'g Grp. LLC)*, No. 10-10134, 2010 Bankr. LEXIS 488, at *10 (Bankr. S.D. Ga. Feb. 9, 2010) ("But even if the Objecting Parties can establish that they are current subscribers and thus creditors, the inquiry into their right to bring the Objection would not end there. In addition, the Objecting Parties must establish standing to participate in this particular proceeding--that is, to object to the confirmation of this case--and the Objecting Parties cannot.").

[55] 10 COLLIER ON BANKRUPTCY ¶ 9019.01 n. 11 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("An entity without a pecuniary interest in the outcome of a settlement does not have standing to object." (citing *In re Abengoa Bioenergy Biomass of Kan., LLC*, No. 16-10446, 2018 Bankr. LEXIS 1100, at *12 (Bankr. D. Kan. Apr. 10, 2018))).

## VII. Notice

This Court need not consider the Landry Objectors' notice arguments because they presuppose that the Objectors hold a vested right which the LIGA Settlement Motion interferes with. As explained herein and the MSJ, the Objectors hold no vested right against LIGA. Thus, their due process contentions fail and they are precluded from raising arguments on behalf of others.[56]

Further, the notice arguments raised by the Landry Objectors have no relevance to the instant MSJ. There is no contention that the MSJ was improperly noticed. Indeed, it is difficult to entertain a due process notice argument for the Landry Objectors as to the MSJ, since they have appeared and have objected. Perhaps the Landry Objectors are again attempting to make arguments on behalf unnamed objectors, but that should be of no moment for this MSJ, which is raised specifically to dismiss the objections of the named Landry Objectors and the named Roussel Objector.

**WHEREFORE**, LIGA respectfully requests this Court enter an order granting the MSJ and any other relief deemed necessary and just.

Respectfully submitted,

**STEWART ROBBINS BROWN & ALTAZAN LLC**

By:  /s/ William S. Robbins
William S. Robbins (#24627)
301 Main Street, Suite 1640
Baton Rouge, Louisiana 70801
225.231.9998 (Telephone)
225.709.9467 (Facsimile)

---

[56] *Superior MRI Servs. v. All. HealthCare Servs.*, 778 F.3d 502, 506 (5th Cir. 2015) ("However, we have long applied the prudential requirement that a party must assert its own rights, and we are bound to follow our precedent until the Supreme Court squarely holds to the contrary[.]") (citing *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011); *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 394 (5th Cir. 2014)) (internal citation omitted) (alteration to original).

and

**LAFLEUR & LABORDE**

By:     */s/ Stephanie B. Laborde*
        Stephanie B. Laborde (#20908)
        6160 Perkins Rd., Suite 225
        Baton Rouge, LA 70808
        225.535-7590 (Telephone)
        800.983.3565 (Facsimile)

*Attorneys for Louisiana Insurance Guaranty Association*


and

**Chaffe McCall, LLP**

By: */s/ David J. Messina*
David J. Messina, #18341
Fernand L. Laudumiey, IV, #24518
messina@chaffe.com
laudumiey@chaffe.com
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone: (504) 585-7000

*Counsel for David V. Adler, Trustee in connection with the LIGA Settlement Motion*